GALLAGHER & KENNEDY, P.A.
John R. Clemency (Bar No. 009646)
Todd A. Burgess (Bar No. 19013)
Lindsi M. Weber (Bar No. 25820)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: john.clemency@gknet.com
todd.burgess@gknet.com
lindsi.weber@gknet.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ARMORWORKS ENTERPRISES, LLC,<br>TECHFIBER, LLC,<br><br>Debtors.<br><br>This Filing Applies to:<br>X   Both Debtors<br>☐   Specified Debtor | Chapter 11 Proceedings<br><br>Case No.  2:13-bk-10332-BMW<br>Case No.  2:13-bk-10333-DPC<br><br>(Motion for Joint Administration Pending)<br><br>**Expedited Hearing Requested** |

### EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARY, AND EMPLOYEE BENEFITS

ArmorWorks Enterprises, LLC ("ArmorWorks") and its wholly-owned subsidiary TechFiber, LLC ("TechFiber" and together with ArmorWorks, the "Debtors"), debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Bankruptcy Case"), hereby move the Court for an Order authorizing the payment of pre-petition wages and salaries, and the honoring of pre- and post-petition employee benefits.  This Motion is supported by the *Declaration of William J. Perciballi in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "Perciballi Declaration") filed by the Debtors concurrently herewith.

In further support of the Motion, the Debtors state as follows:

# JURISDICTION

1. On June 17, 2013 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors has not been appointed.

2. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a) and 366.

# FACTUAL BACKGROUND

4. ArmorWorks and its wholly-owned subsidiaries develop advanced survivability technology and design and manufacture high-tech military personal body armor, vehicle armor, aircraft and marine armor, and energy attenuating seats for protection against a broad spectrum of ballistic threats primarily for use in military and nuclear safety and security applications. ArmorWorks systems are in-service around the world in several United States Military applications. ArmorWorks' engineering and fabrication services take armor systems projects from concept to production with customer input and collaboration throughout the process. ArmorWorks specializes in all aspects of military armor technology. ArmorWorks has produced over 1.25 million ceramic armor and composite armor protection components for a variety of personnel armor, aircraft, and vehicle applications.

5. ArmorWorks sells the majority of its products through two channels. The primary channel is as a prime contractor for United States Military agencies.

ArmorWorks has contractual relationships with many government entities for the purchase and service of its products, and provides a substantial amount of the armor and protective equipment used by all branches of the United States Military. The second primary channel involves ArmorWorks subcontracting with other prime government contractors to U.S. Military agencies.

6. Because of (i) the life-critical nature of its products, (ii) the use of critical defense technology including classified Executive Level/Presidential national defense information, and (iii) the United States Military's critical need for armor to protect its troops in a time of war, ArmorWorks' contracts include special delivery priorities and requirements which subject ArmorWorks to stringent government regulations, requirements, and oversight.

7. ArmorWorks is functioning as, and is exercising the competitive advantage of, a Small Business within the meaning of applicable federal acquisition regulations, including but not limited to 13 C.F.R. § 121.404. This special status under SBA programs is critical to ArmorWorks' continued success because it provides many advantages that allow ArmorWorks to successfully bid on government contracts and subcontracts. ArmorWorks also enjoys the benefits of a veteran-owned business based, in important part, upon my control over ArmorWorks.

8. ArmorWorks is vertically integrated with several wholly-owned subsidiaries providing complementary survivability products as well as components used by ArmorWorks to manufacture the armor products and systems it sells.

9. TechFiber is a wholly-owned Delaware limited liability company that supplies ballistic fiber to ArmorWorks and the armor industry. The ballistic fiber is used by ArmorWorks to manufacture ceramic armor and composite armor systems.

10. Non-debtor subsidiary ShockRide, LLC ("ShockRide") is a wholly-owned Arizona limited liability company that designs, manufactures, and sells energy attenuating

seats, which protect passengers from the shock of IED and mine blasts beneath a vehicle. ShockRide's energy absorption, rollover, and crash protection technology is used in a wide variety of military vehicles with over 70,000 seats in service worldwide. ShockRide is self-sufficient and does not require any significant restructuring at this time. Therefore, ArmorWorks did not file a chapter 11 petition for ShockRide.

