Steven D. Jerome (#018420)
Evans O'Brien (#026521)
Jill H. Perrella (#026270)
SNELL & WILMER L.L.P.
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail:   sjerome@swlaw.com
          eobrien@swlaw.com
          jperrella@swlaw.com
*Attorneys for C Squared Capital Partners, LLC and Anchor Management, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>ARMORWORKS ENTERPRISES, LLC,<br><br>TECHFIBER, LLC,<br><br>Debtors.<br><br>This pleading relates to:<br>■ ArmorWorks Enterprises, LLC<br>■ TechFiber, LLC | Proceedings Under Chapter 11<br><br>Case No. 2:13-bk-10332-BMW<br>Case No. 2:13-bk-10333-BMW<br><br>(Jointly Administered)<br><br>**EMERGENCY MOTION TO APPOINT CHAPTER 11 TRUSTEE** |

Pursuant to 11 U.S.C. § 1104(a) and Local Rule 9013-1(h), C Squared Capital Partners, LLC ("C Squared"), a 40% member and creditor of AWE, and Anchor Management, LLC ("Anchor"), co-manager and creditor of AWE (collectively the "C Squared Parties"), move the Court on an expedited basis for the appointment of a Chapter 11 Trustee for "cause" and because the appointment of a Chapter 11 Trustee is in the best interest of these estates, their creditors, and their equity holders. In the event the Court grants this Motion and a Chapter 11 Trustee is appointed (and the appointment is not stayed), the C Squared Parties will consent to the filing of these bankruptcy cases and will withdraw their motion to dismiss currently scheduled for a continued evidentiary hearing on September 17 and 18.

This Motion is supported by the accompanying Memorandum of Points and Authorities and the prior papers and pleadings filed in these cases.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The C Squared Parties agreed to a short continuance of the hearing on the Motion to Dismiss in the hope that William J. Perciballi ("Perciballi") and ArmorWorks, Inc. ("AWI") would cease there long running efforts to force the C Squared Parties out of the Debtors and be willing to reach an amicable solution to the disputes amongst the Parties. Regrettably, the C Squared Parties hope appears to have been unrealistic. In the short "stand still period," the C Squared Parties have confirmed that the Perciballi and AWI, with the assistance of Debtors' Counsel and Financial Advisors seek to utilize the bankruptcy to force the C Squared Parties from AWE and conceal Perciballi's and AWI's voluminous breaches of fiduciary duty, usurpation of corporate opportunity, mismanagement, and diversion of AWE's assets to their own personal use and benefit. Furthermore, Debtors' Counsel and Financial Advisors have refused to investigate any claims or causes of action the estates hold against Perciballi and AWI or any other adverse act against Perciballi and AWI, even acts expressly directed by co-manager Anchor. As a result, absent the appointment of a Chapter 11 Trustee, there is no hope for these cases to be adjudicated in an open fashion, consistent with the Bankruptcy Code.

**II.  FACTUAL BACKGROUND AND LEGAL ANALYSIS**

Section 1104(a) of the Bankruptcy Code authorizes the Court to remove a Debtor from possession and appoint a trustee for the following reasons:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

Either one of these two independent grounds is sufficient to justify the appointment of a chapter 11 trustee. *In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999). Here, the facts and circumstances of this case satisfy the requirements for the appointment of a trustee under both Sections 1104(a)(1) and (a)(2).

### A. "Cause" Clearly Exists to Appoint a Trustee.

Although they may be present here, "cause" to appoint a trustee is not limited to "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." *In re Bellevue Place Associates*, 171 B.R. 615, 622-23 (Bankr. N.D. Ill. 1994). For example, courts have found that "cause" exists to appoint a chapter 11 trustee under a number of factual scenarios, including where the principal of the debtor was looting the estate through a kickback scheme in connection with a company hired to provide management services to the debtor; where the debtor in possession had a history of questionable transactions with affiliated companies; and where irreconcilable conflicts and acrimony abound. *See In re Bibo, Inc.*, 76 F.3d 256 (9th Cir. 1996); *In re Oklahoma Refining Co.*, 838 F.2d 1133 (10th Cir. 1988); *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998). Here, the ongoing dispute between AWI, Perciballi, and the C Squared Parties and Perciballi's pre- and post-petition breaches of his fiduciary duties are ample cause for the appointment of a trustee in these cases.

