GALLAGHER & KENNEDY, P.A.
John R. Clemency (Bar No. 009646)
Todd A. Burgess (Bar No. 19013)
Lindsi M. Weber (Bar No. ~~0258202~~5820)
Janel M. Glynn (Bar No. 25497)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
~~Email:        john.clemency@gknet.com~~
~~todd.burgess@gknet.com~~
~~lindsi.weber@gknet.com~~

~~Proposed~~ Email:          john.clemency@gknet.com
                            todd.burgess@gknet.com
                            lindsi.weber@gknet.com
                            janel.glynn@gknet.com

Attorneys for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARMORWORKS ENTERPRISES, LLC,☐ | Case No.  2:13-bk-10332-BMW |
| TECHFIBER, LLC,            ☐ | Case No.  2:13-bk-10333-~~DPC~~BMW |
| Debtors. | ~~(Motion for Joint Administration~~ ~~Pending~~(Jointly Administered) |

This Filing Applies to:

X        Both Debtors
☐        Specified Debtor

**~~AMENDED~~ JOINT PLAN OF REORGANIZATION DATED ~~JUNE 17~~SEPTEMBER 11, 2013**

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

3761444v1/22420-0006

# INTRODUCTION

ArmorWorks Enterprises, LLC ("ArmorWorks") and its wholly-owned subsidiary TechFiber, LLC ("TechFiber" and together with ArmorWorks, the "Debtors"), are the debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Bankruptcy Cases") pending before the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"). This document is the amended Chapter 11 plan of reorganization (the "Plan") being proposed jointly by the Debtors. Sent to you in the same envelope as this document is the Disclosure Statement in Support of Amended Joint Plan of Reorganization (the "Disclosure Statement"), which has been approved by the Bankruptcy Court and is provided to help you understand the Plan. The Plan provides for the satisfaction of Allowed Claims against and Allowed Equity Securities in the Debtors in accordance with the distributive priorities allowed by the Bankruptcy Code. The Debtors believe that the Plan presents the most practical and effective means for repaying the claims of creditors and interest holders in full and successfully continuing the Debtors' business operations.

## ARTICLE I. DEFINITIONS.

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "Bankruptcy Code"), the applicable Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Arizona (the "Local Bankruptcy Rules"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any

3761444v1/22420-0006

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.1   Administrative Expense shall mean any cost or expense of administration of the Debtors' chapter 11 cases allowable under Section 503(b) and Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expense of operating the businesses of the Debtors, and indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of the business or for the acquisition or lease of property or the rendition of services to the Debtors, all allowances of compensation and reimbursement of expenses of Professional Persons, and any fees or charges assessed against the estates of the Debtors under Chapter 123 of Title 28 of the United States Code.

1.2   Affiliates shall have the meaning and shall be defined as set forth in Section 101(2) of the Bankruptcy Code.

1.3   Allowed when used as an adjective preceding the words "Claims" or "Equity Security" shall mean any Claim against or Equity Security in the Debtors, proof of which was filed on or before the Bar Date, or, if no proof of Claim or Equity Security is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed timely and such Claim has been allowed in whole or in part by a Final Order.  Subject to rights of Secured Creditors under Bankruptcy Code § 506(b), if any, unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Security" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity

3

Security from and after the Debtors' Petition Date.

1.4 <u>Allowed Administrative Expense Claim</u> shall mean any Administrative Expense allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.5 <u>Allowed Priority Non-Tax Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.6 <u>Allowed Priority Tax Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.7 <u>Allowed Unsecured Claim</u> shall mean an Unsecured Claim that is or has become an Allowed Claim.

1.8 ~~ArmorWorks' Deposit shall mean ArmorWorks' deposit for the redemption pursuant to Section 6.6.1 of the Plan.~~

1.8 <u>Anchor Management</u> shall mean Anchor Management, LLC, a representative of C Squared and one of the Managers named in the articles of organization of ArmorWorks.

1.9 <u>Assets</u> shall mean the aggregate assets, of any kind, of ~~the Debtor~~ArmorWorks and its Estate.

1.10 <u>AWI</u> shall mean ArmorWorks, Inc., the holder of the majority 60% member interest in the Debtor.

1.11 ~~AWI Purchase Price shall mean the principal sum of $14,424,000 or such other amount as the Court determines to be the value, within the meaning of section 1129(b)(2)(C)(i) of the Bankruptcy Code, as of the Effective Date, of AWI's 60% majority Equity Security interest in ArmorWorks.~~

~~1.12~~1.11 <u>Ballot</u> shall mean the form(s) distributed to creditors holding claims in an impaired Class, or holders of interests in an impaired Class, on which is to be

4

3761444v1/22420-0006

indicated the acceptance or rejection of the Plan.

1.131.12 Bankruptcy Code or Code shall mean the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, *et seq.*), as amended, and as codified in Title 11 of the United States Code.

1.141.13 Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Debtors' Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

1.151.14 Bankruptcy Rules shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

1.161.15 Bar Date shall mean 4:00 p.m., July 30, 2013, the date established by the Bankruptcy Court, pursuant to the Order and Notice for Hearing on Debtors' Disclosure Statement dated June 20, 2013, by which a proof of claim must be filed with the Bankruptcy Court, as established by an order of the Bankruptcy Court.

1.171.16 Business Day shall mean and refer to any day except Saturday, Sunday, and any other days on which commercial banks in Arizona are authorized by law to close.

1.181.17 Cash shall mean legal tender of the United States of America or equivalents thereof, as well as any and all foreign currencies.

1.191.18 Case shall mean the Debtors' cases under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court.

1.201.19 Claim shall mean a claim against the Debtors as defined in Section 101(5) of the Bankruptcy Code; including any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any

5

3761444v1/22420-0006

1  right to an equitable remedy for breach of performance if such breach gives rise to a right

2  of payment from the Debtors whether or not such right to an equitable remedy is reduced

3  to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or

4  unsecured.

5      1.21 1.20    Claimant shall mean the holder of a Claim.

6      1.22 1.21    Class shall mean a class of holders of Allowed Claims or Equity

7  Security described in Article III of the Plan.

8      1.23    Closing is defined in Section 6.6.1(iii) of the Plan.

9      1.22    Closing Date shall mean the date, within 270 days of the Effective Date,

10  designated in writing by the Sale Agent that the closing of the Transaction is scheduled to

11  occur. The Closing Date shall not be extended to a date later than 270 days after the

12  Effective Date, unless either both Members consent or the Bankruptcy Court approves a

13  further extension after notice and a hearing.

14      1.24 1.23    Confirmation shall mean the entry of an order by the Bankruptcy

15  Court approving and confirming the Plan in accordance with the provisions of the

16  Bankruptcy Code.

17      1.25 1.24    Confirmation Date shall mean the date upon which the clerk of the

18  Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

19      1.26 1.25    Confirmation Hearing shall mean a hearing conducted before the

20  Bankruptcy Court for the purpose of considering confirmation of the Plan, as such

21  hearing may be adjourned or continued from time to time.

22      1.27 1.26    Confirmation Order shall mean an order of the Bankruptcy Court

23  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy

24  Code.

25      1.28 1.27    Creditor shall mean any person that has a Claim against the Debtors

26  that arose on or before the Petition Date or a Claim against the Estates of any kind

6

3761444v1/22420-0006

specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.29 1.28 **Committee** shall mean the Official Committee of Unsecured Creditors, if any, that is appointed in the Case pursuant to Bankruptcy Code § 1102.

1.30 1.29 **C Squared** shall mean C Squared Capital Partners, L.L.C., the holder of a 40% minority Equity Security interest in ArmorWorks.

1.31 **C Squared Deposit** is defined in Section 6.6.1(ii) of the Plan.

1.32 **C Squared Election** is defined in Section 6.6.1(ii) of the Plan.

1.33 1.30 **Debt** shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

1.34 1.31 **Debtors** shall mean together ArmorWorks Enterprises, LLC, an Arizona limited liability company and TechFiber, LLC, a Delaware limited liability company. With respect to any period of time after the Effective Date, the term Debtors, as used herein shall mean and include the Debtors as reorganized under and in accordance with the confirmed Plan.

1.32 **DIP Facility** shall have the meaning set forth in the Final DIP Order.

1.33 **DIP Lender** shall mean Lancelot Armor, LLC.

1.34 **DIP Obligations** shall mean all amounts due and owing to DIP Lender under the DIP Facility and the Final DIP Order.

1.35 **Disbursing Agent** shall mean MCA Financial Group, Ltd., acting by and through Morris C. Aaron.

1.35 1.36 **Disallowed Claim** shall mean a Claim or portion thereof that: (i) has been disallowed by a Final Order; (ii) is identified in the Debtors' Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the Bar Date; or (iii) is not identified in the Debtors' schedules and as to which no proof of claim has been filed or deemed filed by the Bar Date.

1.36 1.37 **Disclosure Statement** shall mean and refer to the Disclosure

7

3761444v1/22420-0006

Statement in Support of Joint Plan of Reorganization filed by the Debtors as required pursuant to Section 1125 of the Bankruptcy Code.

1.37 1.38 Disputed Claim shall mean any Claim that is not an Allowed Claim or a Disallowed Claim and that has not been barred or otherwise disallowed or paid or otherwise satisfied. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtors and the holder thereof agree otherwise; provided, however, nothing in this definition is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim, including a Claim scheduled by the Debtors, that is the subject of a pending application, motion, complaint, objection or any other legal proceeding commenced or filed by the Debtors seeking to disallow, limit, subordinate or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.38 1.39 Effective Date shall mean the date, as by determined by the Debtors, that is after the date of the Order confirming the Plan entered by the Bankruptcy Court, and upon which the Debtors' exit financing has closed and the Debtor have sufficient funds to pay all Effective Date payments under the Plan.

