Steven D. Jerome (#018420)
Benjamin W. Reeves (#025708)
Evans O'Brien (#026521)
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail: sjerome@swlaw.com
breeves@swlaw.com
eobrien@swlaw.com

*Attorneys for C Squared Capital Partners, LLC and Anchor Management, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Proceedings Under Chapter 11 |
| ARMORWORKS ENTERPRISES, LLC, | Case No. 2:13-bk-10332-BMW<br>Case No. 2:13-bk-10333-BMW |
| TECHFIBER, LLC, | (Jointly Administered) |
| Debtors. | **REPLY IN SUPPORT OF MOTION TO DISQUALIFY SQUIRE SANDERS (US) LLP** |
| This pleading relates to:<br>■ ArmorWorks Enterprises, LLC<br>■ TechFiber, LLC | Related DE: 233, 283 |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## I. INTRODUCTION

The C Squared Parties' Motion establishes that Squire Sanders (US) LLP ("Squire") served not only as general counsel for the C Squared Parties for almost a decade, but also served as the C Squared Parties' counsel with respect to matters directly related to this bankruptcy case (*i.e.*, the control of the Debtors). Squire's Response [Dkt. # 283] ignores the purpose of ER 1.9(a) – which is to protect clients from the risk that confidential information could be used against them. Instead of respectfully disagreeing with its former clients, Squire unnecessarily criticizes its former clients, inappropriately reveals information related to the prior representation, and improperly attempts to shift the burden to the C Squared Parties to establish a

substantial risk of harm.[1]   Because the C Squared Parties do not consent to Squire's representation of AWI in the bankruptcy, ER 1.9 unequivocally disqualifies Squire from representing AWI in this bankruptcy case, in any capacity.

## II.   LEGAL ARGUMENT

Arizona adopted ER 1.9(a) "for the protection of former clients."  *See* ER 1.9, cmt. 9.  As explained by the State Bar of Arizona's Ethics Committee:

> [The rule] seeks to assure clients that their lawyers will not use confidential information against them in a subsequent proceeding.  To accomplish this important objective, the rule takes a broad, prophylactic approach.  Rather than merely prohibiting the lawyer from using confidential information against the former client, the rule prohibits the lawyer from even entering into a relationship where the misuse is possible.  **The former client is thus protected not only from the misuse of his confidences, but also from the possibility of such misuse.**"

*See* Ariz. Ethics Op. No. 91-05 at 4 (internal citations omitted) (emphasis added).[2]

The two arguments Squire advances in its Response – (1) that its prior representation of the C Squared Parties does not have a "substantial relationship" to its current proposed representation of AWI; and (2) that even if a "substantial relationship" does exist, Squire has cured the conflict by limiting its proposed representation of AWI – demonstrate Squire's misinterpretation of ER 1.9.[3]

### A.   Squire's Former Representation of the C Squared Parties is Directly Related to the Issues in the Bankruptcy Case.

#### 1.   The Declarations from Both Sides Establish that Squire Represented the C Squared Parties With Regard to the Ongoing Control Dispute.

Despite Squire's re-characterization of its former representation of the C Squared Parties as "limited," the declarations from both sides confirm that Squire represented the C Squared

---

[1]   For example, Mr. Hansen, senior bankruptcy partner for Squire in this matter, described the C Squared Parties' objection to Squire's representation of the C Squared Parties' adversary as "[s]illy and sophomoric."  *See* September 13, 2013 Email from C. Hansen to C. Forrester, attached as Exhibit 1.

[2]   A copy of Ariz. Ethics Op. No. 91-05 is attached as Exhibit 2 for ease of reference.

[3]   A conflict exists under ER 1.9(a) if: (1) Squire and the C Squared Parties had an attorney-client relationship; (2) the matters on which Squire represented the C Squared Parties are "the same or substantially related" to the current litigation; and (3) Squire's current client's interests are "materially adverse" to the C Squared Parties' interests.  *Foulke v. Knuck*, 162 Ariz. 517, 520, 784 P.2d 723, 726-27 (Ct. App. 1989).  Squire's Response does not seriously contest the existence of elements (1) and (3).