11. Non-debtor subsidiary Mandall BarrierWorks, LLC ("MBW") is a wholly-owned Delaware limited liability company that designs and produces high-end vaults, vault doors, and armored door systems providing architectural blast protection and security, including passive and reactive high value asset protection systems, safes, security doors, and fixed and portable guard stations for government, military, nuclear, and commercial installations. The company's work in the area of nuclear safety and security requires additional security clearances beyond those required by the Department of Defense. MBW is self-sufficient and does not require any significant restructuring at this time. Therefore, ArmorWorks did not file a chapter 11 petition for MBW.

12. Non-debtor subsidiary Applied Heat Technologies, LLC is an Arizona limited liability company wholly owned by ArmorWorks that provides portable armor and composite repair products and services. AHT is self-sufficient and does not require any restructuring, and therefore did not file a chapter 11 case.

13. Non-debtor Protective Ceramics, LLC is a Delaware limited liability company wholly owned by ArmorWorks. Protective Ceramics does not conduct any business operations and likely will be dissolved.

14. Non-debtor subsidiary ArmourWorks International Limited (AIL) is a wholly-owned subsidiary of ArmorWorks located in the United Kingdom that supplies armor and protective products to customers in the United Kingdom and internationally.

15. Non-debtor subsidiary ArmorWorks Enterprises Canada, ULC is a wholly-owned subsidiary of ArmourWorks International Limited (AIL) located in British

Columbia that supplies soft body armor products to the Canadian military and law enforcement communities.

16. The majority of ArmorWorks' business operations are conducted from leased commercial space in Chandler and Tempe, Arizona.

17. ArmorWorks' primary facility, located at 305 N. 54th Street, Chandler, Arizona, houses the corporate headquarters, vehicle armor assembly, body armor, flat armor, and applied heat production facilities, as well as research and development. Additional research and development and storage facilities are located at 205 S. Beck Avenue, Chandler, Arizona.

18. Until February 2013, ShockRide production facilities and research and development were located at 500 N. 54th Street, Chandler, Arizona. Effective February 1, 2013, in an effort to reduce operating costs, ArmorWorks surrendered the premises to the landlord and relocated the Shockride operations to 305 N. 54th Street. ArmorWorks is attempting to negotiate a settlement of the remaining lease obligation with the landlord.

19. TechFiber production facilities are located at 6955 South Priest, Tempe, Arizona.

20. Mandall Barrier Works operates from a facility located at 7071 W. Frye Road, Chandler, Arizona.

21. Non-debtor subsidiary ArmourWorks International Limited (AIL) leases commercial space located at 26 Bamel Way, Glouchester Business Park, Brockworth Glouchester GL3 4BH, United Kingdom. Non-debtor subsidiary ArmorWorks Enterprises Canada, ULC leases commercial space located at Suite B2-8775 Jim Bailey Cresent, Kelowa, BC V4V 2L7, Canada.

22. Historically, the independent certified public accounting firm of Mayer Hoffman McCann P.C. has audited the financial statements of ArmorWorks and its subsidiaries on a consolidated basis. ArmorWorks uses a calendar year accounting cycle.

23. In 2009, ArmorWorks and its subsidiaries had net income of $14,838,000 on total sales of $190,531,000. Sales declined materially in 2010, to $128,375,000, and ArmorWorks realized a net loss from operations of $11,475,000 based in large measure on a $20 million inventory write-off recorded by the company.

24. Sales increased dramatically in 2011 to $313,763,000 based in large measure on a $236,247,162 contract awarded to ArmorWorks in late 2010 by AM General for the production of upgraded armor for the U.S. Military's HMMWV fleet. The increased sales 2011 generated net income of $27,917,000 in 2011. ArmorWorks completed the AM General contract in 2011.

25. ArmorWorks' record sales in 2011 enabled the company to pay-off substantially all of its secured debt, including a $40 million revolving line of credit from JPMorgan Chase, and approximately $3.0 million of secured equipment financing from Chase Equipment Financing.

26. Despite ArmorWorks strong performance in 2011, the business deteriorated substantially in 2012 tracking an industry-wide defense trend. ArmorWorks experienced a net loss of $9,988,000 on total sales of $100,229,000 in 2012.

27. ArmorWorks poor performance in 2012 in many ways mirrored that of the defense industry as a whole that continues to suffer from the anticipated and actual implementation of sequestration; from a federal government that cannot agree on a budget; from military force reductions and planned pull-outs in both Iraq and Afghanistan; and from a general belief that defense spending will most likely decrease in the foreseeable future. In this environment, government funding simply is not flowing to military and defense contracts like it once did. For ArmorWorks, the slow-down has manifested itself in follow-on orders to our largest vehicle armor contract that have not materialized, seat programs being delayed or cancelled, and military demand for body

armor plates virtually disappearing. As a result, ArmorWorks, like many other defense contractors, is restructuring and reducing the size of its operations.