#### 1. The persistent management and control dispute is cause to appoint a trustee.

Courts have routinely recognized that management disputes and conflicts between partners are cause for the appointment of a trustee in chapter 11 cases. *See, e.g., In re New Towne Development, LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009) ("The … membership dispute effectively has paralyzed [the debtor's] management, and necessitates installing a neutral third party to operate the debtor unhampered by its members' disagreements."); *In re Tahkenitch Tree Farms Partnership*, 156 B.R. 525, 527-28 (Bankr. E.D. La. 1993). Here, there is no dispute that AWI, Perciballi, and the C Squared Parties are embroiled in a dispute over the management of AWE that has led to extensive litigation. *See* AWE's "Response in Opposition to Emergency Motion to Dismiss or, in the Alternative, to Abstain" [DE #73] at ¶ 69. In fact, Perciballi himself

has represented to the Court that "the demands of the continually escalating litigation from both a time and financial standpoint are detracting from management's ability to operate and grow the business." *See* the "Declaration of William J. Perciballi in Support of Debtors' Chapter 11 Petitions and First Day Motions" ("<u>Perciballi Declaration</u>") [DE #3] at ¶ 78.[1] Indeed, one of the reasons for filing these cases was to "resolve the Crown dispute." *See* **Exhibit 1** at 107:19-23.

Unfortunately, these bankruptcy cases have done nothing to resolve the management and ownership dispute between AWE, Perciballi, and the C Squared Parties. In 2009, to prevent Anchor from exercising authority as co-manager, Perciballi unilaterally and without legal authority removed Anchor as co-manager. After years of litigation in State Court, Judge Gama determined that Perciballi's removal of Anchor as co-manager was unlawful and ordered the immediate reinstatement of Anchor as co-manager *nunc pro tunc*. Thereafter, Perciballi invented a new theory, the "ceremonial manager." If, as Perciballi contends, Anchor is and has been a "ceremonial manager" (i.e. a manager with no rights to control any corporate actions of AWE) one wonders why he bothered to unilaterally remove Anchor as manager in 2009 and then spend hundreds of thousands of dollars of AWE's funds opposing Anchor's reinstatement. During these proceedings, AWE's Counsel and its Financial Advisors have refused to acknowledge that Anchor has <u>any</u> rights as co-manager and have only taken instructions from Perciballi despite Anchor's legal status as a co-manager of AWE, and despite Anchor's repeated insistence that it be included in the decision-making process in these bankruptcy cases. This undeniable dispute between AWI, Perciballi, and the C Squared Parties over the management and control over AWE constitutes cause for the Court to appoint a chapter 11 trustee over these debtors.

        **2.**        **Similarly, acrimony between a debtor-in-possession and its creditors is cause for appointing a trustee.**

Disputes between management and equity are not the only type of disputes that warrant the appointment of a trustee. As the Third Circuit has found, acrimony between a debtor-in-

---

[1] The financial impact of Perciballi's unlawful removal of Anchor as co-manager is one of many improprieties of Perciballi that needs to be investigated. Since AWE's Counsel has indicated it will take no action adverse to Perciballi, including at the express demand of co-manager Anchor, it is obvious that AWE's Counsel and Perciballi will not discharge their fiduciary duties to these estates as to the C Squared Parties.

- 4 -

possession and its creditors is also cause for the appointment of a trustee. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d at 474. Here, in addition to being co-manager and 40% owner of AWE, respectively, Anchor and C Squared are also creditors of AWE. Therefore, in addition to the management and control dispute, the well-chronicled acrimony between AWI, Perciballi, and the C Squared Parties, as creditors, constitutes an independent basis to appoint a trustee.