1.39 1.40 Equity Security shall have the meaning set forth in Section 101(16) of the Bankruptcy Code and "Holders of Equity Security" shall have the meaning set forth in Section 101(17) of the Bankruptcy Code.

1.40 Escrow Agent is defined in Section 6.6.1(i).

1.41 Estate shall mean the estate of the applicable Debtor created in accordance with Section 541 of the Bankruptcy Code.

1.42 Executory Contract and Unexpired Lease or Executory Contract or Unexpired Lease shall mean a contract or lease to which a Debtor is a party that is subject

8

3761444v1/22420-0006

to assumption or rejection under Section 365 of the Bankruptcy Code.

1.43   Final DIP Order shall mean the *Stipulated Final Order (A) Approving Senior Secured Postpetition Financing, (B) Granting Senior Liens And (C) Providing Superpriority Administrative Expense Status* entered by the Bankruptcy Court on July 19, 2013.

1.43 1.44   Final Order shall mean any order of the Bankruptcy Court as to which (a) the time for appeal has expired and no appeal has been timely taken; (b) any appeal that has been timely taken has been finally determined or dismissed; or (c) an appeal has been timely taken, but such order remains in full force and effect and has not been stayed

1.44 1.45   General Unsecured Claims Houlihan Lokey shall mean all Unsecured Claims other than Vendor Unsecured Claims Houlihan Lokey Capital, Inc.

1.45 1.46   Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Equity Security", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

1.46   Intellectual Property Rights is defined in Section 6.6.1(v)(6) of the Plan.

1.47   IRS shall mean the Internal Revenue Service, Department of the Treasury of the United States of America.

1.48   License Agreement means the License Agreement dated September 1, 2001 executed by William J. Perciballi and ArmorWorks Enterprises, LLC, which if not assumed prior to the Confirmation Date, shall be assumed by the Debtors through the Confirmation Order.

1.49   Lien shall mean any lien or charge against or interest, including any security interest, in property to secure payment of a debt or performance of an obligation but only to the extent such lien, charge, or interest is valid, binding, enforceable and perfected and not subject to avoidance, defense, recharacterization or subordination.

9

1.50   Manager shall mean, as the context requires, either Anchor Management or Perciballi.

1.51   Managers shall mean Anchor Management and Perciballi.

~~1.50~~1.52   Member shall mean, as the context requires, either C Squared or AWI.

~~1.51~~1.53   Members shall mean C Squared and AWI.

1.54   Perciballi shall mean William J. Perciballi, one of the Managers of ArmorWorks.

~~1.52~~1.55   Perciballi Employment Agreement means the Employment Agreement dated January 1, 1997 between Advanced Protection Products, Inc. and William Perciballi ("Perciballi"), as amended by the Amendment to Employment Agreement dated August 27, 2001 executed by ArmorWorks, Inc. fka Advanced Protection Products, Inc. and Perciballi, and as further amended by Amendment No. 2 to Employment Agreement dated December 8, 2008 executed by ArmorWorks Enterprises, LLC and Perciballi.

~~1.53~~1.56   Petition Date shall mean June 17, 2013, the date that the Debtors filed their voluntary Chapter 11 petitions commencing the Case.

~~1.54~~1.57   Plan shall mean this plan of reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

~~1.55~~1.58   Priority Claims shall mean "Priority Tax Claims" and "Priority Non-Tax Claims" in the aggregate, and shall mean any claim to the extent entitled to priority in payment under Section 507 (3), (4), (5), (6), (7) or (8) of the Bankruptcy Code.

~~1.56~~1.59   Priority Non-Tax Claims shall mean Priority Claims other than Priority Claims entitled to priority treatment as a tax under Section 507(a)(8) of the

10

Bankruptcy Code.

1.57 1.60 **Priority Tax Creditor** shall mean a Creditor holding a Priority Tax Claim.

1.58 1.61 **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.59 1.62 **Proceedings** shall mean the Chapter 11 cases of the Debtors.

1.60 1.63 **Professional Persons** shall mean any professional employed in the Chapter 11 Case pursuant to Section 327 or Section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

1.61 1.64 **Professional Fee Claim** shall mean any claim by a Professional Person as provided for in Sections 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

1.62 1.65 **Pro Rata** shall mean, with respect to an amount of Cash to be paid or distributed to a Creditor or Member with respect to an Allowed Claim or Allowed Equity Security on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claims Claim or Allowed Equity Security of such Person in the indicated Class to the aggregate dollar amount of all Claims or Equity Securities in the indicated Class (including, in each such calculation, the full amount of Disputed Claims in the Class which have been asserted or are otherwise pending and which have not yet been Allowed or otherwise disposed of).

1.66 Redemption Amount Sale Agent shall mean Houlihan Lokey, to the principal sum of $6,100,000 or such other amount as extent that the employment of Houlihan Lokey is approved by the Bankruptcy Court determines to be the value, within.

11

3761444v1/22420-0006

If the meaningemployment of section 1129(b)(2)(C)(i) of Houlihan Lokey is not approved by the Bankruptcy Code, as ofCourt then the Effective Date, of C Squared's 40% minority Equity Security interest in term "Sale Agent" shall me the investment banking firm whose employment by the Debtors is approved by the Bankruptcy Court.

1.631.67 Sale Agent Agreement shall mean the Letter Agreement dated September 4, 2013 executed by ArmorWorks and Houlihan Lokey, to the extent that the employment of Houlihan Lokey is approved by the Bankruptcy Court. If the employment of Houlihan Lokey is not approved by the Bankruptcy Court then the term "Sale Agent Agreement" shall me the contract executed by the Debtor and the investment banking firm whose employment is approved by the Bankruptcy Court.

1.68 Sale Expenses shall refer to and mean all costs and expenses of the Transaction, including the Transaction Fee payable to the Sale Agent, and all expenses of the Sale Agent incurred in connection with the Transaction in accordance with the terms of the Sale Agent Agreement.

1.641.69 Secured Claim shall mean a Claim which is secured by a valid, perfected and unavoidable Lien against a Debtor's Assets as of the Petition Date, or which expressly attached to the proceeds of assets sold pursuant to an order of the Court but only to the extent of the value of such Debtor's interest in the property. In accordance with the Section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtor to the extent such holder's interest in the property is less than the amount of such Claim. To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is a General Unsecured Claim, unless otherwise provided for by order of the Bankruptcy Court.

1.651.70 Subordinated Claim shall mean all claims described in Section 510 of the Bankruptcy Code or claims which are otherwise subordinated pursuant to an Order

12

3761444v1/22420-0006

of the Bankruptcy Court.

1.71     Transaction shall have the meaning stated in the Sale Agent Agreement.

1.72     Transaction Fee shall have the meaning stated in the Sale Agent Agreement.

~~1.66~~1.73     Unsecured Claim shall mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen before the Petition Date for the Debtors, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

~~1.67~~1.74     Vendors shall mean those persons or entities ~~who provide~~that provided goods or services to the Debtors in the ordinary course of business in exchange for a contemporaneous payment, or pursuant to standard terms for payment for a term not exceeding forty-five (45) days.

~~1.68     Vendor Claims shall mean all Unsecured Claims held and asserted by Vendors as of the Effective Date.~~

1.75     Voting Class shall mean a Class of Claims under the Plan which is impaired and entitled to vote to accept or reject the Plan.

~~1.69~~

**ARTICLE II.  INTERPRETATION, RULES OF CONSTRUCTION, AND OTHER TERMS.**

2.1     Any term used in this Plan that is not defined herein, whether in Article 1 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall

13

3761444v1/22420-0006

**Formatted:** DSText .5, Left, Line spacing: single,  No bullets or numbering, Widow/Orphan control

be construed in accordance with the rules of construction used in the Bankruptcy Code.

2.2    The words "herein," "hereto," "hereunder," and others of similar importance, refer to the Plan as a whole and not to any particular article or clause contained in this Plan.

2.3    Unless specified otherwise in a particular reference, a reference in this Plan to an article is a reference to that article of this Plan.

2.4    Unless otherwise provided for, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

2.5    For purposes of this Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.

2.6    In addition to the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Plan.

2.7    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.8    Any exhibits or schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Court.

2.9    Where Claims are divided into subclasses in this Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

14

3761444v1/22420-0006

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1     <u>General Classification Provisions.</u>  For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and Equity Security shall be classified as set forth in this Article 3 of the Plan.  All Claims and Equity Security are classified under the Plan as hereafter stated in this Article 3; provided, however, that a Claim or Equity Security will be deemed classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Equity Security qualifies within the description of such different Class.  As of the Confirmation Hearing, any Class of Claims or Equity Security that does not contain any Creditor's Claim or an Equity Security will be deemed deleted automatically from the Plan; and any Class of Claims or Equity Security that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) or Equity Security will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.  A Claim or Equity Security is in a particular Class only to the extent the Claim or Equity Security is an Allowed Claim or Allowed Equity Security as defined herein.

3.2     <u>Classification of Claims and Equity Interests.</u>  The Plan classifies Claims and Equity Security in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Equity Security are impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan.  In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan.  The Allowed Claims against the Debtors' Estates are divided into the following classes:

15

3761444v1/22420-0006

3.2.1.  Class 1 (Priority Non-Tax Claims.  Class 1 consists of any Priority Non-Tax Claims against the Debtors existing as of the Confirmation Date.

3.2.2.  Class 2 (Secured Tax Claims).  Class 2 consists of any Secured Tax Claims against ~~any~~the Debtors existing as of the ~~Debtors.~~Confirmation Date.