- 2 -

Parties on matters directly related to the dispute over control of the Debtors. For example, the C Squared Parties' declarations establish that Squire's representation "was a comprehensive engagement" that included: "advice regarding the C Squared Parties' investment in ArmorWorks Enterprises, LLC ("AWE")"; "issues with the 2001 Operating Agreement"; "strategy sessions with the C Squared Parties about the enforceability of the Operating Agreement and various other issues that [AWI] and William Perciballi raised regarding the management and operations of AWE"; and the "2007 letter to the SBA." [*See* Motion, Ex. A, ¶¶ 6-9.]

The Squire declarations do not refute the scope of Squire's prior engagement. Mr. Wall confirms that Squire represented the C Squared Parties (i) at the depositions of Eric and Tim Crown and (ii) in responding to a subpoena. Mr. Gregg confirms that he assisted the C Squared Parties in (i) responding to the 2007 SBA size protest and (ii) preparing the declarations of Eric and Tim Crown submitted in connection with the SBA protest. [*See* Response, Ex. 1, ¶¶2-10, 17; Ex. 2, ¶¶ 3-4.] Both parties' declarations, therefore, establish that Squire represented the C Squared Parties on matters that relate directly to the central issue in the bankruptcy case – the dispute over control of the Debtors.

**2.      Squire Has Confidential Information Related to the Control Dispute.**

Because the matters are substantially related, Squire is presumed to have obtained confidential information from the C Squared Parties related to the control dispute. When a substantial relationship between a prior representation and a proposed adverse representation exists, ER 1.9(a) presumes that the attorney obtained confidential information from the former client. "'[T]he [substantial relationship] test itself is premised, at least in part, on the presumption that a lawyer who now wants to represent an interest adverse to a former client has received confidences of that former client, which he should not be allowed to use now against the former client." *In re Ockrassa*, 165 Ariz. 576, 578, 799 P.2d 1350, 1352 (1990) (citing ABA/BNA Lawyers' Manual of Professional Conduct 51:201 (1990)).

Not only must the Court presume that Squire obtained confidential client information, but Squire actually obtained (and still possesses) confidential information from the C Squared Parties

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

related to the control dispute. For example, the declarations of Mr. Gallaher (the C Squared Parties' CFO) and of Mr. Wall (one of Squire's attorneys) confirm that Squire obtained documents from the C Squared Parties to respond to a 2008 subpoena related to the control dispute, and that Squire still has those documents in its possession. [*See* Motion, Ex. B, ¶ 13; *see also* Response, Ex. 1, ¶ 17.]

Squire asserts that the former client bears the burden of demonstrating a "significant risk that the new representation could lead to use of confidential information obtained in the former representation and that such use will be to the former client's detriment." [Response, ¶ 3.] In Arizona, however, former clients bear no such burden. *See* Ariz. Ethics. Op. No. 91-05 at 4 ("[Rule 1.9(a)] does not require the client to prove that the lawyer will use client confidences adversely.") (citing *Foulke v. Knuck*, 162 Ariz. 517, 522, 784 P.2d 723, 728 (Ct. App. 1989)). Comment 3 to ER 1.9 explains that:

> **A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter**. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services. (Emphasis added).