28. However, despite the slowdown, ArmorWorks remains optimistic for the future and there are many positives. The company's core strength has been and will continue to be innovation. ArmorWorks innovated from hard body armor to vehicle armor to seats and to soft protective under and over garments. ArmorWorks has a number of other new technologies and products in the queue. The Debtors are in a good market and resource position to continue innovating and delivering new solutions to our customers for the long-run.

29. In the near-term, ArmorWorks continues to operate its business and prepare for the future. The company has contracts and continues to land new orders. The numbers are smaller than the Debtors would like, but they do have business and there is profitable business to be had in the short-term.

30. As of May 26, 2013, on a consolidated basis, ArmorWorks had total assets (at book value) of approximately $30,949,00 consisting of: (i) cash of $959,000, (ii) accounts receivable of $3,676,000, (iii) inventory of $8,608,000, (iv) other current assets of $889,000, (v) personal property and equipment of $12,054,000, (vi) intellectual property and intangibles assets of $1,188,000, and (vii) other assets of $3,575,000.

31. As of May 26, 2013, on a consolidated basis, ArmorWorks had total liabilities (at book value) of approximately $12,040,000 consisting of: (i) trade accounts payable of $5,973,000, (ii) accrued expenses of $2,328,000, (iii) deferred revenue of $1,354,000, (iv) notes payable of $1,810,000, and (v) other long term liabilities of $575,000. More detailed information concerning the assets, liabilities, and financial condition of the Debtors may be found in the statement of financial affairs and schedules filed by each of the Debtors.

32. Although the Debtors continue to operate, and believe ultimately they will "weather the storm," ongoing litigation with its minority owner has made it impossible for ArmorWorks to obtain working capital financing to replace the $40 million line of credit paid off in 2012. Without working capital financing, ArmorWorks is in jeopardy of running out of cash in the short term. As discussed in the Perciballi Declaration, ArmorWorks has identified a lender that is willing to provide up to $5 million of debtor in possession financing.

33. The working capital financing, if approved and obtained, should be sufficient to allow ArmorWorks to continue to operate and restructure its operations, including (i) divesting business units that no longer fit within the strategic framework of ArmorWorks' long-term plan; and (ii) reducing the companies' Arizona facilities footprint through the rejection of burdensome long-term leases.

34. In addition to restructuring their debt, reducing their facilities footprint, and divesting portions of its business, the Debtors are hopeful that the Chapter 11 filing will assist ArmorWorks in resolving the ongoing dispute with C Squared by allowing ArmorWorks to redeem C Squared's 40% minority interest, or alternatively, allow C Squared to purchase the 60% majority interest of AWI. As discussed above, C Squared's efforts to interject itself into a position of control threaten ArmorWorks' small business status, security clearances, and future ability to obtain government contracts. In addition, the demands of the continually escalating litigation from both a time and financial standpoint are detracting from management's ability to operate and grow the business.

35. Therefore, with their voluntary Chapter 11 petitions, the Debtors have filed a plan of reorganization that provides for the payment in full of all of the Debtors' creditors, and that also provides C Squared with an election: either accept a redemption of their 40% minority interest or purchase AWI's 60% majority interest.

**RELIEF REQUESTED**

36. To minimize the personal hardship that employees will suffer if prepetition employee-related obligations are not paid when due and to maintain morale of the Debtors' workforce during this critical time, the Debtors seek, on an emergency basis, the entry of an interim order and a final order authorizing the Debtors: (a) to pay and honor certain prepetition claims that remain outstanding as of the Petition Date for (i) wages, salaries and other compensation, (ii) federal and state withholding taxes and other amounts withheld or deducted (e.g., employees' share of health insurance premiums), and (iii) reasonable and customary business expenses that are reimbursable by the Debtors under company policy; and (b) to pay and honor certain prepetition claims that remain outstanding as of the Petition Date related to (i) life insurance and AD&D, (ii) long-term and short-term disability insurance, (iii) 401(k) (with limited employer match), (iv) flexible spending accounts, (v) health insurance, (vi) dental insurance, and (vii) optional vision care, and (viii) other employee benefits and obligations that the Debtors have historically paid in the ordinary course of business (all of the foregoing benefits and obligations, being the "Employee Obligations and Benefits").