### 3. "Reimbursement" payments to Perciballi and/or AWI are cause to appoint a trustee.

The C Squared Parties are informed and believe that Perciballi has regularly caused AWE to "reimburse" him for alleged expenses incurred by Perciballi and/or AWI. For example, pre-petition, upon information and belief, AWE reimbursed Perciballi for his legal expenses incurred in connection with his litigation with the C Squared Parties even though the result of that litigation to date has been a determination by the State Court that Perciballi's actions in removing Anchor as co-manager of AWE was unlawful. Since the Petition Date, it appears that AWE is still reimbursing Perciballi and/or AWI for "expenses." *See* **Exhibit 2**. Based on the testimony of Dave Wirthlin, AWE's CFO, it appears that Perciballi has the sole discretion to approve payments to AWI and/or himself. *See* **Exhibit 3** at 103:23-104-07. It is unknown whether the payments to "New Armorworks, Inc." listed on Exhibit 2 are necessary or appropriate, but what is clear is that these payments were not approved by, and have not been disclosed to, the Court.[2] Perciballi's pre- and post- petition penchant for paying himself out of company funds without any meaningful oversight is additional cause for the appointment of a trustee.

### 4. Perciballi's continuing breach of his fiduciary duties, and AWE's failure to take any action regarding these breaches, is cause to appoint a trustee.

"As one bankruptcy court has noted:

> The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a

---

[2] Although these cases have been pending for nearly three months, to date AWE has filed only one (partial) operating report.

> trustee. And if the debtor-in-possession defaults in this respect, *Section 1104(a)(1)* commands that the stewardship of the reorganization effort must be turned over to an independent trustee."

*In re Bellevue Place Associates*, 171 B.R. 615 at 623 (citing *V. Savino Oil & Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)). As an officer and manager of AWE, Perciballi owes fiduciary duties to the Company, including the duty of loyalty. *See Security Title Agency, Inc. v. Pope*, 219 Ariz. 480, 492, ¶ 53, 200 P.3d 977, 989 (App. 2008) (employees owe duty of loyalty); *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 850 (Del. Ch. 2012) ("It seems obvious that, under traditional principles of equity, a manager of an LLC would qualify as a fiduciary of that LLC and its members.").[3] "Consistent with the fiduciary duty of loyalty, an employee may not, absent agreement to the contrary, statute or other authority, compete with his or her employer concerning the subject matter of the employment." *Security Title Agency*, 219 Ariz. at 492, ¶ 53, 200 P.3d at 989. In the bankruptcy context, Perciballi's fiduciary duties extend not only to the Company, but also to the creditors of these bankruptcy estates. *See, e.g., In re Marvel Entertainment Group, Inc.*, 140 F.3d at 474 ("These obligations include 'open, honest and straightforward disclosure to the Court and creditors. … Also among the fiduciary duties of a debtor-in-possession is the 'duty to protect and conserve property in its possession for the benefit of creditors."); *In re Bellevue Place Associates*, 171 B.R. at 623.

The duty of loyalty also encompasses the corporate opportunity doctrine, under which Perciballi "may not seize for himself, to the detriment of his company, business opportunities in the company's line of activities in which it has an interest or prior claim." *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 122, 412 P.2d 47, 57 (1966). "[A] corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." 3 William M. Fletcher,

---

[3] As a manager, Perciballi also owes fiduciary duties to the C Squared Parties, *see Auriga Capital Corp.*, 40 A.3d at 850, and AWI, as AWE's majority shareholder, owes fiduciary duties to the C Squared Parties, *Jara v. Suprema Meats, Inc.*, 121 Cal.App.4th 1238, 1252-53 (2004). This Motion, however, addresses only the breaches of duty to the Company and the creditors of these estates.

- 6 -

*Fletcher Cyclopedia Corp.* § 861.10.[4]  "If a fiduciary uses corporate assets to develop a business opportunity, the fiduciary will be estopped from denying that it was a corporate opportunity, regardless of the corporation's ability to exploit it." *Id*.  A fiduciary who breaches his duty of loyalty may be liable for "secret profits, damages or rescission." *Roche v. Golden Sky Lands, Inc.*, 107 Ariz. 335, 337, 487 P.2d 756, 758 (1971).  Perciballi has breached his fiduciary duty of loyalty to AWE in at least four ways.