3.2.3.  Class 3 (~~ArmorWorks General Unsecured~~Secured Claims).  Class 3 consists of ~~all General Unsecured~~any Secured Claims against ~~ArmorWorks~~any of the Debtors, except Secured Tax Claims,

Formatted: Underline

3.2.4.  Class 4 (ArmorWorks ~~Vendor~~General Unsecured Claims).  Class 4 consists of all ~~Vendor~~General Unsecured Claims against ArmorWorks.

3.2.5.  Class 5 (TechFiber General Unsecured Claims).  Class 5 consists of all General Unsecured Claims against TechFiber.

3.2.6.  Class 6 (~~TechFiber Vendor~~Member Unsecured Claims).  Class 6 consists of all ~~Vendor~~General Unsecured Claims asserted by any Member against ~~TechFiber.~~the Debtors.

~~3.2.7.~~  Class 7 (~~C Squared Claims and~~ Equity Security~~).~~ Interests In ArmorWorks).  Class 7 consists of the 40% ~~minority~~Member Equity Security of C Squared ~~in ArmorWorks, and any and all Claims of C Squared against the Debtors.~~

~~3.2.8.~~3.2.7.  ~~Class 8 (AWI Claims and Equity Security).~~  Class 8 consists ~~of the~~and the 60% ~~majority~~Member Equity Security of AWI in ArmorWorks~~, and any and all Claims of AWI against the Debtors.~~

~~3.2.9.~~3.2.8.  Class ~~9~~8 (ArmorWorks Equity Security in TechFiber).  Class ~~9~~8 consists of the 100% Member Equity Security of ArmorWorks in TechFiber.

16

3761444v1/22420-0006

**ARTICLE IV.      IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES**

4.1    <u>Unimpaired Classes of Claims and Interests.</u>  The following classes are not impaired under the Plan and are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code:

4.1.1.  Class 1 (Priority Non-Tax Claims).

4.1.2.  Class ~~9~~8 (ArmorWorks Equity Security in TechFiber).

4.2    <u>Impaired Classes of Claims and Interests.</u>  The following classes are impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and the Debtors will seek acceptance of the Plan from these classes:

4.2.1.  Class 2 (Secured Claims).

4.2.2.  Class 3 (~~ArmorWorks General Unsecured~~Secured Tax Claims).

4.2.3.  Class 4 (ArmorWorks ~~Vendor~~General Unsecured Claims).

4.2.4.  Class 5 (TechFiber General Unsecured Claims).

4.2.5.  Class 6 (~~TechFiber Vendor~~Member General Unsecured Claims).

~~4.2.6.~~    Class 7 (~~C Squared Claims and~~ Equity Security Interests~~)~~.

~~4.2.7.~~4.2.6.    ~~Class 8 (AWI Claims and Equity Security Interests).~~  In ArmorWorks).

**ARTICLE V.  PROVISIONS FOR TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN**

5.1    DIP Obligations.  The DIP Obligations shall be paid in full and in cash on the Effective Date before the payment of any other Claims against the Debtors, other than Vendor Administrative Claims.  Any dispute regarding the amount of the DIP Obligations shall be resolved by the Bankruptcy Court on an expedited basis prior to the occurrence of the Effective Date.  Notwithstanding anything to the contrary contained in

17

3761444v1/22420-0006

the Plan or the Confirmation Order, the terms of the Final DIP Order shall survive and shall remaining binding and enforceable until the DIP Obligations have been fully paid.

5.1 5.2 Administrative Expense Claims. Every Creditor holding an Allowed Administrative Claim against the Debtors will be paid, in full satisfaction of their Allowed Claim, after the payment in full of the DIP Obligations: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; (b) fully and in Cash when and within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim becomes is not an Allowed Claim after as of the Effective Date; (c) as otherwise agreed in writing by the Creditor holding the Allowed Administrative Claim and the Debtors; or (d) as otherwise ordered by the Bankruptcy Court. Administrative Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Administrative Claims.

5.2 5.4 Vendor Administrative Claims. The post-petition expenses owed to Vendors will be paid as they are incurred in the ordinary course of business. Any amounts outstanding as of the Effective Date will be paid in full on the later of the Effective Date, or in the ordinary course of the Debtors' business. Vendor Administrative Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Vendor Administrative Claims.

5.3 5.5 U.S. Trustee Fees. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on within ten (10) Business Days after the Effective Date, or as due in the normal course of billing and payment. The Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The reorganized Debtors shall file with the Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the cases remain open in a format prescribed by the United States Trustee and provided to the Debtor by the United

18

3761444v1/22420-0006

States Trustee, and shall pay such quarterly fees as become due for each quarter post-confirmation that the cases remain open. No motion or application is required to fix fees payable to the Clerks' Office or the Office of the United States Trustee, as those fees are determined by statute.

5.45.6 <u>Administrative Bar Date</u>. Requests for payment of Administrative Expenses, other than the DIP Obligations, Vendor Administrative Claims and Professional Fee Claims, must be filed and served pursuant to any procedures set forth in the Confirmation Order or notice of entry of the Confirmation Order, no later than thirty (30) days after the Confirmation Date.

5.55.7 <u>Professional Fee Claims</u>. The Bankruptcy Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Confirmation Date. Each Professional Person requesting compensation or reimbursement of expenses in the Proceedings pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than twenty (20) days after the Confirmation Date. Nothing herein shall prohibit each Professional Person from requesting interim compensation during the course of the Case pending Confirmation of this Plan. All fees, costs and disbursements of Professional Persons not heretofore paid through the Effective Date of the Plan, shall be paid in full on the later of the Effective Date or the allowance of the claim.

5.6 <u>Priority Tax Claims</u>

5.6.1. Priority Tax Claims are certain pre-Petition Date unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. The Bankruptcy Code requires, and thus this Plan provides, that each holder of a Section 507(a)(8) Priority Tax Claim receives regular installment payments in cash of a total value, as of the Effective Date, equal to the

19

3761444v1/22420-0006

allowed amount of such claim over a period ending not later than five (5) years after the Petition Date, in a manner not less favorable than non-priority, unsecured claims.

5.6.2.5.8 To the extent Allowed Priority Tax Claims exist on the Confirmation Date, holders of Allowed Priority Tax Claims will be (a) paid: (a) fully and in fillCash on the later of the Effective Date or the allowance of thebefore ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; or (b) over a period not exceeding five (5) yearsfully and in Cash within ten (10) Business Days after the Petition Date, in the sole and absolute discretion of the Debtorentry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Priority Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate in accordance with section 511 of the Bankruptcy Code. No amounts attributable to penalties imposed or sought to be imposed by holders of Priority Tax Claims will be paid.

Priority Tax Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Priority Tax Claims.

5.7.5.9 Class 1 (Priority Non-Tax Claims). AnyTo the extent Allowed Priority Non-Tax Claims exist on the Confirmation Date, holders of Allowed Priority Non-Tax Claims will be paid by the Debtors: (a) fully and in full on the later ofCash on or before ten (10) Business Days after the Effective Date or the allowance of if the Claim is then an Allowed Claim; or (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 1 Claims are unimpaired under the Plan, and the holders of Class 1 Claims are not entitled to vote on the Plan.

5.8.5.10 Class 98 (ArmorWorks Equity Security in TechFiber). The prepetition Equity Security of ArmorWorks in TechFiber shall be an Allowed interest,

20

and ArmorWorks shall retain all such Equity Security in TechFiber, as reorganized, under the Plan.  On the Closing Date, the Equity Security of ArmorWorks in TechFiber shall be disposed of through the Transaction.  Class 98 Equity Security interests are unimpaired under the Plan, and holders of Class 98 Equity Security are not entitled to vote on the Plan.

**ARTICLE VI:  PROVISIONS FOR TREATMENT OF CLAIMS IMPAIRED UNDER THE PLAN**

6.1   <u>Class 2 (Secured Claims)</u>.  The Debtors do not believe there are any Class 2 Secured Claims existing against the Debtors as of the Petition Date.  Holders of Allowed Class 2 Secured Claims, if any, will retain their prepetition liens in their collateral.  Each Claimant holding an Allowed Class 2 Secured Claim will be placed in a separate sub-class of Class 2 for the purposes of voting on the Plan and the treatment of their respective Claims under the Plan.  In the sole and absolute discretion of the Debtors Disbursing Agent, after consultation with the Managers, Allowed Class 2 Secured Claims shall be satisfied as follows:  (a) through the abandonment or transfer of the collateral to the secured creditor within ten (10) days Business Days after the later of the Effective Date or the allowance of the Claim, in which case the Claimant shall have the right to assert a General Unsecured Claim paid under Class 34 or 56, as applicable, for any deficiency to the extent allowable by applicable non-bankruptcy law; or (b) through equal monthly payments of principal and interest over sixty (60) months with interest any prepetition default under the applicable contract and security documents will be cured on the Effective Date and regular payments will be made to the holder of the Allowed Class 2 Secured Claim after the Effective Date in accordance with the applicable contract; or (c) the Allowed Class 2 Secured Claim will be paid in full within ten (10) Business Days after the Closing Date with interest from and after the Effective Date at the greater of the

21

non-default contract rate of interest or 5% simple interest per annum.  No default interest or other penalties will be paid~~-~~ to holders of Allowed Class 2 Secured Claims.