Not only does the former client not bear the burden of showing a substantial risk, case law holds that the Court should not look beyond the plain relationship between the two matters. For example, in *Alexander v. Superior Court In & For Maricopa County*, the Arizona Supreme Court held that "'[t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. **It will not inquire into their nature and extent**. Only in this manner can the **lawyer's duty of absolute fidelity** be enforced and the spirit of the rule relating to privileged communications be maintained.'" 141 Ariz. 157, 163-64, 685 P.2d 1309, 1315-16 (1984) (quoting *T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.,* 113 F. Supp. 265, 268–69 (S.D.N.Y. 1953)) (emphasis added). Squire's flawed interpretation, on the other hand, would require the C Squared Parties to divulge the very confidential information that ER 1.9(a) protects.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 4 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

3. **Squire's Attempt to Downplay the Scope of its Prior Representation of the C Squared Parties is Irrelevant to the ER 1.9(a) Analysis.**

Although Squire attempts to downplay its prior representation, whether Squire's prior representation of the C Squared Parties was "limited" as Squire asserts is irrelevant. As the Ninth Circuit has held, "[t]he substantial relationship between the two representations is itself sufficient to disqualify." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). There, the Ninth Circuit explained that "the underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought." *Id.* The attorney subject to the disqualification motion in *Trone* argued that the firm's prior representation of the former client was unrelated to the current adverse representation. The Ninth Circuit disagreed, concluding that the firm's prior representation provided the attorney with the "opportunity" to learn about the former client's confidential information. That opportunity, explained the Ninth Circuit, required disqualification regardless of whether the attorney used, or intended to use, any information it obtained in the prior representation. *Id.* at 1001. Likewise, the presumption that Squire received confidential information coupled with its actual retention of the C Squared Parties' documents requires disqualification in this case.

B. **Squire Cannot Cure the Conflict by Limiting its Representation of AWI.**

Squire next argues that even if there is a substantial relationship between the two matters, Squire (1) is limiting its current representation of AWI, and (2) that the purported limitation cures any conflict under ER 1.9. Squire is incorrect on both accounts.

1. **It is Not Possible to Limit Squire's Representation to Avoid the Control Dispute.**

The dispute over the ability to control and manage the Debtors permeates almost every issue in the case. Despite Squire's protestation that the sale process does not implicate the dispute over control, the record reveals otherwise. For example, the very title of the protocol – "*Governance* Protocol for Sale Transaction and Non-Ordinary Course Transactions" [Dkt. # 226-1 (emphasis added)] – demonstrates that control issues are implicated by the protocol. Even

- 5 -

more explicitly, the motion to approve the sale protocol (which Squire prepared) (the "Sale Protocol Motion") [Dkt. # 226, ¶ 5] specifically argues that approval of the sale protocol resolves the dispute over control. Further, the Debtors cited to Tim Crown's 2009 deposition testimony and 2007 SBA bid protest in their reply in support of their Sale Protocol Motion. [*See* Dkt. # 257, 8:17-9:12.] The inseparability of the control dispute renders Squire's so-called "limited" representation of AWI illusory. Although Squire contends that the "limited" representation of AWI will guard against the adverse use of the C Squared Parties confidential information, "the protection of the rules should not be so lightly cast aside." *In re Ockrassa*, 165 Ariz. at 578, 799 P.2d at 1352 (affirming violation of ER 1.9 by an attorney, even though the attorney claimed he could not "remember the content of any such confidential communications" from his former client).

### 2. Even if Squire Could Limit its Representation to Avoid the Control Issue, it Has Not Done So.

Even assuming Squire could parse out the control issue from the sale protocol, Squire has already taken positions in the case that go beyond the sale process. For example, the ghost draft of the Sale Protocol Motion prepared by Squire, attached as Exhibit 4, argues contrary and adversarial points to positions taken by the C Squared Parties that are unrelated to the sale protocol. Paragraphs 5 and 7 of the draft Sale Protocol Motion (prepared by Squire), for example, provide as follows:

> The litigation and disputes that have embroiled the Debtors' two equity holders for the past several years are well known at this point. Given such acrimony, the Committee believes that the most efficient and comprehensive resolution to this case will be through a Sale Transaction…The C Squared Parties, on the other hand, object to employment of Houlihan and seek to prevent any potential Sale Transaction.
>
> ***
>
> Appointment of a chapter 11 trustee, on the other hand, negatively impacts the value of these estates. First, appointment of a trustee injects uncertainty and risk into the sale process which could chill bidding. Second, … [t]he Committee is…concerned that appointment of a trustee or examiner could have a potentially devastating impact on the Debtors' business and the value of these estates.