37. The Employee Obligations and Benefits offered by the Debtors to the employees include the option to request payment of accrued "paid time off" or "PTO".

38. In addition, the Debtors seeks an order authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payments related to the employee obligations and benefits.

39. On a consolidated basis, ArmorWorks and TechFiber employ 123 people.

40. The Debtors employees are paid bi-weekly (every other Thursday) in arrears. The next pay date is June 20, 2013 for the period beginning June 3, 2013 and ending June 16, 2013. Therefore, the majority of the next payroll will relate to prepetition wages.

41. Of the Debtors' employees, only William Perciballi, the CEO and founder of ArmorWorks, is the only insider within the meaning of 11 U.S.C. § 101(31). Mr. Perciballi's regular annual salary is $500,000, and his gross bi-weekly salary is $19,230. Mr. Perciballi is the only employee of the Debtors owed prepetition wages in excess of the statutory cap of $11,725 for priority treatment that is set by Bankruptcy Code §§ 507(a)(4) and (a)(5). The prepetition gross bi-weekly wages for all other employees is below the statutory cap.

42. The Debtors estimate that its June 20, 2013 gross payroll will total approximately $309,352.29, which will includes payroll taxes and other withholdings. A summary report of the estimated June 20, 2013 payroll (the "Payroll Summary") is attached hereto as Exhibit "A" and is incorporated herein by this reference.

43. The Payroll Summary includes: (i) the total gross bi-weekly wages due to each employee as of June 16, 2013, and (ii) the total combined gross bi-weekly wages and accrued PTO for each employee as of June 16, 2013. When the accrued PTO is added to the gross bi-weekly wages as of June 16, 2013, seven of the Debtors' employees are owed amounts in excess of the statutory cap of $11,725.

44. Notwithstanding the foregoing, <u>the Debtors are not seeking to pay Employee Obligations and Benefits to any employee in excess of the statutory cap.</u>

45. If the proposed debtor-in-possession financing is approved, as requested, the Debtors will have sufficient funds available to pay the gross bi-weekly wages due on June 20, 2013 payroll and to honor all Employee Obligations and Benefits going forward.

46. The Debtors' employees perform a variety of functions critical to the operation of the business. The employees' skills, knowledge, and understanding of the business are among the Debtors most valuable assets. If prepetition Employee Obligations and Benefits are not received by the employees in the ordinary course, they will suffer personal hardship and unnecessary distraction from their duties. Such a result

obviously would destroy employee morale and may result in unmanageable employee turnover, causing immediate and pervasive damage to the Debtors' ongoing business operations. Any significant deterioration in morale at this time will substantially and adversely affect the Debtors and their ability to function, resulting in immediate and irreparable harm to the Debtors and their estates.

**BASIS FOR RELIEF REQUESTED**

11 U.S.C. § 105 authorizes the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. This Court is a court of equity and has the inherent power to permit the relief requested by the Debtors. The Debtors are seeking authority to pay their employees and their employees' benefits in the ordinary course of business. It would be an unnecessary hardship, both on the employees and on the Debtors' ability to remain in business, if they are not authorized to pay their employees for wages and benefits earned pre-petition. The Debtors employ numerous skilled employees, the retention of whom, are necessary for the continued and successful operations of the Debtors. The Debtors believe payment of their employees' pre-petition earnings is necessary to retain such individuals to provide services post-petition.

Courts have authorized the payment of necessary pre-petition claims, where payment will enhance or maintain the value of the estate, under the "necessity of payment doctrine." *In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 828 P.2d 59 (2d Cir. 1988); *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bkrtcy.N.D.Tex. 2004); *In re Just for Feet, Inc.*, 242 B.R. 821, 825-826 (D.Del. 1999). The Ninth Circuit has recognized the "necessity of payment doctrine." *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987). In this case, it is necessary that the Debtors be authorized to pay their employees so they can maintain their skilled employees and

successfully operate post-petition.  Absent such relief, the Debtors will suffer immediate and irreparable harm.

WHEREFORE, the Debtors respectfully requests the entry of an order granting the relief requested herein and such other and further relief as is just and proper.  A proposed form of order is attached hereto as Exhibit "B" for the Court's consideration.

RESPECTFULLY SUBMITTED this 17th day of June, 2013.

    GALLAGHER & KENNEDY, P.A.


By  */s/Todd A. Burgess*
    John R. Clemency (Bar No. 009646)
    Todd A. Burgess (Bar No. 19013)
    Lindsi M. Weber (Bar No. 25820)

Proposed Attorneys for Debtors