### a. Perciballi has breached his fiduciary duties by using AWE resources to obtain government contracts for AWI.

Perciballi is the sole shareholder of AWI, which has a 60% interest in AWE but "AWI is a holding company with no operations." *See* **Exhibit 4**.  Perciballi has nevertheless used AWE's employees, manufacturing facilities, and assets to obtain contracts for AWI. *See* **Exhibit 5**.  In August, 2013, after numerous requests from the C Squared Parties, AWE finally provided some, but not all, copies of some of the purchase orders and contracts between the federal government and AWI.  During the discussions with AWE, Perciballi, and AWI regarding the engagement of a sales agent for AWE, the C Squared Parties asked that appropriate steps be taken to ensure that all AWI contracts would be assigned to AWE and included in the AWE assets to be sold.  In response, Perciballi took the position that the contracts would *not* be included in the AWE assets to be sold and that AWI would retain the contracts after the sale (unless AWI and/or Perciballi was separately compensated for the "separate assets" of AWI).  Notwithstanding the express statement from Perciballi regarding his intent to have AWI retain contracts that AWI obtained using AWE's assets, neither AWE nor AWE's Counsel has taken any action to protect AWE's interest in these contracts.

### b. Perciballi has breached his fiduciary duties to AWE by refusing to ensure that the licenses and security clearances necessary for AWE to perform its business are properly held by AWE.

In the State Court proceedings, Perciballi has taken the position that he "personally holds the security clearances, firearms licenses and intellectual property rights essential to AWE's

---

[4] "The corporate opportunity doctrine has been applied to the members of a limited liability company." 3 William M. Fletcher, *Fletcher Cyclopedia Corp.* § 861.10.

operations." *See* **Exhibit 6** (without attachments) at 4:23-25; **Exhibit 7** at 22:4-23-4 (testifying that AWI has continued to hold the facilities clearance for the government contracts AWE performs "to simplify administrative procedures"). Not only has AWE been deprived of assets to which it is entitled, but this issue caused the United States Navy to reject a bid proposal from AWI for which AWE would perform the work. *See* **Exhibit 4** and **Exhibit 8**. According to Perciballi, this rejection resulted in a "loss of *over $100 million in revenue and tens of millions in profits*" to AWE. *See* **Exhibit 9** (without attachments) at 4:9-10 (emphasis added).

        **c.    Perciballi has maintained that he personally holds the intellectual property rights he obtained in connection with his employment with AWE, notwithstanding the License Agreement he entered into at AWE's formation that required him to transfer or assign all existing and future intellectual property interests to the Company in exchange for his employment and 60% interest in AWE.**

Perciballi has asserted that both AWI and he hold intellectual property necessary for the operation of AWE's business. While AWE is a party to a license agreement by which it licenses intellectual property from Perciballi, the C Squared Parties are unaware of written license between AWI and AWE. In addition, Perciballi has filed a proof of claim in these proceedings in which he alleged that he is entitled to *$5 million* for his interest in the intellectual property based on his employment agreement with AWE's predecessor, ignoring the fact that when the parties assigned Perciballi's Employment Agreement to AWE, they expressly agreed that the License Agreement would supersede the pertinent provisions of the Employment Agreement (§ 6.3). *See* Claim 58, **Exhibit 10, and Exhibit 11** (stating that the License Agreement "is intended to supersede Article VI of the Employment Agreement"). Perciballi's $5 million demand for the intellectual property is in addition to the $1.5 million Perciballi claims he is owed for the return of his capital investment. *See* Claim 57. The intellectual property is the only significant capital Perciballi arguably contributed at AWE's formation. *See* **Exhibit 12** at Exhibit A. Perciballi is therefore demanding that AWE pay him $6.5 million for rights he has already relinquished in exchange for his 60% interest in and employment with AWE. The C Squared Parties have informed AWE of the conflict between Perciballi's proofs of claim and the License Agreement

- 8 -

and have instructed AWE's bankruptcy counsel to file an objection but, to date, AWE's bankruptcy counsel has refused to file any objection to those proofs of claim.

### d. Perciballi used the assets of AWE to acquire property on Frye Road in Chandler, Arizona for an entity that Perciballi owns, Armory, LLC.

AWE acquired the Frye Road property on or about October 25, 2010, then formed Armory, LLC. In February 2011, Perciballi caused AWE to enter into an Assignment and Assumption of Purchase Agreement with Armory, LLC to transfer the building to Armory, LLC. Perciballi purported to ratify the purchase and authorize the transfer as the "sole Manager of [AWE]." *See* **Exhibit 13**. Perciballi then purchased Armory, LLC from AWE, funding the purchase price, in substantial part, with a $672,385.00 loan from AWE that is unsecured and for which Armory, LLC is not required to make *any* payments to AWE – principal or interest – for 15 years. *See* **Exhibit 14**. Perciballi then caused AWE to purchase equipment from Armory, LLC for $85,093.95 and to enter into a 15-year lease with Armory, LLC, for which AWE has been making rental payments to Armory, LLC of $24,026.81 per month. *See* **Exhibit 2** and **Exhibit 15**.