Class 2 Secured Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.2     Class 3 (~~ArmorWorks General Unsecured~~Secured Tax Claims).  Class 3 Claims consists of all ~~General Unsecured~~Secured Tax Claims against ~~ArmorWorks. Allowed Class 3 Claims will accrue interest from~~the Debtors for 2012 and ~~after the Effective~~2013 real or personal property taxes that are past due as of the Petition Date ~~at the rate of 5% per annum simple interest.~~  Holders of Allowed Class ~~5~~3 Claims will ~~be paid an initial distribution,~~retain their liens on the ~~later of the Effective Date or the allowance of their Claim, equal to 20% of the Allowed amount of their Claim.~~Property that serves as security for repayment of Allowed Class 3 Claims.  The ~~balance of the~~ Allowed Class 3 ~~Claims~~claims, including post-petition interest at 16% per annum, in accordance with 11 U.S.C. § 511, will be paid in full within ten (10) Business Days after the Closing Date.  Real and personal property taxes for 2013 and beyond that first become due after the Petition Date will be paid in ~~annual distributions, equal to 20% of the Allowed Claim plus accrued interest, beginning on the first anniversary of the Effective Date and continuing on the anniversary date of each subsequent year until paid in full.  All Allowed Class 3 Claims plus interest will be paid in full on or before the later of the fourth anniversary of the Effective Date or allowance of the Claim.~~the ordinary course of business as such taxes become due.

Class 3 ~~ArmorWorks General Unsecured~~Claims are impaired~~,~~ and ~~the~~ holders are entitled to vote to accept or reject the Plan.

6.3     Class 4 (ArmorWorks ~~Vendor~~Unsecured Claims).  Class 4 consists of all ~~Vendor~~Unsecured Claims against ArmorWorks.  Allowed Class 4 Claims will accrue interest from and after the Effective Date at the rate of 5% per annum simple interest.

3761444v1/22420-0006

Holders After the payment in full of all Administrative Claims and all Priority Claims, holders of Allowed Class 4 Claims will be paid an initial distribution, on the later latest of ten (10) Business Days after the Effective Closing Date or the allowance of their the Claim, equal to 25% of the Allowed amount of their Claim. The balance of the Allowed

6.3 Class 4 Claims will be paid in annual distributions, equal to 25% of the Allowed Claim plus accrued interest, beginning on the first anniversary of the Effective Date and continuing on the anniversary date of each subsequent year until paid in full. All Allowed Class 4 Claims plus accrued interest will be paid in full on the later of the third anniversary of the Effective Date or the allowance of the Claim. ArmorWorks Unsecured Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

Formatted: Indent: First line: 0.5", No bullets or numbering

Formatted: No underline

Class 4 ArmorWorks Vendor Claims are impaired, and holders are entitled to vote to accept or reject the Plan.

6.4 <u>Class 5 (TechFiber General Unsecured Claims)</u>. Class 5 consists of all General Unsecured Claims against TechFiber. Allowed Class 5 Claims will accrue interest from and after the Effective Date at the rate of 5% per annum simple interest. Holders of Allowed Class 5 Claims will be paid an initial distribution, on the later of the Effective Date or the allowance of their Claim, equal to 20% of the Allowed amount of their Claim. The balance of the Allowed Class 5 Claims will be paid in annual distributions, equal to 20% of the Allowed Claim plus accrued interest, beginning on the first anniversary of the Effective Date and continuing on the anniversary date of each subsequent year until paid in full. All Allowed Class 5 Claims plus interest will be paid in full on or before the later of the fourth anniversary of the Effective Date or allowance of the Claim. Holders of Allowed Class 5 Claims will be paid on the latest of ten (10) Business Days after the Closing Date or the allowance of the Claim.

3761444v1/22420-0006

Class 5 TechFiber ~~General~~ Unsecured Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

~~6.5~~ **Class 6 (~~TechFiber Vendor~~Member Unsecured ~~Claims~~).** Class 6 consists of ~~all Vendor~~any General Unsecured Claims ~~against TechFiber. Allowed Class 6 Claims will accrue interest from and after the Effective Date at the rate of 5% per annum simple interest. Holders of~~asserted by any Member against the Debtors. Pursuant to 11 U.S.C. § 510(b), any Allowed Class 6 Claims will be ~~paid an initial distribution, on the later of the Effective Date or the allowance of their Claim, equal to 25% of the Allowed amount of their Claim. The balance of the~~ subordinate in payment to all other Allowed Claims against the Debtors, all Sale Expenses, all post-petition liabilities of the Reorganized Debtors, and all fees and expenses of the Disbursing Agent. Allowed Class 6 Claims will be paid ~~in annual distributions, equal to 25% of the Allowed Claim plus accrued interest, beginning on the first anniversary of the Effective Date and continuing on the anniversary date of each subsequent year until paid in full. All Allowed Class 6 Claims plus interest will be paid in full on or before the later of the third anniversary of the Effective Date or allowance of the Claim.~~

~~Class 6 TechFiber Vendor Claims are impaired, and holders are entitled to vote to accept or reject the Plan.~~

~~6.6 Class 7 (C Squared Claims and Equity Security). The holder, as of the Effective Date, of any Allowed Class 7 Claims and Equity Security may elect, in full and final satisfaction of all such Allowed Claims and Equity Security, to (a) accept the Redemption Amount from ArmorWorks; or (b) pay AWI the AWI Purchase Price to acquire AWI's 60% Equity Security interest in ArmorWorks; each in accordance with the following buy-sell procedure:~~

~~6.6.1 Buy Sell Procedure.~~

~~(i) Purchase Offer. On the Effective Date, ArmorWorks shall be~~

24

deemed to have offered C Squared the Redemption Amount in exchange for, and in full and final satisfaction of, C Squared's Equity Security interest in ArmorWorks and any and all Claims of C Squared against the Debtors and their Affiliates. Within on the latest of the allowance of the Claim and five business(5) days of the Effective Date, ArmorWorks shall tender to a commercially recognized escrow agent reasonably selected by ArmorWorks (the "Escrow Agent") an amount equal to 2½% of the Redemption Amount as a deposit (the "ArmorWorks' Deposit"); and (ii) forms of instruments pursuant to which AWI's interest in ArmorWorks will be conveyed to C Squared. ArmorWorks' Deposit shall be returned to ArmorWorks at the Closing (defined in 6.6.1(iii) below) unless it is retained by C Squared pursuant to Section 6.6.1(iv) below or unless sooner returned pursuant to Section 6.6.1(ii) below. ArmorWorks' Deposit shall be held in an interest bearing account with the interest being credited to the account of the party ultimately receiving ArmorWorks' Deposit. ArmorWorks and C Squared each shall pay one half of the costs of the Escrow Agent, regardless of whether C Squared accepts ArmorWorks' offer to redeem or the offer to purchase.

(ii)6.5 C Squared's Election. Within 15 days of the Effective Date, C Squared shall elect (the "C Squared Election") to accept either offer by a written acceptance delivered to ArmorWorks, unconditionally stating that C Squared shall either: (i) buy AWI's interest in the Company at the AWI Purchase Price; or (ii) allow its entire Equity Security interest to be redeemed by ArmorWorks, and all of its after all other Allowed Claims against the Debtors and their Affiliates to be satisfied, all in exchange for its receipt of the Redemption Amount. If C Squared accepts AWI's offer to sell, C Squared shall, simultaneously with such written acceptance, tender to the Escrow Agent an amount equal to 2 ½% of the AWI Purchase Price to be held as a deposit for the benefit of AWI (the "C Squared Deposit"). If C Squared fails to accept one of the offers within

25

3761444v1/22420-0006

1  ~~15 days of the Effective Date, C Squared shall be deemed to have accepted ArmorWorks'~~
2  ~~offer to pay the Redemption Amount to C Squared in full and final satisfaction of all of C~~
3  ~~Squared's Equity Security interests in ArmorWorks and all Claims of C Squared against~~
4  ~~the Debtors and their Affiliates. If C Squared accepts AWI's offer to sell, ArmorWorks'~~
5  ~~Deposit shall be promptly returned to ArmorWorks, together with any interest thereon.~~
6  ~~During the pendency of the offers, there shall be no action taken by ArmorWorks or any~~
7  ~~Member of ArmorWorks out of the ordinary course of business which would result in a~~
8  ~~material change in the assets or liabilities of ArmorWorks, except any actions specifically~~
9  ~~contemplated and authorized under the Plan~~ have been paid. No interest will be paid to
10 holders of Allowed Class 6 Claims.
11 ~~(iii)    Closing. The closing shall be held at ArmorWorks' principal place~~
12 ~~of business on the first Business Day following the 60th day after: (a) the date of C~~
13 ~~Squared's Election, or (b) the date upon which C Squared is deemed to have~~
14 ~~elected to accept the Redemption Amount, (or on such other date as may be~~
15 ~~mutually agreed to in writing by ArmorWorks and C Squared) (the "Closing").~~
16 ~~(iv)    Redemption of C Squared Equity. If C Squared accepts, or is~~
17 ~~deemed to have accepted, the Redemption Amount, at Closing the C Squared~~
18 ~~Equity Security shall be deemed to fully redeemed and terminated, all Claims of C~~
19 ~~Squared against the Debtors, their Affiliates, and Perciballi shall be deemed to be~~
20 ~~fully satisfied and discharged, and C Squared shall receive payment of the~~
21 ~~Redemption Amount as follows:~~
22 ~~1)    cash or other immediately available funds from escrow in an~~
23 ~~amount equal to 20% of the Redemption Amount (inclusive of the~~
24 ~~ArmorWorks' Deposit); and~~
25 ~~2)    ArmorWorks shall execute and deliver to C Squared a~~
26 ~~promissory note for the balance of the Redemption Amount, which~~

26

provides for the original principal balance to be paid in equal yearly installments of principal and interest based on a seven year amortization schedule (the "Note"). The principal balance under the Note shall bear interest at the rate of 10% per annum. The principal balance of the Note, together with all accrued but unpaid interest thereon, shall be due and payable in full on the 7th anniversary of the date of the Note. Payments of all or any portion of the unpaid principal balance under the Note may be prepaid from time to time, without premium or penalty. The Note shall also provide that the holder of the Note shall have the right to accelerate the entire balance of the principal and accrued and unpaid interest if any installment of principal or interest is not paid when due and remains unpaid 20 days after written notice of such nonpayment. Closing adjustments and payments shall be made as are customary in Maricopa County, Arizona, at the time of the sale.