*See* Exhibit 4. Given that Squire intended these arguments to be presented to the Court in support of the Sale Protocol, it is no wonder that Squire agreed that it was "a good idea [that] the

- 6 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

proposed sale protocol came from [the Unsecured Creditors Committee] rather than from [Squire]."[4]  *See* <u>Exhibit 1</u>.  In addition, at a hearing on September 19, 2013, Squire affirmatively represented to the Court that AWI opposed the C Squared Parties' motion to appoint a chapter 11 trustee.  [*See* Dkt. # 235.]  Most recently, Grant Lyon, the Independent Debtor Representative appointed by the Court, invited the C Squired Parties to participate in a meeting at which all affected parties and their counsel (which would include AWI and its counsel, Squire) to negotiate a global consensual plan.[5]  These examples show, objectively, that the so-called "limited" scope of Squire's proposed representation of AWI is "limited" in name only.  Squire is providing counsel to AWI and advocating on behalf of AWI well beyond the scope of the sale protocol.  That fact, alone, requires disqualification.

### 3.  Nor Does the Use of Co-counsel Save Squire from Disqualification.

Even if, as Squire asserts, other counsel represents AWI on all bankruptcy issues outside the sale process, the Court must still disqualify Squire.  In Arizona Ethics Opinion 91-95 at 11, the State Bar Ethics Committee concluded that using co-counsel would not cure an ER 1.9(a) conflict, because:

> No matter how carefully [co-counsel] avoid discussing [the former client] or her prior representation by [attorneys' firm], they necessarily will engage in many communications about the [current case].  They will have to coordinate their facts, coordinate their theories, coordinate their arguments.  [The former client] thus will be confronted with the uncomfortable fact that her former lawyers are cooperating closely with the lawyer who will cross examine her at trial.  **ER 1.9(a) is designed to prevent precisely such discomfort from arising**. (Emphasis added).

Squire sits at AWI's table, Squire confers with AWI's counsel, and Squire ghost writes motions that take positions on issues directly related to the scope of Squire's prior representation of the C Squared Parties.  Squire, therefore, coordinates with the C Squared Parties' adversary in precisely the manner condemned by Arizona Ethics Opinion 91-95.

---

[4]     Of course, acting behind the scenes does not cure a conflict.  *Funds of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977).
[5]     Unless and until the Court grants the C Squared Parties' Motion, the C Squared Parties are left in the untenable position of either unwillingly waiving the conflict by negotiating against their former counsel on issues that Squire gave them advice, or – equally untenable – being locked out of the negotiation process (much like the C Squared Parties were locked out of the negotiation of the sale protocol).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**4.    In Any Event, Limiting the Representation of AWI Pursuant to ER 1.2(c) Does Not Cure the ER 1.9(a) Conflict.**

Squire argues that it cured the ER 1.9 conflict by unilaterally limiting its representation with AWI under ER 1.2(c). Squire's argument demonstrates a fundamental misunderstanding of its continuing duties to the C Squared Parties under ER 1.9(a). ER 1.9(a) requires disqualification regardless of whether the attorney intends to use confidential information against the former client. *See* Ariz. Ethics Op. No., 91-05 at 11. All that matters is whether the attorney had the "opportunity" to obtain the confidential information (which is presumed), and whether there is the "possibility" of such information being used against the former client. *See Trone*, 621 F.2d at 1001; *see also In re Ockrassa*, 165 Ariz. at 578, 799 P.2d at 1352. Both circumstances exist in this case notwithstanding Squire's attempt to limit its representation of AWI in accordance with ER 1.2.