### 5. AWE's failure to pay taxes is cause to appoint a trustee.

The Arizona Department of Revenue ("ADOR") and the Maricopa County Treasurer ("MCT") have filed proofs of claim in the AWE case in the amount of $361,148.86 and $81,556.70, respectively. The majority of the ADOR's claim is based on unpaid transaction privilege taxes for the period ending May 31, 2011. *See* Claim 2-3. It is unclear why AWE was unable to pay $361,148.86 during 2011, a year in which Perciballi has affirmatively represented to the Court had total sales of $313,763,000.00 and net income of $27,917,000.00. *See* the Perciballi Declaration at ¶ 69. The MCT's claim derives from AWE's failure to pay personal property taxes for 2012 and 2013. *See* Claim 23. The ADOR and MCT have also filed proofs of claim in the TechFiber case in the amount of $20,722.34 and $38,630.73, respectively. *See* Claims 1-3 and 2-3 in the TechFiber case. In other words, under the management of Perciballi, these admittedly solvent entities have failed to timely pay over $500,000 in taxes.

**6.     Perciballi's gross mismanagement is cause to appoint a trustee.**

On or about September 5, 2013, Perciballi informed Anchor, for the first time, that AWE had recently lost a $100 million contract due to AWE's lack of financial stability. Apparently, AWE needed to show a letter of credit, which it did not have, and as a result, the contract was pulled. Prior to making this revelation on September 5, Perciballi did not contact the C Squared Parties to address AWE's apparent credit needs, and the C Squared Parties are unaware of any actions taken by Perciballi to resolve this issue in an effort to keep the contract. *See* **Exhibit 16**. Perciballi's failure to mention this contract to the C Squared Parties constitutes cause to appoint a trustee. However, Perciballi's mismanagement doesn't stop there.

For example, Perciballi has failed to instruct AWE's Counsel and Financial Advisors to timely provide documents and information to the C Squared Parties. Most recently, AWE received a request from the Small Business Association ("SBA") for proof of financial support sufficient to complete a $6 million C-130 contract. *See* **Exhibit 17**. Perciballi, AWE's Counsel, and AWE's Financial Advisors did not immediately notify the C Squared Parties of the SBA's request. Instead, at 9:20 a.m. on the day the letter to the SBA was due, AWE's Financial Advisor informed Anchor of the SBA's request, giving the C Squared Parties slightly more than six hours to review the request and provide a $6 million credit letter. These types of actions not only make it impossible for the C Squared Parties to evaluate substantial business decisions, they are affirmatively damaging the value of these estates.

Any one of these reasons standing alone constitutes cause for the appointment of a trustee. In addition, however, the Court should appoint a trustee pursuant to § 1104(a)(2) because doing so is in the best interest of creditors and equity interests.

**B.     <u>The Appointment of a Trustee is in the Best Interests of These Estates, Their Creditors, and their Equity Holders.</u>**

"Unlike § 1104(a)(1), which provides for mandatory appointment upon a specific finding of cause, § 1104(a)(2) 'envisions a flexible standard.' It gives the district court discretion to appoint a trustee 'when to do so would serve the parties' and estate's interest.'" *In re Marvel Entertainment Group, Inc.*, 140 F.3d at 474. As a result, courts often find that what constitutes

"cause" for the appointment of a trustee also satisfies the more flexible "best interests" standard of § 1104(a)(2). Here, in addition to the reasons set forth above, the appointment of a trustee is in the best interests of all parties because the appointment of a trustee is the only way to ensure oversight of the expenses of these estates and, ultimately, may be the only hope for a successful reorganization.