3) As security for the payment of all amounts due under the Note, ArmorWorks and AWI will execute and deliver to C Squared a Pledge Agreement granting C Squared a perfected first lien security interest in the Equity Security in ArmorWorks, as reorganized.

4) Within ten (10) Business Days of the payment in full of all amounts due and owing under the Note, C Squared shall: (a) deliver the original Note to ArmorWorks marked "CANCELLED" and bearing the signatures of the members of C Squared adjacent to such marking; (b) deliver written confirmation to ArmorWorks and AWI that all security interests under the Pledge Agreement have terminated; and (c) cause any UCC-1 Financing Statement filed to perfect the security interests to be terminated. If C Squared fails to execute, acknowledge or deliver any

27

document required to be delivered pursuant to this subsection, C Squared irrevocably appoints ArmorWorks as its attorney-in-fact for the sole purpose of executing, acknowledging and delivering same on its behalf pursuant to this Section 6.6.1(iv)(4). Notwithstanding the foregoing power of attorney, and in addition to any other rights which ArmorWorks may have, ArmorWorks shall have the right to apply to a court of competent jurisdiction for specific performance, and C Squared shall not plead as a defense that an adequate remedy exists at law.

5)     Immediately upon Closing, Anchor Management, LLC shall be deemed removed as a manager of ArmorWorks.

6)     Failure to Timely Close.   If, at or prior to Closing, ArmorWorks fails to tender the Redemption Amount or fails to perform any other material obligation or covenant required to be performed by it under this Section 6.6.1(iv), then the ArmorWorks' Deposit shall be retained by C Squared as liquidated damages, and C Squared shall have the option to either:  (a) purchase the AWI Equity Security interest in ArmorWorks in accordance with Section 6.6.1(v) below, except that the new "Closing" for the purchase shall be the first Business Day following the 60th Business Day after the original Closing date; or (b) retain its 40% minority Equity Security in ArmorWorks, as reorganized.

(v)     Purchase of AWI Equity Security.  If C Squared elects to purchase the AWI Equity Security, then at Closing AWI shall assign and deliver to C Squared free and clear of all liens, encumbrances and claims of third parties created by AWI, and all Claims of AWI against the Debtors and their Affiliates shall be deemed to be fully satisfied and discharged, in exchange for payment of the AWI Purchase Price to AWI by C Squared, as set forth below, and the

28

following provisions shall apply to the purchase:

    1)   cash or other immediately available funds from escrow in an amount equal to 20% of the AWI Purchase Price (inclusive of the C Squared Deposit); and

    2)   C Squared shall execute and deliver to AWI a promissory note for the balance of the AWI Purchase Price, which provides for the original principal balance to be paid in equal yearly installments of principal and interest based on a seven year amortization schedule (the "C Squared Note"). The principal balance under the C Squared Note shall bear interest at the rate of 10% per annum. The principal balance of the C Squared Note, together with all accrued but unpaid interest thereon, shall be due and payable in full on the 7th anniversary of the date of the C Squared Note. Payments of all or any portion of the unpaid principal balance under the C Squared Note may be prepaid from time to time, without premium or penalty. The C Squared Note shall also provide that the holder of the C Squared Note shall have the right to accelerate the entire balance of the principal and accrued and unpaid interest if any installment of principal or interest is not paid when due and remains unpaid 20 days after written notice of such nonpayment. Closing adjustments and payments shall be made as are customary in Maricopa County, Arizona, at the time of the sale.

6.6   As security for the payment of all amounts due under the C Squared Note, ArmorWorks and C Squared will execute and deliver to AWI a Pledge Agreement granting AWI a perfected first lien security interest in 60% of the Class 7 (Equity Security Interests in ArmorWorks). Class 7 consists of the 40% Member Equity Security of C Squared and the 60% Member Equity Security of AWI in ArmorWorks, which shall be

29

3761444v1/22420-0006

Allowed Equity Security interests under the Plan.  On the Closing Date, at closing, all Member Equity Security in ArmorWorks shall be cancelled.  In full and final satisfaction of their respective Member Equity Security in ArmorWorks, each Member first shall receive their Pro Rata share of all cash and any non-cash consideration received by ArmorWorks from the Transaction that is available for distribution to Members after the payment of all Allowed Claims against the Debtor, all Sale Expenses, all fees and expenses of the Disbursing Agent, and all post-petition liabilities of the Reorganized Debtors (to the extent any of the foregoing are not assumed by the buyer at closing under the Transaction).

3)    Class 7 Equity Security Interests in ArmorWorks, as reorganized.

4)    Within ten (10) Business Days of the payment in full of all amounts due and owing under the C-Squared Note, AWI shall: (a) deliver the original C-Squared Note to C-Squared marked "CANCELLED" and bearing the signatures of the members of AWI adjacent to such marking; (b) deliver written confirmation to C-Squared and ArmorWorks that all security interests under the Pledge Agreement have terminated; and (c) cause any UCC-1 Financing Statement filed to perfect the security interests to be terminated.  If AWI fails to execute, acknowledge or deliver any document required to be delivered pursuant to this subsection, AWI irrevocably appoints C-Squared as its attorney in fact for the sole purpose of executing, acknowledging and delivering same on its behalf pursuant to this Section 6.6.1(v)(4).  Notwithstanding the foregoing power of attorney, and in addition to any other rights which C-Squared may have, C-Squared shall have the right to apply to a court of competent jurisdiction for specific performance, and AWI shall not plead as a defense that an adequate remedy

30

exists at law.

5)  ~~IP/Employment.   If C Squared elects to purchase AWI's Equity Security in ArmorWorks, then at Closing: (a) William Perciballi shall also assign to ArmorWorks any and all of AWI's and Perciballi's right, title and interest in and to all intellectual property rights used in connection with or related to the Debtors in any way, including, but not limited to the Intellectual Property that is the subject of the License Agreement (together, the "Intellectual Property Rights"), as is where is and without representations or warranties of any kind or nature, and (b) Perciballi's employment shall be deemed terminated without "Cause" pursuant to the Perciballi Employment Agreement, and all amounts due thereunder for a termination without "Cause" shall be paid immediately by C Squared or ArmorWorks to Perciballi, even if the payment thereof is otherwise permitted or required to be paid over time as provided in the Perciballi Employment Agreement.~~

6)  ~~Failure to Timely Close.  If, at or prior to Closing, C Squared fails to tender the AWI Purchase Price or fails to perform any other material obligation or covenant required to be performed by it under this Section 6.6.1(v), then the C Squared Deposit shall be retained by ArmorWorks as liquidated damages, and C Squared shall be deemed to have accepted the Redemption Amount, and the provisions of Section 6.6.1(iv) shall apply, except that the new "Closing" for the redemption shall be the first Business Day following the 60th Business Day after the original Closing date.~~

~~Class 7 C Squared Claims and Equity Security interests~~ are impaired, and the ~~holder is~~holders are entitled to vote to accept or reject the Plan.

31

6.7    ~~Class 8 (AWI Claims and Equity Security).   Subject to the C Squared~~ ~~Election, or any deemed election by C Squared, under Section 6.6 of the Plan, the holder,~~ ~~as of the Effective Date, of the Allowed Class 8 Claims and Equity Security interests, in~~ ~~full and final satisfaction of all such Allowed Claims and Equity Security interests, shall~~ ~~either: (a) retain its Equity Security in ArmorWorks, as reorganized; or (b) receive the~~ ~~AWI Purchase Price from C Squared in accordance with Section 6.6.1(v) of the Plan.~~

~~Class 8 AWI Claims and Equity Security interests are impaired, and the holder is~~ ~~entitled to vote to accept or reject the Plan.~~

**ARTICLE VII:    ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS**

7.1    Impaired Classes to Vote.  Each impaired class of Creditors with Claims against the Debtors shall be forwarded a ballot and shall be entitled to vote to accept or reject the Plan.

7.2    Acceptance by a Class of Creditors.  A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the aggregate dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims of such class that have voted to accept or reject the Plan.

7.3    Cram-down.  In the event that any impaired Class of Creditors with Claims against the Debtors' Estates shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Section 1129(b)(1) of the Bankruptcy Code.

7.4    Blank Ballots.  Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

32

3761444v1/22420-0006

**ARTICLE VIII: MEANS OF EFFECTUATING THE PLAN**

8.1 ~~In General.~~ The Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code.