Squire cites to a number of reported decisions approving the use of "conflicts counsel." None of the cases Squire cites, however, stand for the proposition that an ER 1.9(a) conflict can be cured by an ER 1.2 limitation. For example, even the City of New York Bar Committee, Formal Opinion 2001-3 upon which Squire relies, points out that "[a]bsent informed consent, the Code also prohibits a lawyer from representing a person in the same or substantially related matter in which that person's interest are materially adverse to the interests of a former client." ER 1.2 does not provide an escape hatch to an otherwise disqualifying conflict under ER 1.9(a).

**III.    <u>CONCLUSION</u>**

ER 1.9 prevents Squire from switching sides and representing AWI in any capacity in this case due to the direct relationship between Squire's prior representation of the C Squared Parties and the issues in this bankruptcy case. Ninth Circuit and Arizona law make it clear that Squire's attempts to limit its representation of AWI cannot cure the disqualifying conflict.

- 8 -

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

RESPECTFULLY SUBMITTED this 24th day of October, 2013.

SNELL & WILMER L.L.P.

By  /s/ Steven D. Jerome
    Steven D. Jerome
    Benjamin W. Reeves
    Evans O'Brien
    One Arizona Center, 400 E. Van Buren
    Phoenix, Arizona 85004-2202
    *Attorneys for C Squared Capital Partners, LLC and
    Anchor Management, LLC*

**COPY** of the foregoing served by
U.S. Mail or electronic notification
this 24th day of October, 2013, to:

John R. Clemency
Todd A. Burgess
Lindsi M. Weber
GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Rd.
Phoenix, AZ 85016-9225
Email: john.clemency@gknet.com
       todd.burgess@gknet.com
       lindsi.weber@gknet.com
*Attorneys for AWE and TechFiber*

Jennifer A. Giaimo
Renee Sandler Shamblin
OFFICE OF THE U.S. TRUSTEE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003
Email: jennifer.a.giaimo@usdoj.gov
       renee.s.shamblin@usdoj.gov

Joseph E. Cotterman
ANDANTE LAW GROUP OF DANIEL E. GARRISON, PLLC
Scottsdale Financial Center I
4110 N. Scottsdale Rd., Ste. 330
Scottsdale, AZ 85251
Email: joe@andantelaw.com
*Attorneys for North 54th Street Venture, LLC*

Elizabeth K. Flaagan
FAEGRE BAKER DANIELS LLP
1700 Lincoln St., Ste. 3200
Denver, CO 80203
Email: Elizabeth.Flaagan@faegrebd.com
*Attorneys for CoorsTek, Inc.*

- 9 -

1   D. Lamar Hawkins
    Heather Macre
2   AIKEN SCHENK HAWKINS & RICCIARDI P.C.
    2390 E. Camelback Rd., Ste. 400
3   Phoenix, AZ 85016-3479
    Email: dlh@ashrlaw.com
4           ham@ashrlaw.com
    *Attorneys for MS Guadalupe, LLC*
5
    James B. Ball
6   POLI & BALL, P.L.C.
    2999 N. 44th St., Ste. 500
7   Phoenix, AZ 85018
    Email: ball@poliball.com
8   *Attorneys for ArmorWorks, Inc.*

9   Lori A. Lewis
    MARICOPA COUNTY ATTORNEY'S OFFICE
10  Civil Services Division, Security Center Bldg.
    222 N. Central Ave., Ste. 1100
11  Phoenix, AZ 85004-2206
    Email: LewisL01@mcao.maricopa.gov
12  *Attorneys for Maricopa County Treasurer*

13  S. Cary Forrester
    FORRESTER & WORTH, PLLC
14  3636 N. Central Ave., Ste. 700
    Phoenix, AZ 85012
15  Email: scf@forresterandworth.com
    *Attorneys for Official Joint Committee of Unsecured Creditors*
16

17  Travis S. Williams
    THE FRUTKIN LAW FIRM, P.L.C.
18  101 N. First Ave., Ste. 2410
    Phoenix, AZ 85003
19  williams@frutkinlaw.com
    *Attorneys for Novellus Systems, Inc. c/o Lam Research*
20
    */s/ Steven D. Jerome*
21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 10 -