        **1.    Given the ongoing management and control dispute, the appointment of a trustee is in the best interests of all parties.**

As set forth above, the persistent dispute between AWI, Perciballi, and the C Squared Parties constitutes cause to appoint a trustee. In addition, courts typically find that it is in the best interests of all concerned to appoint a trustee where there are pervasive management and control disputes. *See, e.g., In re New Towne Development, LLC*, 404 B.R. at 147; *In re Tahkenitch Tree Farms Partnership*, 156 B.R. 525, 528 ("When the board of directors of a corporation is effectively deadlocked, appointment of a trustee is in the best interest of the estate."). Likewise, where, as here, there is a question of who may legally speak for the estate, the appointment of a neutral third party is warranted to assess a debtor's condition. *See In re Petralex Stainless Ltd.*, 78 B.R. 738 (Bankr. E.D. Pa. 1987). As the court in *In re Petralex Stainless* explained,

> The board is effectively deadlocked. It has been unable to resolve financing problems, which, in turn, raises grave concerns about [the debtor's] ability to operate profitably. Absent resolution of these problems, even [the debtor] agrees that it will be unable to continue operations. … **Further, we are faced with the perplexing question of exactly who speaks for the estate**. … Under such chaotic circumstances, a disinterested trustee can impartially assess [the debtor's] condition and work with the warring factions, thus facilitating the decision making process.

*Id.* at 745 (emphasis added) (internal citations omitted).

Whether AWI, Perciballi, AWE's Counsel and its Financial Advisors want to acknowledge it, AWE's co-managers are effectively deadlocked on substantially all important decisions regarding AWE and TechFiber. For example, AWE's counsel, on the instruction of Perciballi, recently filed an application to employ Houlihan Lokey ("HL") as AWE's investment banker. If the application is granted, HL will have the authority to, among other things, market

for sale C Squared's interest in AWE over C Squared's objection. C Squared does not consent to the employment of HL on these terms and has never consented to the forced sale of its interest in AWE. Well aware of C Squared's objection, Perciballi has nevertheless instructed AWE's counsel to act unilaterally against the C Squared Parties' interests. Perciballi's actions have, in turn, multiplied the litigation between the parties, causing the C Squared Parties to prepare and file an objection to Perciballi's latest maneuver to squeeze the C Squared Parties out of the companies. The appointment of a trustee would significantly limit Perciballi's ability to instigate future litigation in these proceedings.

### 2. A trustee will be able to investigate Perciballi's activities.

As set forth above, Perciballi has a long and continuing history of breaching his fiduciary duty to AWE, Anchor, and C Squared. Instead of leaving Perciballi to investigate himself (or not), it is in the best interests of all involved to charge an independent chapter 11 trustee with that task. *In re Bellevue Place Associates*, 171 B.R. at 625 ("Here, a trustee, to fulfill a trustee's duties under the Bankruptcy Code, must consider whether to conduct investigations of Meridien, the same entity that would actually control any such investigation if BPA remained a debtor-in-possession."). For example, in addition to Perciballi's activities described above, it appears that AWE is currently paying some of AWI's expenses. The propriety of any such payments is unknown to the C Squared Parties because the C Squared Parties are only entitled to see what Perciballi allows them to see through AWE's Counsel and Financial Advisors. A chapter 11 trustee would not be saddled with the same limitations. Therefore, it is in the best interests of all concerned that the Court appoint a trustee so that any claims or causes of action arising as the result of Perciballi's actions (or inactions) can be investigated since it is unlikely that he will instruct AWE's Counsel and Financial Advisors to do so.

### 3. The appointment of a trustee may be the only hope for a successful reorganization.

Thus far in these cases, AWE, at the instruction of Perciballi, has proposed two equally invalid resolutions to these cases. First, on the Petition Date, AWE and TechFiber filed a plan of reorganization that would force the sale of C Squared's 40% interest in AWE or require C

- 12 -

Squared to buy AWI's 60% interest in the company. The C Squared Parties are unaware of any provision of the Bankruptcy Code that would permit such treatment. Second, Perciballi has unilaterally attempted to engage HL to, among other things, market for sale C Squared's 40% interest in AWE. Based upon statements from Perciballi, AWE's counsel, and AWE's Financial Advisors, coupled with Perciballi's refusal to consider a 100% sale of AWE, Perciballi's plan appears to be to use HL to force the C Squared Parties out of AWE. However, because C Squared's interest in AWE is not even property of these bankruptcy estates, there is no mechanism in the Bankruptcy Code that would permit such a sale. In other words, Perciballi has instructed AWE's Counsel and Financial Advisors to waste precious estate resources on pursuing his goal of forcing the C Squared Parties out of AWE, despite the fact that neither the plan nor the proposed sale of C Squared's interest in AWE is permitted under the Bankruptcy Code.