~~8.2 The Plan will be funded from the Debtors' ongoing business operations, and in some cases, through the sale of assets deemed by the Debtors to be no longer necessary for ongoing operations.~~

8.2 ~~The Debtors intend to obtain~~ Post Confirmation Management of Debtors. Perciballi will direct and manage the day-to-day operations of the Debtors post-confirmation until the Closing Date. Perciballi will consult with Anchor and C Squared before proceeding with any of the following (the "Non-ordinary Course Transactions"):

8.2.1. Accept or call for any additional capital contributions;

8.2.2. Borrow money for AWE from banks, other lending institutions, a Member, a Manager or an affiliate of a Member or Manager on such terms as the Members deem appropriate and, in connection therewith, to hypothecate, encumber and grant security interest in the assets of AWE to secure repayment of the borrowed sums;

8.2.3. Do any act that would make it impossible to carry on the ordinary business of AWE;

8.2.4. Admit a new Member of AWE;

8.2.5. Assign AWE's rights in specific AWE assets, or commingle AWE funds with those of any other person for other than an AWE purpose;

8.2.6. Amend the Articles of Organization;

8.2.7. Make an assignment for the benefit of creditors of AWE, file a new voluntary petition in bankruptcy or appoint a receiver for AWE; or

8.2.8. Cause AWE to be dissolved.

33

3761444v1/22420-0006

In the event that Anchor or C Squared objects to a Non-ordinary Course Transaction, Perciballi will obtain authorization from the Bankruptcy Court before proceeding with a Non-ordinary Course Transaction. Perciballi shall communicate openly with Anchor and C Squared and shall provide to Anchor and C Squared, upon request, any and all any non-classified fact(s), data, or document(s) relating to the Debtors; provided, however, that facts, data and documents that are designated as Classified by the federal government, or that are designated For Official Use Only ("FOUO") (which gives rise to an exception under the Freedom of Information Act), or are designated as Unclassified Nuclear Information ("UNCI"), shall not be shared with Anchor or C Squared or their principals. Without limiting the foregoing, Perciballi shall hold weekly conference calls with Anchor to provide regular updates and disclosures regarding the business of the Debtors.

8.3    Exit Financing.  Prior to confirmation, the Debtors will arrange for exit financing, to be funded on or before the Effective Date, to repay any debtor in possession financing approved by the Court, to the DIP Obligations, fund Effective Date payments required under the Plan and for working capital, and fund the working capital needs of the Debtors through the Closing Date.  The terms of the exit financing will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

8.4    Transaction.  The Allowed Claims and Equity Security Interests in the Debtor will be satisfied through the proceeds of a Transaction solicited and negotiated by the Sale Agent in accordance with the terms of the Sale Agent Agreement that will obtain the maximum value for Creditors and Members.  The closing of the Transaction is subject to the entry of an order of the Bankruptcy Court approving the Transaction. Morris C. Aaron of MCA Financial Group, Ltd. will represent the Debtors and the estate in connection with all aspects of the Transaction.  In that regard, and on behalf of the Debtors, Mr. Aaron will (among other things):

34

(i) facilitate all informational and related needs of the Sale Agent;

(ii) ensure transparency in the process leading up to the Transaction;

(iii) coordinate and facilitate regular and open communications between the Sale Agent, the Managers and Members of the Debtor, and the Committee; and

(iv) ultimately determine, in his reasonable business judgment after taking into account the views of the Sale Agent, the Managers and Members of the Debtor, and the Committee, the highest and best Transaction to present to the Bankruptcy Court for approval.

If approved, the Transaction shall close no later than the Closing Date. If the transaction is structured as an asset sale, then all of the assets of ArmorWorks, TechFiber, and all non-debtor subsidiaries of ArmorWorks, will be sold free and clear of all liens pursuant to Bankruptcy Code § 1123(a)(5)(D). If the Transaction is structured as a sale of the Equity Security of ArmorWorks, then the order of the Bankruptcy Court approving the sale will provide for the cancellation of the prepetition Equity Security Interest in ArmorWorks and the issuance of new Equity Security in the Reorganized Debtor to the buyer effective as of the closing. All Sale Expenses and the Transaction Fee will be paid from escrow at closing.

8.5 Sale Agent. The Confirmation Order will provide for the appointment of the Sale Agent. The rights and obligations of the Sale Agent under the Plan shall be governed by the Sale Agent Agreement, the Plan and the Confirmation Order. Mr. Aaron will direct the Sale Agent to communicate openly with both Managers and both Members, and Mr. Aaron will direct the Sale Agent to refrain from withholding any fact(s), data or document(s) from any Manager or Member. Mr. Aaron will direct the

35

Sale Agent to provide to any Manager or Member any and all any fact(s), data or document(s) requested by the Manager or Member. Furthermore, Mr. Aaron will direct the Sale Agent to disclose all material information and communication to both Managers and both Members regarding the sale process and the Transaction. Mr. Aaron will direct the Sale Agent to hold weekly conference calls with the Managers and Members to provide updates and disclosures regarding the sale process.

8.6 Disbursing Agent. The Confirmation Order will provide for the appointment of MCA Financial Group, Ltd. as the Disbursing Agent effective as of the Closing Date.

8.6.1. The Disbursing Agent shall have all necessary powers and authority on behalf of the Debtors' Estates to:

(i) determine the Transaction that will be presented to the Court for approval;

(ii) object to Claims, and complete the Claims objection and Claims administration process under Plan, to the extent that any Claim objections remain unresolved as of the Closing Date;

(iii) make all disbursements after the Closing Date to holders of Allowed Claims in accordance with the Plan;

(iv) make all disbursements after the Closing Date to holders of Allowed Equity Security interests in accordance with the Plan;

(v) pay all post-petition operating and other expenses of the Debtors and their Estates after the Closing Date, to the extent not assumed by the buyer at closing through the Transaction, including Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) payable to the Office of the United States Trustee;

36

(vi)  oversee the completion of any final tax and accounting issues for the Debtors' Estates, including filing all local, state, and federal tax returns and other required filings;

(vii)  file quarterly post-confirmation reports and a final report and accounting with the Bankruptcy Court;

(viii)  to do all other things reasonably necessary to carry out the purpose or intent of the Plan, wind-down the Debtors' Estates, and close the Bankruptcy Case; and

(ix)  seek and obtain the entry of a final decree and an order from the Bankruptcy Court discharging and releasing the Disbursing Agent and closing the case.

8.6.2. Professionals.  The Disbursing Agent may retain and compensate professionals (which may include Professional Persons) to reasonably assist the Disbursing Agent in performing its duties under the Plan, on such terms as the Disbursing Agent deems appropriate, without Bankruptcy Court approval.

8.6.3. Expenses Incurred on or After the Closing Date.  The amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Closing Date (including, without limitation, reasonable attorney and other professional fees and expenses) shall be paid from the proceeds of the Transaction prior to the calculation of any distributions to the Members.  The Disbursing Agent shall receive hourly compensation for services rendered in carrying out its duties under the Plan based as follows:

(i)  Senior Managing Directors - $425

(ii)  Managing Directors - $350

(iii)  Directors - $295

(iv)  Administrative and research personnel - $95

37

1    8.6.4. No Liability of the Disbursing Agent. To the maximum extent
2    permitted by law, the Disbursing Agent and its representatives, principals,
3    employees, and agents, and any professionals employed or retained by the
4    Disbursing Agent shall not have or incur liability to the Estates, any Creditor,
5    Manager, Member, Person or Governmental Unit for an act taken or omission
6    made in good faith in connection with or related to any action taken or omitted by
7    it pursuant to the discretion, power and authority conferred to it by the Plan or the
8    Confirmation Order. The Disbursing Agent shall not be liable to the Estates, any
9    Creditor, Manager, Member, Person or Governmental Unit for any act or omission
10   of the Disbursing Agent, or agent of the Disbursing Agent, or be held to any
11   personal liability whatsoever in tort, contract, or otherwise in connection with the
12   affairs of the Debtors or the Estates, except for liabilities arising from the
13   Disbursing Agent's bad faith, gross negligence, fraud, willful misfeasance or
14   reckless disregard of duty or law. The Disbursing Agent shall not be liable except
15   for the performance of any duties and obligations as are specifically set forth in
16   this Plan, and no implied covenants or obligations shall be read into this Plan
17   against the Disbursing Agent. The Disbursing Agent shall in all respects be
18   entitled to reasonably rely on the advice of counsel with respect to its duties and
19   responsibilities under the Plan. Entry of the Confirmation Order constitutes a
20   judicial determination that the exculpation provision contained in this Section is
21   necessary to, inter alia, facilitate Confirmation and feasibility and to minimize
22   potential claims arising after the Confirmation Date for indemnity, reimbursement
23   or contribution from the Estates, or their respective property. The Confirmation
24   Order's approval of the Plan also constitutes a res judicata determination of the
25   matters included in this exculpation provision of the Plan.
26

38

8.6.5. Indemnification. The Disbursing Agent and any employees, agents, attorneys or other professionals retained by the Disbursing Agent (collectively, an "Indemnified Person"), shall be entitled to indemnification out of the Estates against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims (collectively, "Expenses") which any Indemnified Person may incur or sustain by reason of being or having been the Disbursing Agent, or being or having been employed or retained by the Disbursing Agent, or for performing any functions incidental to such service, employment or retention; provided, however, that the foregoing shall not relieve any Indemnified Person for liability for bad faith, gross negligence, fraud, willful misfeasance or reckless disregard of duty or law. The indemnification provided in this paragraph shall not be deemed exclusive of any other rights to which any Indemnified Person may be entitled pursuant to any other agreement or otherwise, and shall continue as to a person or entity that has ceased to be the Disbursing Agent, or ceased to be employed or retained by the Disbursing Agent and shall inure to the benefit of the successor and legal representatives of such person or entity.