## III. CONCLUSION

For the foregoing reasons, the C Squared Parties respectfully request that the Court appoint a chapter 11 trustee in these cases on an expedited basis for "cause" and because the appointment of a Chapter 11 Trustee is in the best interest of these estates, their creditors, and their equity holders. In the event the Court grants this Motion and a Chapter 11 Trustee is appointed (and the appointment is not stayed), the C Squared Parties will consent to the filing of these bankruptcy cases and will withdraw their motion to dismiss currently scheduled for a continued evidentiary hearing on September 17 and 18.

RESPECTFULLY SUBMITTED this 9th day of September, 2013.

SNELL & WILMER L.L.P.

By */s/ Jill H. Perrella*
Steven D. Jerome
Evans O'Brien
Jill H. Perrella
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
*Attorneys for C Squared Capital Partners, LLC and Anchor Management, LLC*

- 13 -

**COPY** of the foregoing served by U.S. Mail or electronic notification this 9th day of September, 2013, to:

John R. Clemency
Todd A. Burgess
Lindsi M. Weber
GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Rd.
Phoenix, AZ 85016-9225
Email: john.clemency@gknet.com
　　　　todd.burgess@gknet.com
　　　　lindsi.weber@gknet.com
*Attorneys for AWE and TechFiber*

Jennifer A. Giaimo
Renee Sandler Shamblin
OFFICE OF THE U.S. TRUSTEE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003
Email: jennifer.a.giaimo@usdoj.gov
　　　　renee.s.shamblin@usdoj.gov

Joseph E. Cotterman
ANDANTE LAW GROUP OF DANIEL E. GARRISON, PLLC
Scottsdale Financial Center I
4110 N. Scottsdale Rd., Ste. 330
Scottsdale, AZ 85251
Email: joe@andantelaw.com
*Attorneys for North 54th Street Venture, LLC*

Elizabeth K. Flaagan
FAEGRE BAKER DANIELS LLP
1700 Lincoln St., Ste. 3200
Denver, CO 80203
Email: Elizabeth.Flaagan@faegrebd.com
*Attorneys for CoorsTek, Inc.*

D. Lamar Hawkins
Heather Macre
AIKEN SCHENK HAWKINS & RICCIARDI P.C.
2390 E. Camelback Rd., Ste. 400
Phoenix, AZ 85016-3479
Email: dlh@ashrlaw.com
　　　　ham@ashrlaw.com
*Attorneys for MS Guadalupe, LLC*

James B. Ball
POLI & BALL, P.L.C.
2999 N. 44th St., Ste. 500
Phoenix, AZ 85018
Email: ball@poliball.com
*Attorneys for ArmorWorks, Inc.*

| | |
|---|---|
| 1 | Lori A. Lewis |
| | MARICOPA COUNTY ATTORNEY'S OFFICE |
| 2 | Civil Services Division, Security Center Bldg. |
| | 222 N. Central Ave., Ste. 1100 |
| 3 | Phoenix, AZ 85004-2206 |
| | Email: LewisL01@mcao.maricopa.gov |
| 4 | *Attorneys for Maricopa County Treasurer* |
| 5 | S. Cary Forrester |
| | FORRESTER & WORTH, PLLC |
| 6 | 3636 N. Central Ave., Ste. 700 |
| | Phoenix, AZ 85012 |
| 7 | Email: scf@forresterandworth.com |
| | *Attorneys for Official Joint Committee of* |
| 8 | *Unsecured Creditors* |
| 9 | Travis S. Williams |
| | THE FRUTKIN LAW FIRM, P.L.C. |
| 10 | 101 N. First Ave., Ste. 2410 |
| | Phoenix, AZ 85003 |
| 11 | williams@frutkinlaw.com |
| | *Attorneys for Novellus Systems, Inc. c/o Lam Research* |
| 12 | |
| 13 | /s/ Jill H. Perrella |

- 15 -