8.6.6. Limitation of Liability; Unknown Property. The Disbursing Agent shall not be personally liable with respect to any liabilities or obligations of the Debtors or their Estates, including, without limitation, those arising under this Plan whether before or after the Closing Date, and all persons dealing with the Debtors or Reorganized Debtors must look solely to the Estates for the enforcement of any claims against the Debtors or the Estates. The Disbursing Agent shall be responsible for only the assets delivered to him, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

39

3761444v1/22420-0006

**ARTICLE IX: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

9.1     The Plan contemplates and hereby provides for the assumption, pursuant to Section 365 of the Bankruptcy Code, of any and all Executory Contracts and Unexpired Leases of the Debtors which are in force on the Confirmation Date, except (i) those Executory Contracts and Unexpired Leases which were specifically rejected pursuant to an order of the Court prior to the Confirmation Date, and (ii) those Executory Contracts and Unexpired Leases which are listed on Schedule 9.1 attached hereto (or on any amendment to Schedule 9.1 filed on or before the Confirmation Date).  Notwithstanding any other provision in this Plan or prior notice of any kind from the clerk of the Bankruptcy Court, any and all Creditors or persons with Claims against the Debtors' Estate arising out of or in connection with or due to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall have thirty (30) days from the Confirmation Date within which to file a proof of claim in the true amount of such Claims.  If any such Creditors fail to file such proofs of claim within said thirty (30) day period, then such Creditors shall have no Claims against the Debtors or their Estates, which Claims arising out of or in connection with or due to the rejection of such Executory Contract or Unexpired Lease, shall be dismissed, released and null and void.

9.2     Any Entity who's Claim arises from the rejection of an Executory Contract or Unexpired Lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Claimant in Class 34 or 5, as applicable with respect thereto.

9.3     Any claim filed in accordance with the provisions of Section 9.1 hereof shall be treated as a Disputed Claim until the period of time has elapsed within which the Debtors may file an objection to such Claim.

**ARTICLE X: RE-VESTING**

Except as expressly provided for in the Plan or the Confirmation Order, on the

40

Effective Date, the Debtors shall be vested with all remaining property and assets of their respective Estates, free and clear of all claims, liens, charges, and other interests of creditors and interest holders arising prior to the Petition Date.

**ARTICLE XI: RETENTION OF JURISDICTION**

11.1    Notwithstanding the entry of the Confirmation Order or the occurrence of Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case and any proceedings related thereto to the fullest extent permitted by the Bankruptcy Code or applicable law, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

11.2    In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142 of the Bankruptcy Code.   If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority, or commission having competent jurisdiction over such matters.

11.3    Without limiting the foregoing, the Bankruptcy Court shall retain exclusive jurisdiction of the Case for the following matters:

11.3.1.  To approve or disapprove any Transaction proposed under the Plan;

11.3.1 11.3.2. To enable the  Debtors to consummate any and all proceedings which may have been brought before or after the entry of the Confirmation Order, to set aside Liens or encumbrances, to challenge or object to the allowance of Claims and to recover any preferences, transfers, assets or damages to which a Debtor may be entitled under the applicable provisions of the Code or other federal, state or local law;

41

3761444v1/22420-0006

~~11.3.2~~ 11.3.3. To adjudicate all controversies concerning the classification or allowance of a Claim or Equity Security;

~~11.3.3~~ 11.3.4. To adjudicate all disputes regarding or relating in any way to Claims, Equity Security, and the Plan;

~~11.3.4~~ 11.3.5. To hear and determine all claims or motions arising from or seeking the rejection of any Executory Contracts or Unexpired Leases, and to consummate the rejection and termination thereof or with respect to any Executory Contracts or Unexpired Leases to which an application or motion for rejection or termination is filed before entry of the Confirmation Order;

~~11.3.5~~ 11.3.6. To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

~~11.3.6~~ 11.3.7. To adjudicate all claims to a security or ownership interest in any property of the Debtors or in any proceeds thereof, including the adjudication of all claims asserted by Creditors and Holders of Equity Security;

~~11.3.7~~ 11.3.8. To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtors during the pendency of the Proceedings;

~~11.3.8~~ 11.3.9. To adjudicate, determine and resolve any and all adversary proceedings, applications, motions, and contested or litigated matters, instituted before the closing of the Case;

~~11.3.9~~ 11.3.10. ~~–~~To recover all Assets and properties of the Debtors, wherever located;

~~11.3.10~~ 11.3.11. To adjudicate and determine any cause of action provided for under the Plan or pursuant to the Confirmation Order;

42

1    ~~11.3.11.~~ 11.3.12.  To make orders as are necessary or appropriate to

2 carry out the provisions of the Plan, or in aid of confirmation and consummation

3 of the Plan;

4    ~~11.3.12.~~ 11.3.13.  To hear and determine any application to modify the

5 Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any

6 defect or omission, or reconcile any inconsistency in the Plan, the Disclosure

7 Statement or any Order of the Bankruptcy Court, including the Confirmation

8 Order, in such a manner as may be necessary to carry out the purposes and effects

9 hereof;

10    ~~11.3.13.~~ 11.3.14.  To hear and determine all matters concerning state,

11 local and federal taxes in accordance with Sections 346, 505 and 1146 of the

12 Bankruptcy Code;

13    ~~11.3.14.~~ 11.3.15.  To determine any and all applications, adversary

14 proceedings, and contested or litigated matters properly before the Bankruptcy

15 Court before or after the Confirmation Date;

16    ~~11.3.15.~~ 11.3.16.  To hear and determine all controversies, suits and

17 disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the

18 Case entered on or before the Confirmation Date; and

19    ~~11.3.16.~~ 11.3.17.  To enter an Order closing the Case.

20 **ARTICLE XII:  PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

21   12.1 Objections to Claims.  ~~Only the Debtors shall be entitled to object to~~

22 ~~Claims.~~  Any objections to Claims shall be served and filed on or before the later of: (i)

23 ~~one hundred and twenty (120~~thirty (30) days after the Confirmation Date; (ii) thirty (30)

24 days after a request for payment or proof of Claim is timely filed and properly served; or

25 (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the

26 dates specified in subsections (i) and (ii) herein.  Notwithstanding any authority to the

43

contrary, an objection to a Claim shall be deemed properly served on the Creditor if service is effected in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's behalf in the Cases; or (c) by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified in the proof of Claim or any attachment thereto.

12.2    Payments and Distributions with Respect to Disputed Claims. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

12.3    Distributions After Allowance.    After such time as a Disputed Claim becomes an Allowed Claim, the Debtors or the Disbursing Agent, as applicable, shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in accordance with the provisions hereof.  In respect of Disputed Claims such distributions shall be made within fifteen (15) days after such Disputed Claims become Allowed Claims by Final Order of the Bankruptcy Court or as soon thereafter as practicable.

**ARTICLE XIII:  PROVISIONS CONCERNING DISTRIBUTION**

13.1    Time of Distributions Under the Plan.  Payments and distributions to be made by the Debtors or Disbursing Agent on or after the Effective Date pursuant to the Plan shall be made on such date, or as soon as practicable thereafter, except as otherwise provided for in the Plan, or as may be ordered by the Court, or as may be agreed to by the Debtors or Disbursing Agent, as applicable, and the Holder of the Claim or Equity Security.

44

3761444v1/22420-0006

13.2  _Payment Dates_.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, or as soon as practicable thereafter, or as may be agreed to by the Debtors or Disbursing Agent, as applicable, and the holder of the Claim or Equity Security.

13.3  _Manner of Payments Under the Plan_.  Cash payments made pursuant to the Plan shall be made in the currency of the United States, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Distributions to all holders of Allowed Claims and Equity Security shall be made (a) at the addresses set forth in the proof of claim filed by such holders (or at last known addresses of such holders if no proofs of claims were filed or the Debtors were notified of a change of address); or (b) at the addresses set forth in any written notices of address change delivered to the Debtors or the Bankruptcy Court; or (c) at the addresses reflected in the Debtors' schedules if no claim shall have been filed and no written notice of an address change has been received by the Debtors. No payments shall be made to a holder of a Disputed Claim unless and until such Claim becomes an Allowed Claim by a Final Order.

13.4  _Fractional Cents_.    Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

13.5  _Non-Negotiated Checks_.  Except as otherwise set forth in Section 13.6 hereof, if a Holder of an Allowed Claim, or and other claim or interest fails to negotiate a check issued to such Holder under the Plan within one hundred and eighty (180sixty (60) days of the date such check was issued by the Debtors or Disbursing Agent, as applicable, then the amount of Cash or other property attributable to such check shall be

45

deemed to be "Unclaimed Distributions," and the payee of such check shall be deemed to have no further Claim or future Claim against the Debtors.

13.6  Unclaimed Distributions.  In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of ~~six (6) months~~sixty (60) days after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder.

13.7  Disputed Payments or Distributions.  In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Debtors or Disbursing Agent, as applicable, may, in lieu of making such payment or distribution to such Entity, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

**ARTICLE XIV: EFFECT OF CONFIRMATION OF PLAN**

14.1  Discharge.  Any liability imposed by the Plan will not be discharged.  If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtors or their Estates or any other Persons, or to prejudice in any manner the rights of the Debtors or their Estates or any Person in any further proceeding involving the Debtors or the Estates.  The provisions of this Plan shall be binding upon the Debtors, all Creditors and all Equity Security holders, regardless of whether such Claims or Equity Security holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

46

3761444v1/22420-0006

14.2    <u>Modification of Plan</u>.  The Debtors may modify the Plan at any time before Confirmation.  However, the Bankruptcy Court may require a new Disclosure Statement or re-voting on the Plan if the Debtors materially modify the Plan before Confirmation.  The Debtors may also seek to modify the Plan at any time after Confirmation so long as (a) the Plan has not been substantially consummated, <u>and</u> (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.  After Confirmation, the Debtors may, upon Order from the Bankruptcy Court, in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose of this Plan.

14.3    <u>Post-Confirmation Quarterly Fees</u>.  Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee by the Debtors <u style="color:red">or Disbursing Agent, as applicable,</u> until such time as the case is converted, dismissed, or closed pursuant to a final decree.

14.4    <u>Retention of Claims and Causes of Action</u>.  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Case: (i) any and all Claims accruing to the Debtors or the Estates shall remain assets of and vest in the Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Claims have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtors nor the Estate waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Claims or defenses that constitute property of the Debtors or the Estates: (a) whether or not such Claims or defenses have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Claims

47

3761444v1/22420-0006

are currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such Claims filed a proof of claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Claim, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtors' right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Claim that the Debtors or their Estates have or may have as of the Effective Date.

The Debtors expressly reserves all Claims and defenses for later adjudication by the Debtors and therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Claims and defenses upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Debtors expressly reserve the right to pursue or adopt Claims that are alleged in any lawsuits in which the Debtors are a defendant or an interested party, against any Person or Governmental Entity, including the plaintiffs or co-defendants in such lawsuits. Any Person or Governmental Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors, or who has received money or property from the Debtors, or who has transacted business with the Debtors, or who has leased equipment or property from or to the Debtors should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtors subsequent to

48

3761444v1/22420-0006

the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person or Governmental Unit has Filed a proof of Claim against the Debtors in the Case; (b) such Person's or Governmental Unit's proof of Claim has been objected to by the Debtors; (c) such Person's or Governmental Unit's Claim was included in the Debtors' Schedules; or (d) such Person's or Governmental Unit's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as contingent, unliquidated or disputed.

14.5 <u>NO WAIVER OF CLAIMS.</u> NEITHER THE FAILURE TO LIST A CLAIM IN THE SCHEDULES FILED BY THE DEBTORS, THE FAILURE OF THE DEBTORS OR ANY OTHER PERSON TO OBJECT TO ANY CLAIM FOR PURPOSES OF VOTING, THE FAILURE OF THE DEBTORS OR ANY OTHER PERSON TO OBJECT TO A CLAIM OR ADMINISTRATIVE EXPENSE BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE FAILURE OF ANY PERSON TO ASSERT A CLAIM OR CAUSE OF ACTION BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE ABSENCE OF A PROOF OF CLAIM HAVING BEEN FILED WITH RESPECT TO A CLAIM, NOR ANY ACTION OR INACTION OF THE DEBTORS OR ANY OTHER PERSON WITH RESPECT TO A CLAIM, OR ADMINISTRATIVE EXPENSE, OTHER THAN A LEGALLY EFFECTIVE EXPRESS WAIVER OR RELEASE SHALL BE DEEMED A WAIVER OR RELEASE OF THE RIGHT OF THE DEBTORS, BEFORE OR AFTER SOLICITATION OF VOTES ON THE PLAN OR BEFORE OR AFTER CONFIRMATION OR THE EFFECTIVE DATE TO (A) OBJECT TO OR EXAMINE SUCH CLAIM OR ADMINISTRATIVE EXPENSE, IN WHOLE OR IN PART OR (B) RETAIN AND EITHER ASSIGN OR EXCLUSIVELY ASSERT, PURSUE, PROSECUTE, UTILIZE, OTHERWISE ACT OR OTHERWISE ENFORCE ANY CLAIM OR CAUSE OF ACTION AGAINST THE HOLDER OF ANY SUCH CLAIM.

49

3761444v1/22420-0006

**ARTICLE XIII:  GENERAL PROVISIONS**

15.1  <u>Notices Under the Plan</u>.  Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Debtors, addressed to:

GALLAGHER & KENNEDY, P.A.
Attn:  John R. Clemency
       Todd A. Burgess
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:   (602) 530-8500
Email:       john.clemency@gknet.com
             todd.burgess@gknet.com

15.2  <u>Withholding Taxes/Setoffs</u>.    The Debtors or Disbursing Agent, as applicable, shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind.  The Debtors or Disbursing Agent, as applicable, may, but shall not be required to, set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against such holder.

15.3  <u>Committee</u>.   On the Effective Date, the Committee shall automatically dissolve and the members thereof and the Professional Persons retained by the Committee in accordance with Section 1103 of the Bankruptcy Code shall be released and discharged from their respective duties and obligations.

50

3761444v1/22420-0006

15.4   Headings.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

15.5   Unenforceability.  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

15.6   Certain Terminations.  On the Effective Date, all instruments evidencing indebtedness of the Debtors discharged by the Plan shall be deemed canceled, unless this Plan provides for the retention of liens.

15.7   Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona without regard to its conflicts of law principles.

15.8   Liquidated and/or Disputed Claims.  The Bankruptcy Court shall fix or liquidate the amount of any contingent and/or disputed Claim pursuant to Section 502 of the Bankruptcy Code.  The amount so fixed shall be deemed the amount of such contingent Claim for purposes of this Plan.  In lieu thereof, the Bankruptcy Court may determine the amount to be reserved for such contingent Claim, which amount shall be the maximum amount which the holder of such contingent Claim shall be entitled to receive under this Plan if such contingent Claim is Allowed in whole or in part.

15.9   Revocation of Plan.  The Debtor reserves the right to revoke and withdraw this Plan at any time before Confirmation.

15.10  Reservation of Rights.  Nothing contained herein shall prohibit the Debtors from prosecuting or defending any of its rights as may exist on its own behalf before the Confirmation Date.  If Confirmation of the Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute

51

a waiver or release of any Claims by or against the Debtors, their Estates, or any other Person, or to prejudice in any manner, the rights and remedies of the creditors, the Debtors, their Estates, or any Person in any further proceedings involving the Debtors or their Estate.  The filing of the Plan and or any modifications hereto, and the Plan itself shall not constitute a waiver by the Debtor of any and all rights, remedies, objections, causes of action, the Debtors may have or may wish to raise with respect to anything, including, without limitation, any other plan or plans filed or to be filed in this bankruptcy case, all of which rights and objections are hereby reserved.

15.11 <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer hereunder will not be subject to any stamp, tax, or similar tax.

15.12 <u>Injunction</u>.  Except as otherwise provided in the Plan or the Confirmation Order, and except for any actions timely filed pursuant to Section 523 of the Bankruptcy Code or any Claims declared by the Court to be non-dischargeable pursuant to Section 523 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtors or their Estates, or Equity Security in the Debtors, are, with respect to any such Claims or Equity Security interests, permanently enjoined from and after the Confirmation Date from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) with respect to any such Claim  against or affecting the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation,

3761444v1/22420-0006

any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, with respect to any judgment, award, decree or order against the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) asserting initially after the Effective Date any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law. By accepting a distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section, and, except as set forth in this Section, waives any and all claims, causes of action, remedies and objections of every kind against the Debtors.

15.13 <u>Ratification of Action Taken During Pendency of the Chapter 11 Case</u>. The Confirmation Order shall ratify all transactions effected by the Debtors during the period commencing on the Debtors' Petition Date and ending on the Confirmation Date.

15.14 <u>Term of Injunctions or Stays</u>. Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain

53

in full force and effect until the Effective Date, or such later date as provided under applicable law.

15.15 <u>Injunction Against Interference With Plan</u>. Upon the entry of the Confirmation Order, all holders of Claims and Equity Security and other parties in interest, including the Debtors, along with its respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

15.16 <u>Exculpation</u>. Except with respect to obligations under the Plan, neither the Debtors, the Committee nor any of their respective managers, members, officers, directors, employees, agents or professionals, solely in their capacity as such (each an "Exculpated Party"), shall have or incur any liability to the Debtors and/or any holder of any Claim for any act or omission in connection with, or arising out of: (i) the Case; (ii) the confirmation of the Plan; (iii) the consummation of the Plan; or (iv) the administration of the Plan or property to be distributed pursuant to the Plan, except for fraud, willful misconduct, recklessness or gross negligence; and, in all respects, the Debtors, the Committee, and each of their respective managers, members, officers, directors, employees, advisors and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

15.17 <u>Successors and Assigns</u>. The rights and obligations of any Entity named or referred to in the Plan shall be binding upon and shall insure to the benefit of, the predecessors, successors, assigns and agents of such Entity.

15.18 <u>Plan Documents</u>. Final versions of any exit financing documents and such other documents needed in connection with confirmation of the Plan shall be filed with the Court no later than three (3) Business Days before the Confirmation Hearing.

**Dated:** ~~June 17~~September 11**, 2013**

**DEBTORS AND DEBTORS-IN-POSSESSION**

**ARMORWORKS ENTERPRISES, LLC, an**

54

3761444v1/22420-0006

**Arizona limited liability company**

By and through:

WILLIAM J. PERCIBALLI


By: _/s/William J. Perciballi_
Name:  William J. Perciballi
Its:  Manager and President


**TECHFIBER, LLC, a Delaware limited liability company by:**

ARMORWORKS ENTERPRISES, LLC, an Arizona limited liability company, its sole Member

By and through:

WILLIAM J. PERCIBALLI


By: _/s/William J. Perciballi_
Name:  William J. Perciballi
Its:  Manager and President

Formatted: Font: Bold

55

3761444v1/22420-0006

1

2   Prepared and Submitted on behalf of the Debtors by:

3   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
4   Phoenix, Arizona 85016-9225
    Telephone:    (602) 530-8000
5   Facsimile:    (602) 530-8500
    ~~Email:        john.clemency@gknet.com~~
6                  ~~todd.burgess@gknet.com~~
                   ~~lindsi.weber@gknet.com~~
7   Email:         john.clemency@gknet.com
                   todd.burgess@gknet.com
8                  lindsi.weber@gknet.com
                   janel.glynn@gknet.com
9

10

11  By:    /s/Todd A. Burgess
           John R. Clemency (Bar No. 009646)
12         Todd A. Burgess (Bar No. 19013)
           Lindsi M. Weber (Bar No. 025820)
13

14  ~~Proposed~~   Janel M. Glynn (Bar No. 25497)

15  Attorneys for Debtors

16

17

18

19

20

21

22

23

24

25

26

                              56

3761444v1/22420-0006

