1  **GALLAGHER & KENNEDY, P.A.**
   John R. Clemency (Bar No. 009646)
2  Todd A. Burgess (Bar No. 19013)
   Lindsi M. Weber (Bar No. 25820)
3  Janel M. Glynn (Bar No. 25497)
   2575 East Camelback Road
4  Phoenix, Arizona 85016-9225
   Telephone:   (602) 530-8000
5  Facsimile:    (602) 530-8500
   Email:        john.clemency@gknet.com
6                todd.burgess@gknet.com
                 lindsi.weber@gknet.com
7                janel.glynn@gknet.com
8  *Attorneys for Debtors*

9          **IN THE UNITED STATES BANKRUPTCY COURT**

10              **FOR THE DISTRICT OF ARIZONA**

11

12 | In re: | Chapter 11 Proceedings |

13 ARMORWORKS ENTERPRISES, LLC,   Case No.  2:13-bk-10332-BMW
   TECHFIBER, LLC,                Case No.  2:13-bk-10333-BMW

14              Debtors.          (Jointly Administered)

15

16 This Filing Applies to:        **DEBTORS' MOTION FOR ORDERS:
                                  (1) APPROVING SALE OF DEBTORS'
17 ⊠   Both Debtors              ASSETS FREE AND CLEAR OF
   ☐   Specified Debtor           LIENS, CLAIMS AND INTERESTS,
18                                OR AN EQUITY SALE UNDER
                                  THIRD AMENDED JOINT PLAN OF
19                                REORGANIZATION, (2) APPROVING
                                  ASSUMPTION AND ASSIGNMENT
20                                OF UNEXPIRED LEASES AND
                                  EXECUTORY CONTRACTS, (3)
21                                APPROVING CERTAIN BID AND
                                  AUCTION PROCEDURES, (4)
22                                SETTING DATE AND TIME FOR
                                  HEARING ON PROPOSED SALE,
23                                AND (5) APPROVING FORM AND
                                  NOTICE OF AUCTION AND SALE
24                                HEARING**

25

26          ArmorWorks Enterprises, LLC ("**ArmorWorks**") and TechFiber, LLC

27 ("**TechFiber**," and with ArmorWorks, the "**Debtors**"), acting under the direction of

28

3960876v2/22420-0006

Grant Lyon, solely in his capacity as Independent Debtor Representative in accordance with the Protocol Order,[1] respectfully move the Court for the entry of orders,[2] pursuant to, *inter alia*, sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 6004-1 and 6006-1:

1.  setting a hearing on shortened time on **January 15, 2014**, or as soon thereafter as the Court's calendar may permit (the "**Bid Procedures Hearing**") to consider the relief requested in paragraphs 2 through 5 below;

2.  authorizing and approving certain proposed procedures, dates and deadlines (collectively the "**Bid Procedures**")[3] to govern the sale process and provide for the submission of any competing bids for substantially all the Debtors' assets or the equity in the reorganized Debtors, and the form and manner of notices, including those related to:

    a.  the submission and consideration of bids in respect of the proposed sale;

    b.  the conduct of an auction (the "**Auction**") by the Independent Debtor Representative and the Debtors' professionals on **February 21, 2014** or such other date as the Court may direct;

    c.  the provision of notice to potential bidders, counterparties to

---

[1] The "Protocol Order" means and refers to the *Order Granting Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions, and Retention Grant Lyon as Independent Debtor Representative* entered on October 7, 2013 [Docket No. 291], as amended by the *Stipulated Order Amending And Clarifying Governance Protocol For Sale And Non-Ordinary Course Transactions, And Retention Of Grant Lyon As Independent Debtor Representative* entered on December 19, 2013 [Docket 452], and as further amended, modified, restated or supplemented from time to time.

[2] A proposed form of *Order Establishing Bid Procedures, Setting Date and Time Of Sale Hearing, and Setting Related Deadlines* (the "**Procedures Order**") is attached hereto as **Exhibit 1** for the Court's consideration.

[3] The proposed Bid Procedures are attached hereto as **Exhibit 1A.**

2

executory contracts and unexpired leases that may be assumed and assigned, and other parties in interest; and

   d.   the proposed sale of all or substantially all of the assets of the Debtors free and clear of liens, claims and interests (an "**Asset Sale**"), or the sale of the equity of the reorganized Debtors under the Plan (as defined below) (an "**Equity Sale**") to the party that submits the prevailing bid for the Debtor's assets (the "**Buyer**").

3.   approving the form and manner of notice of the proposed sale, the hearing thereon, the Bid Procedures, and related matters, substantially in the form attached hereto as **Exhibit 2** (the "**Sale and Procedures Notice**");

4.   if the sale is an Asset Sale, approving the form and manner of notice regarding the executory contracts and unexpired leases that may be assumed and assigned to the Buyer and the procedure for determining the cure amounts, if any, associated with these agreements (the "**Cure Amount**"), substantially in the form attached hereto as **Exhibit 3** (the "**Contract Notice**");

5.   if the sale is an Asset Sale, approving the assumption and assignment of executory contracts and unexpired leases of the Debtors pursuant to the APA, including (i) determining that there are no defaults under such contracts and leases other than the payment of certain cure costs, if any, proposed by the Debtor, (ii) determining, at the Sale Hearing, that the Buyer has provided adequate assurance of future performance; and (iii) waiving, to the extent applicable, the requirements of Bankruptcy Rule 6006(f)(6);

6.   setting (i) the hearing to approve the sale (the "**Sale Hearing**") on **February 28, 2014**, or as soon thereafter as the Court's calendar may permit, (ii) the deadline to file and serve any objection to such relief, and (iii) the deadline to file and serve any reply in support of such relief;

7.   if the sale is an Asset Sale, approving the form of asset purchase agreement

3

(the "**APA**") attached hereto as **Exhibit 4**, as the same may be modified prior to its execution by the Debtors and the Buyer, and all of the transactions contemplated thereby if the Buyer elects an Asset Sale, or alternatively, if the sale is an Equity Sale, approving the form of Equity Purchase Agreement ("**EPA**")[4] and all of the transactions contemplated thereby if the Buyer elects an Equity Sale;

8.      if the sale is an Asset Sale, finding that the Buyer is a good faith purchaser entitled to the protections of Bankruptcy Code section 363(m); and

9.      providing that all of the foregoing relief shall be effective immediately upon entry of the applicable order granting such relief, and that any stay of such order under Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not be applicable.

The Independent Debtor Representative, with the assistance of the Debtors' professionals, including Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") continues to receive and is considering indications of interest for a potential "stalking horse" position. And, there is a possibility that the Debtors will sign an agreement with a stalking horse bidder prior to the Auction. However, due to the compressed time frame within which the Debtors are seeking to complete a transaction, Houlihan Lokey recommended that this Motion be filed now, so that potential bidders, non-debtor parties to executory contracts and unexpired leases, and other interested parties can receive as much notice as possible regarding the Bid Procedures that will govern the sale and other aspects of the proposed transaction. In the event that the Debtors sign an agreement with a stalking horse bidder prior to the Auction, the Debtors will file a supplement to this Motion to seek approval of the stalking horse bid, the executed transaction agreement, and any applicable bidder protections or revisions to the Bid Procedures negotiated by the stalking horse bidder and the Independent Debtor Representative.

---

[4]      The Debtors will file a proposed form of EPA with the Court within ten (10) days of the date of this Motion.

4

In addition, although it currently is expected that the transaction will be structured as an Asset Sale under Bankruptcy Code § 363, as described above, the Bid Procedures contemplate and allow for the possibility of an Equity Sale under the *Third Amended Joint Plan of Reorganization Dated December 16, 2013* (the "**Plan**") [Dkt. 442].

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration Of William J. Perciballi In Support Of Debtors' Chapter 11 Petitions And First Day Motions [Dkt. 3], the Declaration of Peter Fishman, filed concurrently herewith, the *Third Amended Disclosure Statement In Support Of Third Amended Joint Plan Of Reorganization Dated December 16, 2013* [Dkt. 443] (the "**Disclosure Statement**"), any oral or documentary evidence presented at or prior to the hearings on this Motion, the arguments and representations of counsel made at the hearings on this Motion, and all germane matters of record in these bankruptcy cases.

Concurrently herewith, the Debtors have filed a motion to set an expedited hearing on shortened notice, pursuant to Local Rule 9013-1(h), requesting an initial hearing on this Motion on January 15, 2014, or as soon thereafter as the matter may be heard, to consider immediate approval of the Bid Procedures and manner and form of notice regarding the proposed sale.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**I.**</u>
<u>**JURISDICTION.**</u>

1.      On June 17, 2013 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.   An Official Joint Committee of Unsecured Creditors was appointed on July 9, 2013 (the "Committee").  No trustee or examiner has been appointed.

5

2.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3.      The statutory predicates for the relief requested are Bankruptcy Code sections 105, 363 and 365, and Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rules 6004-1 and 6006-1.

## II.
## FACTUAL AND PROCEDURAL HISTORY.

**A.      The Business.**

4.      ArmorWorks and its wholly-owned subsidiaries develop advanced survivability technology and design and manufacture high-tech military personal body armor, vehicle armor, aircraft and marine armor, and energy attenuating seats for protection against a broad spectrum of ballistic threats primarily for use in military and nuclear safety and security applications.  ArmorWorks systems are in-service around the world in several United States Military applications.

5.      ArmorWorks' engineering and fabrication services take armor systems projects from concept to production with customer input and collaboration throughout the process.  ArmorWorks specializes in all aspects of military armor technology. ArmorWorks has produced over 1.25 million ceramic armor and composite armor protection components for a variety of personnel armor, aircraft, and vehicle applications. ArmorWorks primarily is known for, and attributes its success to:

- •      State-of-the-art ceramic armor and composite armor systems technology;
- •      High-performance military armor products & designs;
- •      Engineering & R&D capability to apply technology & designs to production;
- •      Ballistic testing & analysis capability;

6

•    Military armor production capacity and experience;

•    Understanding of Military Armor:  Aerospace, Personnel, Vehicle, and Ship Armor Applications; and

•    Patented Armor Systems Technologies.

6.    ArmorWorks sells the majority of its products through two channels.  The primary channel is as a prime contractor for United States Military agencies. ArmorWorks has contractual relationships with many government entities for the purchase and service of its products, and provides a substantial amount of the armor and protective equipment used by all branches of the United States Military.  The second primary channel involves ArmorWorks subcontracting with other prime government contractors to U.S. Military agencies.

7.    Because of (i) the life-critical nature of its products, (ii) the use of critical defense technology including classified national defense, intelligence, and nuclear security information and (iii) the United States Military's critical need for armor to protect its troops in a time of war, ArmorWorks' contracts include special delivery priorities and security and secrecy requirements which subject ArmorWorks to stringent government regulations, requirements, and oversight.

8.    ArmorWorks is an Arizona limited liability company.  ArmorWorks, Inc. ("**AWI**") is the majority member of ArmorWorks with a 60% interest.  C Squared Capital Partners, L.L.C. ("**C Squared**") owns a 40% minority interest in ArmorWorks.

9.    ArmorWorks is vertically integrated with several wholly-owned subsidiaries providing complementary survivability products as well as components used by ArmorWorks to manufacture the armor products and systems it sells.

10.    The only ArmorWorks' subsidiary that filed a Chapter 11 petition is TechFiber, a wholly-owned Delaware limited liability company that supplies ballistic fiber to ArmorWorks and the armor industry.  The ballistic fiber is used by ArmorWorks

7

to manufacture ceramic armor and composite armor systems.

11. Non-debtor subsidiary ShockRide, LLC ("**ShockRide**") is a wholly-owned Arizona limited liability company that designs, manufactures, and sells energy attenuating seats, which protect passengers from the shock of IED and mine blasts beneath a vehicle. ShockRide's energy absorption, rollover, and crash protection technology is used in a wide variety of military vehicles with over 70,000 seats in service worldwide.

12. Non-debtor subsidiary Mandall BarrierWorks, LLC ("**MBW**") is a wholly-owned Delaware limited liability company that designs and produces high-end vaults, vault doors, and armored door systems providing architectural blast protection and security, including passive and reactive high value asset protection systems, safes, security doors, and fixed and portable guard stations for government, military, nuclear, and commercial installations. The company's work in the area of nuclear safety and security requires additional security clearances beyond those required by the Department of Defense.

13. Non-debtor subsidiary Applied Heat Technologies, LLC ("**AHT**") is an Arizona limited liability company wholly owned by ArmorWorks that provides portable armor and composite repair products and services.

14. Non-debtor Protective Ceramics, LLC is a Delaware limited liability company wholly owned by ArmorWorks. Protective Ceramics currently does not conduct any business operations.

15. ArmourWorks International Limited (AIL) is a wholly-owned subsidiary of ArmorWorks located in the United Kingdom that supplies armor and protective products to customers in the United Kingdom and internationally. ArmourWorks Enterprises Canada, ULC is a wholly-owned subsidiary of ArmourWorks International Limited (AIL) located in British Columbia that supplies soft body armor products to the Canadian

8

3960876v2/22420-0006

1  military and law enforcement communities.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

**B.** **Financial Performance and Events Leading to Chapter 11 Restructuring.**

16. Historically, the independent certified public accounting firm of Mayer Hoffman McCann P.C. audited the financial statements of ArmorWorks and its subsidiaries on a consolidated basis. ArmorWorks uses a calendar year accounting cycle.

17. In 2009, ArmorWorks and its subsidiaries had net income of $14,838,000 on total sales of $190,531,000. Sales declined materially in 2010, to $128,375,000, and ArmorWorks realized a net loss from operations of $11,475,000 based in large measure on a $20 million inventory write-off recorded by the company.

18. Sales increased dramatically in 2011 to $313,763,000 based in large measure on a $236,247,162 contract awarded to ArmorWorks in late 2010 by AM General for the production of upgraded armor for the U.S. Military's HMMWV fleet. The increased sales 2011 generated net income of $27,917,000 in 2011. ArmorWorks completed the AM General contract in 2011.

19. ArmorWorks' record sales in 2011 enabled the company to pay-off substantially all of its secured debt, including a $40 million revolving line of credit from JPMorgan Chase, and approximately $3.0 million of secured equipment financing from Chase Equipment Financing.

20. Despite ArmorWorks strong performance in 2011, the business deteriorated substantially in 2012 tracking an industry-wide defense trend. ArmorWorks experienced a net loss of $9,988,000 on total sales of $100,229,000 in 2012.

**C.** **The Bankruptcy Case.**

21. Prior to filing these bankruptcy cases, for several months the Debtors actively sought working capital financing to replace its JPMorgan Chase line of credit and to assist the company through the defense industry slow-down. However, a then ongoing dispute between the owners of the company hampered the Debtors efforts to obtain replacement financing.

10

22.     The Debtors filed these bankruptcy cases in an effort to, *inter alia*, obtain access to working capital financing that had been unavailable to the Debtors outside of bankruptcy and to implement a business and facilities restructuring.

23.     Shortly after the cases were filed, the Debtors obtained Bankruptcy Court approval of $3.5 million of debtor in possession financing (the "**DIP Financing**") from Lancelot Armor, LLC ("**DIP Lender**") first on an interim basis, and later on a final basis pursuant to the *Stipulated Final Order (A) Approving Senior Secured Postpetition Financing, (B) Granting Senior Liens and (C) Providing Superpriority Administrative Expense Status* (the "**Final DIP Order**") signed on 7/19/2013 [Dkt. 119].

24.     As discussed above, the Debtors do not have a prepetition working capital lender or any significant secured debt.  Other than the liens of the DIP Lender and alleged secured tax claims asserted by the Maricopa County Treasurer, the only active UCC-1 filings against the Debtors as of the Petition Date were filed by: (a) De Lage Landen Financial Services, which claims an interest in two copiers under Lease Nos. 24917245 and 24993595, and (b) Magid Glove & Safety Mfg. C., LLC, which claims an interest in all of the Debtors' work gloves, safety clothing and safety products financed through Magid Glove & Safety Mfg. C. LLC.

25.     After the cases were filed, the Debtors, in consultation with their professionals and the Committee, determined that the most viable alternative for resolving the cases and successfully reorganizing was through either a sale of substantially all assets of the Debtors, including ArmorWorks' member interests in its non-debtor subsidiaries, under either Bankruptcy Code § 363 or under a plan, or through a sale of the equity of the reorganized debtors under a confirmed plan.  Based on a prepetition valuation of the Debtors' business, the Debtors believed that a sale of the business should generate sufficient value to pay all creditors in full and provide a substantial recovery to the equity holders, while also allowing for the uninterrupted

11

continuation of the Debtors' business.

26.     The Debtors took a number of steps to implement the sale strategy.  On September 6, 2013, the Debtors filed the *Application For An Order Approving The Employment Of Houlihan Lokey Capital, Inc. As Debtors' Investment Banker* [Dkt. 186] for the purpose of pursuing a sale of ArmorWorks and its debtor and non-debtor subsidiaries.  By Order dated October 18, 2013, the Court approved the Debtors' retention of Houlihan Lokey.  [Dkt. 319].

27.     On September 18, 2013, the Debtors and the Committee filed a *Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions and Retention Grant Lyon as Independent Debtor Representative* asking the Court to approve (i) a comprehensive governance protocol for the marketing and sale of the Debtors' assets or business and any other transactions outside the ordinary course of business; and (ii) the retention of Grant Lyon as the "Independent Debtor Representative."  [Dkt. 226].  Pursuant to the Protocol Order entered on October 7, 2013, as later amended, the Court appointed Grant Lyon as the Independent Debtor Representative.

28.     With the assistance of the Committee and the Independent Debtor Representative, the Debtors were able to reach an agreement with C Squared and AWI, the members of ArmorWorks, regarding the terms of a consensual plan of reorganization.

29.     On December 16, 2013, the Debtors, the Committee, C Squared, AWI, and the managers of ArmorWorks, William J. Perciballi and Anchor Management, LLC, proposed a *Third Amended Joint Plan of Reorganization Dated December 16, 2013* (the "**Plan**") [Dkt. 442] and filed the *Third Amended Disclosure Statement in Support of Third Amended Joint Plan of Reorganization Dated December 16, 2013* (the "**Disclosure Statement**") [Dkt. 443].

30.     The Plan provides a mechanism for the sale of ArmorWorks' business,

12

either through a sale substantially all of the assets of the Debtors free and clear of liens, claims and interests, or through a sale of the equity in the Reorganized Debtors under the Plan, and the distribution of the proceeds to creditors and equity holders in accordance with the Plan.

31. On December 30, 2014, the Court entered the *Order (1) Approving Disclosure Statement; (2) Fixing Time For Accepting Or Rejecting The Plan; And (3) Setting Initial Confirmation Hearing And Objection Deadline* [Dkt. 467]. The initial hearing to consider confirmation of the Plan is scheduled for 10:00 a.m. on January 29, 2014; the Voting Deadline is January 22, 2014 at 5:00 p.m. MST; and the deadline for filing any written objections to the Plan is January 22, 2014.

**D.      The Need for an Expedited Sale of the Business.**

32. Under the terms of the Final DIP Order, the DIP Financing originally was scheduled to mature on December 31, 2014. Prior to the Maturity Date, the Debtors exercised an option to extend the Maturity Date to March 30, 2014 in order to provide the Debtors sufficient time to complete a transaction for the sale of the business.

33. Under the Plan, absent the unanimous consent of the Plan Proponents, the outside Closing Date for a transaction is March 15, 2013.

34. As has been well documented in these cases, the Debtors are operating on a tight budget and will need to obtain additional financing if a transaction is not completed by early to mid-March 2014.

**E.      The Sale Process and the Proposed Sale.**

35. The Debtor engaged Houlihan Lokey as its investment banker on October 18, 2013. Houlihan Lokey immediately worked to establish an accelerated sale process in light of the Debtors' need to consummate a transaction as soon as possible in order to maintain the greatest value for creditors and equity holders.

36. Houlihan Lokey prepared and distributed a "teaser" to 106 potential

13

strategic and financial buyers.  Non-disclosure agreements ("**NDAs**") were sent to 84 potential buyers, of which 60 executed NDAs and received a confidential information memorandum ("**CIM**") prepared by Houlihan Lokey.  34 potential buyers remain active. Houlihan Lokey has established and continues to populate a data room to facilitate due diligence.

37.  Houlihan Lokey solicited and is in the process of receiving and evaluating indications of interest for a potential stalking horse position.  In the event that the Debtors and a potential buyer agree upon the terms of a transaction and execute a transaction agreement with a stalking horse bidder either prior to the Bidding Procedures Hearing or prior to the Auction, the Debtors will promptly submit a signed term sheet or signed transaction agreement to the Court and provide notice thereof to parties in interest.  The Independent Debtor Representative is proceeding with this Motion without the term sheet or signed transaction agreement in hand at this time, in an effort to give all parties in interest as much notice as possible about the sale terms and Bid Procedures, and at the same time allow interested parties more time to submit bids, whether to become the Stalking Horse Bidder or a competing bidder.

38.  In the event that the Independent Debtor Representative, in consultation with the Debtors' professionals, determines that proceeding with a stalking horse bidder is not in the best interests of the Debtors and their estates, the Debtors will proceeds to Auction without a stalking horse bidder.

**F.    The Assets Subject to Sale and Purchase Price.**

39.  In accordance with the Protocol Order, with the assistance of Houlihan Lokey, the Independent Debtor Representative is pursuing a transaction for the sale of substantially all assets of the Debtors, including ArmorWorks' member interests in its non-debtor subsidiaries, or the sale of the equity in the reorganized Debtors under the Plan, that will generate the most value for creditors and equity holders.

14

40.     Whether the transaction is an Asset Sale or Equity Sale, the purchase price will be determined through the Auction conducted in accordance with the Bid Procedures and the Procedures Order.  Because the Debtors have not yet executed any agreement with a stalking horse bidder, the Initial Bid has not yet been determined.  However, it is anticipated that the Auction and Transaction will generate sufficient proceeds to pay all creditors in full and return value to the equity holders.

**G.     The Bid Procedures.**

41.     The Debtors are seeking entry of the Procedures Order (Exhibit 1) approving the Bid Procedures (Exhibit 1A), dates, deadlines, and the manner and form of notice in relation to the sale process.  The Bid Procedures are subject to modification in the reasonable business judgment of the Independent Debtor Representative, if he determines that such modifications are in the best interests of the Debtors and their estates, provided that the Independent Debtor Representative gives notice of such modifications to all affected parties promptly following any such determination.  Subject to the foregoing, the Debtors propose the following Bid Procedures:

**1.     Determining Potential Bidders**

To participate in the bidding process, each person or entity who wishes to receive non-public information concerning the Debtors, their assets, or their business (a "**Potential Bidder**") must deliver, or have previously delivered, to the Debtors a confidentiality agreement in a form reasonably acceptable to the Debtors, acting by and through Grant Lyon, acting solely in his capacity as Independent Debtor Representative pursuant to the *Order Granting Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions, and Retention Grant Lyon as Independent Debtor Representative* entered on October 7, 2013 [Docket No. 291], as amended by the *Stipulated Order Amending And Clarifying Governance Protocol For Sale And Non-Ordinary Course Transactions, And Retention Of Grant Lyon As Independent Debtor Representative* entered on December 19, 2013 [Docket 452], and as further amended, modified, restated or supplemented from time to time.

**2.     Qualified Bids and Qualified Bidders**

*(a)     Determination of Qualified Bids and Qualified Bidders*

15

In order to participate in the Auction, a Potential Bidder must be deemed by the Independent Debtor Representative to be a qualified bidder ("**Qualified Bidder**") and its bid ("**Potential Bid**") a qualified bid ("**Qualified Bid**"). In order to be deemed a Qualified Bidder and its Potential Bid a Qualified Bid, a Potential Bidder must submit, on or before 5:00pm PST on February 7, 2014 (the "**Bid Deadline**"), a Potential Bid package which complies with the provisions of this Section 2. Potential Bid packages should be submitted, at, or prior to, the Bid Deadline to Houlihan Lokey, the Debtors' investment banker, at:

> Houlihan Lokey
> 10250 Constellation Blvd. 5th Fl.
> Los Angeles, CA 90067
> Attn: Michael McElhenny
> Telephone: 310.788.5392
> Fax:          310.553.2173
> mmcelhenny@hl.com

*(b)      Minimum Requirements For a Timely Submitted Potential Bid To Be Considered For Designation as a Qualified Bid and the Party Submitting Such Bid a Qualified Bidder*

A timely received Potential Bid package must include the following documents and terms:

> *A.      Asset Purchase Agreement or Equity Purchase Agreement*

>> (1)      A copy of the Asset Purchase Agreement ("**APA**") or Equity Purchase Agreement ("**EPA**"), as applicable, in the form previously provided by the Debtors, marked to show all changes requested by the Potential Bidder (including those related to purchase price). The Independent Debtor Representative may conclude, in his reasonable business judgment, that any such changes are detrimental to unsecured creditors and/or the estate and, based on such determination, decline to designate the Potential Bidder and the Potential Bid as qualified to participate in the Auction, unless such requested changes are acceptably modified or are eliminated.

>> (2)      A clean version of the APA or EPA, as applicable, containing all of the requested changes described in (1), above, and executed by the Potential Bidder.

>> (3)      If the Potential Bidder submits an APA, such APA shall clearly state whether the Potential Bid is for all, or only a portion, of the Property. If only a portion of the Property, the specific assets to be purchased must be particularly described.

16

(4)     Neither the APA nor EPA, as applicable, shall include any financing, due diligence, or other contingencies and must, by its terms, remain open and binding on the Potential Bidder until the conclusion of the Auction. If a Potential Bidder and a Potential Bid are deemed qualified to participate in the Auction, and the Auction concludes with such Qualified Bid being determined by the Independent Debtor Representative, in his reasonable business judgment, as the highest and best received at the Auction (the "**Prevailing Bid**"), the APA or EPA, as applicable, with respect to such Qualifying Bid, by its terms, shall remain binding upon the Prevailing Bidder submitting such Qualified Bid. If the Auction concludes with the Qualified Bid being determined by the Independent Debtor Representative, in his reasonable business judgment, to be the second highest and best, the APA or EPA, as applicable, by its terms, shall remain binding as the backup bid ("**Backup Bid**") until the closing of a Transaction with the Prevailing Bidder, and if such Prevailing Bidder fails to timely close the Transaction pursuant to the terms of the Prevailing Bid APA or EPA, as applicable, the Independent Debtor Representative may, in his reasonable business judgment, elect to deem the Backup Bid as the Prevailing Bid and the Backup Bidder as the Prevailing Bidder and such Prevailing Bidder shall be obligated to close the Transaction pursuant to the terms of its bid. If a Qualified Bid is neither the Prevailing Bid, nor the Backup Bid, the APA or EPA, as applicable, by its terms, shall cease to be binding and any deposit shall be returned to the Qualified Bidder as soon as practicable following the conclusion of the Auction.

B.     *Identification of Potential Bidder*

A Potential Bid package shall identify the Potential Bidder and the Potential Bidder's sponsors ("**Sponsors**") (if any), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

C.     *Corporate Authority.*

A Potential Bid package shall contain written evidence of the approval of the Potential Bidder's Board of Directors (or comparable governing body) of the transaction upon the terms provided in such Potential Bidder's APA or EPA, as applicable; *provided, however*, that, if the Potential Bidder is an entity specially formed for the

17

purpose of acquiring the Property, then the Potential Bidder must furnish written evidence, reasonably acceptable to the Independent Debtor Representative, of the approval of the contemplated transaction by the Board of Directors (or comparable governing body) of each of the equity holder(s) of the Potential Bidder.

D.    *Proof of Financial Ability to Perform.*

A Potential Bidder must provide evidence that the Independent Debtor Representative reasonably concludes demonstrates that the Potential Bidder and/or its Sponsor(s) have the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned to the Potential Bidder pursuant to its APA or EPA, as applicable. Such information should include, <u>inter</u> alia, the following:

(1)    Contact names and numbers for verification of financing sources,

(2)    Evidence of the Potential Bidder's and/or its Sponsor(s) internal resources and proof of any debt or equity funding commitments that are needed to close the Transaction, which commitments shall not be contingent or conditional;

(3)    The Potential Bidder's and/or its Sponsor(s) current financial statements (audited if they exist); and

(4)    Any other form of financial disclosure, credit-quality support information, or enhancement reasonably acceptable to the Independent Debtor Representative, demonstrating that such Potential Bidder and/or its Sponsor(s) have the ability to close the Transaction; <u>*provided*</u>*, however*, that the Independent Debtor Representative shall determine, in his reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable.

E.    *No Bid Protections For Potential Bidders*

A Potential Bidder may not request any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, neither the tendering of a Potential Bid, nor the determination that a Potential Bid is a Qualified Bid, shall entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

F.    *Cash Deposit*

18

Each Bid must be accompanied by a cash deposit ("Deposit") of 5% of the purchase consideration proposed in the Potential Bid. The Deposit shall be held in an interest-bearing escrow account to be identified and established by the Debtors. The deposit of the Prevailing Bidder shall be increased to 10% of the consideration included in the Prevailing Bid within three (3) business days after the Prevailing Bid is approved by the Bankruptcy Court and shall be applied to the purchase price at close.

In the event a Potential Bidder is determined by the Independent Debtor Representative not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon on, or before, February 14, 2014. Each Qualified Bidder, other than the Prevailing Bidder and the Backup Bidder, shall be refunded its deposit and all accumulated interest thereon within three (3) business days after the conclusion of the Auction.

    G.    *Notification of Selection of Qualified Bidders and Bids*

The Independent Debtor Representative shall identify and notify the Qualified Bidders of their selection on, or before, February 14, 2014. Any party may seek the Court's review of the Independent Debtor Representative's determination whether a Potential Bidder is a Qualified Bidder; *provided, however*, that any such challenge must be raised and concluded prior to the commencement of the Auction. The Independent Debtor Representative's determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

**3.    Notice of the Auction or of Absence of Qualified Bids**

Unless on, or prior to, the Bid Deadline date the Independent Debtor Representative selects less than two (2) Qualified Bids, an auction (the "**Auction**") will be held on, or about, February 21, 2014 2014, at 10:00 am local time at the offices of Debtors' counsel:

GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Rd., Suite 1100
Phoenix, Arizona 85016

The Independent Debtor Representative may, in his reasonable business judgment, disregard any Potential Bids received after the Bid Deadline, in which case any such bids shall be deemed not to be Qualified Bids.

**4.    The Auction**

    *(a)    Attendance at and Participation in the Auction.*

19

In addition to the Debtors, the Independent Debtor Representative and their representatives and advisors, the only parties (and their respective representatives and advisors) eligible to attend and participate in the Auction shall be those parties who have been selected as Qualified Bidders and their representatives and advisors.

*(b)*     *The Auction Process.*

*A.*     *The Independent Debtor Representative Shall Conduct the Auction*

The Independent Debtor Representative and the Debtors' professionals shall direct and preside over the Auction. At the commencement of the Auction bidding shall commence with the highest and best Qualified Bid ("**Initial Bid**"), as determined by the Independent Debtor Representative, in his reasonable business judgment. The foregoing determination shall take into account any factors the Independent Debtor Representative reasonably deems relevant to the value and benefit to the Debtors' estates of the Qualified Bid, including, *inter alia*, the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, if any, and the impact of the proposed transaction on the amount of claims remaining against the Debtors' estates following consummation; (c) the ability of the Qualified Bidder to timely close the Transaction; (d) the proposed closing date; (e) the likelihood, extent and impact of any potential delays in closing; (f) any purchase price adjustments; and (g) the ability of the Qualified Bidder to provide adequate assurance of future performance under any executory contracts or unexpired leases proposed to be assumed and assigned, or otherwise obtain any consents necessary for the consummation of the Transaction (collectively the "**Bid Criteria**"). Each bid made following the Initial Bid shall be an Overbid (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Independent Debtor Representative shall maintain a record of all bids made and announced at the Auction, including the Stalking Horse Bid, all Overbids and the Prevailing Bid.

*B.*     *Terms of Overbids.*

An "**Overbid**" is any bid made at the Auction subsequent to the Independent Debtor Representative's announcement of the Initial Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(1)     *Minimum Overbid Increment*

Any Overbid after the Initial Bid shall be made in increments of at least $100,000.

(2)     *Remaining Terms are the Same as for Qualified Bids.*

3960876v2/22420-0006

Case 2:13-bk-10332-BMW    Doc 472    Filed 01/08/14    Entered 01/08/14 16:31:24    Desc
Main Document    Page 20 of 40

Except as modified below, an Overbid must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Qualified Bidder until and unless the Independent Debtor Representative accepts a higher Qualified Bid as an Overbid.

(3) *Financial Ability With Respect to an Overbid*

To the extent not previously provided (which shall be determined by the Independent Debtor Representative in his reasonable business judgment), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Independent Debtor Representative, in his reasonable discretion) demonstrating such Qualified Bidder's ability to close the proposed Transaction pursuant to the terms of such Overbid.

C. *Consideration of Overbids.*

The Independent Debtor Representative reserves the right, in his reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Independent Debtor Representative and the Debtors' representatives and advisors as well as with individual Qualified Bidders and their respective representatives and advisors; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Independent Debtor Representative with such additional evidence as the Independent Debtor Representative, in his reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount;

D. *Announcing Overbids*

The Independent Debtor Representative shall announce at the Auction the material terms of each Overbid, the basis for the calculation of the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estates based, among other things, on the Bid.

E. *Conditions To, and the Closing Of, the Auction*

The Auction shall continue until there is only one Qualified Bid that the Independent Debtor Representative determines, in his reasonable business judgment, is the highest and best Qualified Bid. In making

21

this decision, the Independent Debtor Representative shall consider the Bid Criteria. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Qualified Bidder submitting such Overbid has submitted a fully executed APA or EPA, as applicable, memorializing the terms of the Overbid, or made appropriate modifications to the APA or EPA, as applicable, previously submitted in order to accomplish the same.

Thereafter, the Independent Debtor Representative shall identify which Qualified Bidder, in the reasonable business judgment of the Independent Debtor Representative, has made the highest and best bid, as determined by, among other things, the Bid Criteria.

The Auction shall then be closed. Once the Auction is closed, the Independent Debtor Representative shall be prohibited from discussing, soliciting or accepting any further bids.

F.    *Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale of the Property and the construction and enforcement of the APA or EPA, as applicable.

**5.    Bankruptcy Court Approval and Authorization of the Transaction**

On, or before February 28, 2014 the Prevailing Bid will be presented to the Bankruptcy Court at the Sale Hearing, as defined in the Bid Procedures Order, and the Independent Debtor Representative will request the Bankruptcy Court's approval thereof and authorization for the Debtors to consummate the Transaction pursuant to the terms of the Prevailing Bid.

**6.    Modification**

The Independent Debtor Representative, in consultation with the Official Committee of Unsecured Creditors, may modify any deadline or other provision of these Bid Procedures if the Independent Debtor Representative, in the exercise of his reasonable business judgment, determines that such modifications are in the best interests of the Debtors and their estates, provided that the Independent Debtor Representative gives notice of such modifications to all affected parties promptly following any such determination.

42.    The Bid Procedures are designed to ensure that there is a fair and expeditious process under which the Independent Debtor Representative can solicit bids for the sale of the business and hold an Auction thereon in a manner that will ensure that

22

the Debtors' bankruptcy estates receive maximum value. These procedures, and the timeline on which they are proposed, take into account the Debtors' critical cash flow situation and other considerations, all of which compel the prompt completion of the sale process by early to mid-March 2014.

43.    If it is necessary to modify the Bid Procedures due to the submission of a stalking horse bid, the Debtors will provide notice to the Court and parties in interest and seek approval of any such modifications.

**H.    Executory Contracts and Unexpired Leases.**[5]

44.    To the extent that the Prevailing Bid is for an Asset Sale, to facilitate and consummate the sale of the Property under an APA, the Debtor seeks authority to assume and assign certain executory contracts and unexpired leases following the Auction, pursuant to Section 365(f) of the Bankruptcy Code under the APA (collectively, the "**Transferred Contracts**"). Due to the nature of the bidding, it is impossible for the Debtors to currently identify which contracts and leases will require assumption and assignment to the Buyer. As such, the Debtors further seeks authority to establish the following assumption and assignment procedures:

1.    Designation Deadline. At or prior to the Bid Deadline, each Qualified Bidder shall provide the Debtors with the list of contracts and leases such Qualified Bidder intends to designate as Transferred Contracts under an APA.

---

[5]    The Plan, which is set for an Initial Confirmation Hearing on January 29, 2014, approximately one month before the proposed Sale Hearing, provides that a list of contracts to be assumed by the Debtors must be filed with the Court prior to the Confirmation Date. The Independent Debtor Representative likely will ask the Court to continue the Confirmation Hearing to coincide with the Sale Hearing to preserve the Debtors' ability to consummate either an Asset Sale or Equity Sale depending on the preference of the Buyer. Therefore, the notification provisions relating to the non-debtor parties to potential Transferred Contracts described in this Motion will be consistent with the Plan.

3960876v2/22420-0006

2.      Notices for Assigned Agreements.  As soon as practicable, the Debtors shall serve on all non-Debtor counterparties to any contract or lease (the "**Contract Notice Parties**") that are potentially subject to be assumed and assigned in connection with the sale of the Debtors' assets, a Contract Notice in the form attached hereto as **Exhibit 3** that identifies, to the extent applicable, (a) the contract or lease that may be a Transferred Contract, (b) the name of the counterparty to such contract or lease, (c) any applicable cure amount for such contract or lease if it becomes a Transferred Contract, and (d) provides notice of the deadline for responses or objections to the proposed assumption and assignment of the contract or lease and/or the Cure Amount with respect thereto; provided, however, that the presence of a contract or lease on a Contract Notice does not constitute an admission that such contract or lease is an executory contract and does not bar any Qualified Bidder from removing any such contract or lease from its list of Transferred Contracts.

3.      Objections to Assumption and Assignment of Contracts.  Other than an objection to the ability of the Buyer to provide adequate assurance of future performance, objections, if any, to the proposed assumption and assignment of any of the Transferred Contracts, must be filed with the Court and served on the Debtors within fourteen (14) days after service of the Contract Notice by the Debtors.  Objections to the ability of the Buyer to provide adequate assurance of future performance may be heard at the Sale Hearing.  If any objections are received and not resolved, such objections will be heard at the Sale Hearing.

4.      Notice of Transferred Contracts.  As soon as practicable after the conclusion of the Auction, the Debtor will file with the Court, and serve on all parties on the Debtors' consolidated master mailing list, a notice identifying the Prevailing Bidder and stating which contracts and leases will be assumed and

assigned (the "**Transferred Contracts List**").  The Transferred Contracts List will also be served via first class mail on all non-Debtor counterparties to the contracts and leases set forth on the Transferred Contracts List within three (3) business days of entry of the Sale Order, together with a copy of the Sale Order.

45.     To the extent that any person or entity does not timely object as set forth above, such person or entity shall be (a) forever barred from objecting to the assumption and assignment of any of the Contracts identified on the Contract Notice, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (b) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable contract or lease, (c) bound to such corresponding Cure Amount, if any, (d) deemed to have agreed that the Buyer has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (e) deemed to have agreed that all defaults have been cured as a result or precondition of the assignment, such that the Buyer and the Debtor shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, (f) deemed to agree that from and after the date of the assignment the applicable contract or lease shall remain in full force and effect for the benefit of the Buyer and such entity in accordance with its terms, (g) deemed to have relieved the Debtors and their estate from any liability for breach of such contract or lease occurring after such assignment; (h) deemed to have waived any right to terminate the applicable contract or lease or designate any early termination date under the applicable contract or lease as a result of any default that occurred and/or was continuing prior to the assignment date, and (i) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable contract or lease.

3960876v2/22420-0006

**I.**     **Lienholders.**

46.     The Debtors believe that the DIP Lender and the Maricopa County Treasurer are the only parties that assert liens or security interests in the assets to be sold pursuant to this Motion, to the extent that the Buyer elects an Asset Sale. The only active UCC-1 filings against the Debtors as of the Petition Date were filed by: (a) De Lage Landen Financial Services, which claims an interest in two copiers under Lease Nos. 24917245 and 24993595, and (b) Magid Glove & Safety Mfg. C., LLC, which claims an interest in all of the Debtors' work gloves, safety clothing and safety products financed through Magid Glove & Safety Mfg. C. LLC, all of which are subject to assumption and assignment, or rejection, in connection with an Asset Sale.

**J.**     **Proposed Sale Hearing and Related Deadlines.**

47.     The Debtors request that the Court schedule the Sale Hearing for **February 28, 2014**, or as soon thereafter as the Court's calendar may permit.

48.     The Debtors request that the Court set the deadline to file and serve any objection to the proposed Asset Sale or Equity Sale, any objections to the ability of the proposed Buyer to provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code with respect to any executory contracts or unexpired leases, and any evidence in support of such objections, as February 26, 2014 (two (2) business days prior to the Sale Hearing).

49.     The Debtors request that the Court set the deadline to file and serve any written declarations and any reply in support of the proposed Asset Sale or Equity Sale, including any evidence in support of the assumption and assignment or any executory contract or unexpired lease, as **February 27, 2014** (one (1) day prior to the Sale Hearing).

**K.**     **Notice.**

The Debtors respectfully request that the Court approve the form and manner of

26

notice described in the following paragraphs as reasonable, sufficient, and in accordance with the Bankruptcy Code and Bankruptcy Rules with respect to the relief requested in the Motion.

50.     _Service of the Motion._  The Debtors have served or is in the process of serving this Motion and all exhibits and declarations attached hereto by email, facsimile or next business day delivery on: (a) the United States Trustee; (b) the DIP Lender and his counsel; (c) the Maricopa County Treasurer; (d) the non-debtor parties to the active UCC financing statements on file against the Debtors; (e) counsel for the Committee and each member of the Committee; (f) C Squared, Anchor Management, AWI, William J. Perciballi, and their respective counsel; (g) the state and federal agencies required by Bankruptcy Rule 2002(j) and Local Rule 2002(b); (h) each of the Debtors' twenty (20) largest unsecured creditors; (i) all parties previously identified by Houlihan Lokey or the Debtors as potentially interested in completing a transaction with the Debtors; and (j) all parties that have requested notice of matters in this case (collectively, "**Service Parties**").[6]

51.     _Service of the Sale and Procedures Notice._  Within one day of entry of the Procedures Order, the Debtors intend to serve the Sale and Procedures Notice attached hereto as **Exhibit 2** (to which the Bid Procedures will be attached), by email, facsimile or email, facsimile or next business day delivery on the Service Parties, and by first class mail on all parties listed on the Debtors consolidated master mailing.

52.     _Service of the Contract Notice and Other Pleadings._  Within three (3) days of entry of the Procedures Order, the Debtors intend to serve the Contract Notice attached hereto as **Exhibit 3**, together with the attachment contemplated thereby, by overnight

---

[6]     Service of the Sale Motion, and all orders and notices related to the proposed sale, on parties previously identified by Houlihan Lokey or the Debtors as potentially interested in completing a transaction with the Debtors, will be completed by Houlihan Lokey so that they are better able to control all communications with potential buyers.

3960876v2/22420-0006

delivery on: (a) the non-debtor parties to the Contracts and Leases (the "**Contract and Lease Parties**") and (b) the Service Parties.   At the time of service of the Contract Notice, the Debtor also will serve the Contract and Lease Parties by first class mail with the Motion and the Sale and Procedures Notice.

### III.
### ARGUMENT.

**A.     The Bid Procedures Should Be Approved.**

Bankruptcy Code section 363(b)(1) provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."   A debtor should be authorized to sell assets other than in the ordinary course of business pursuant to Bankruptcy Code section 363(b)(1) if it demonstrates a sound business purpose for doing so.  *See, e.g., Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. . . . Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) (finding that "a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction").

The Bid Procedures provide a framework for the Debtors to entertain competing bids and, if the Debtors receive such bids, to conduct the Auction in a fair and open fashion that will encourage participation by financially capable bidders.  The Bid Procedures also set forth a schedule for achieving these objectives in an expeditious manner.  In particular, this schedule takes into consideration the financial condition of the

28

Debtors and the urgent need to close a sale quickly to preserve the going concern value of the business and the Debtors' relationships with its customers.

Bid procedures are appropriate when they provide a benefit to the estate, by maximizing the value of its assets, and enhancing competitive bidding. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535-37 (3d Cir. 1999). The Debtors respectfully submit that a sale pursuant to this Sale Motion and the proposed Procedures Order, subject to the opportunity for parties to present higher and better bids pursuant to the Bid Procedures, is appropriate, and will ensure that the estate is receiving maximum value, which is the paramount goal in any proposed sale of estate property. *See, e.g., Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (recognizing that the Bankruptcy Code's general policy is "maximizing the value of the bankruptcy estate."). Further, the Debtors respectfully submit that the proposed Bid Procedures are fair and reasonable, and consistent with those procedures previously approved in numerous other chapter 11 cases. *See, e.g., In re Station Casinos, Inc., et al.*, Case No. 09-52477 (GWZ) (Bankr. D. Nev. June 4, 2010); *In re Advanced Materials, Inc., et al.*, Case No. 09-16548 (TA) (Bankr. C.D. Cal. July 2, 2009); *In re Fleetwood Enters., Inc., et al.*, Case No. 09-14254 (MJ) (Bankr. C.D. Cal. March 10, 2009).

**B.** **The Proposed Form and Manner of Notice of the Proposed Sale and the Bid Procedures Is Reasonable and Appropriate.**

Pursuant to Bankruptcy Rules 2002(a)(2), 2002(c)(1), and 6004(a), a debtor in possession is required to notify its creditors of any proposed sale of its assets, including a general description of the assets to be sold and a disclosure of the time and place of an auction, the terms and conditions of the sale, and the deadline for filing any objections. The Debtors respectfully submit that the Sale and Procedures Notice fully complies with Bankruptcy Rules 2002 and 6004 and Local Rule 6004-1, provides adequate and appropriate notice of the relief requested in this Motion, and sufficient information to

29

enable interested parties to submit Qualified Bids and participate in the Auction. The Debtors further submit that service of the Sale and Procedures Notice by email, facsimile or next business day delivery on the Service Parties, and by first class mail on the master mailing list as proposed above will provide adequate and appropriate notice of the proposed Asset Sale or Equity Sale.

**C.    The Proposed Sale Should Be Approved as a Sound Exercise of the Independent Debtor Representative's Business Judgment.**

Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Courts repeatedly have held that a bankruptcy court should authorize a debtor to use or sell estate property under section 363(b)(1) whenever the request is supported by some rational, articulated business purpose. *See, e.g., Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). This was explained by the Bankruptcy Appellate Panel for the Ninth Circuit in *In re Walter*:

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.... Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.

*Id.* (quoting *In re Continental Air Lines, Inc.*, 780 F.2d at 1226). *See also In re Ernst Home Ctr.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) ("The Court may approve the FADCO Transaction if [the debtor] has established some articulated business justification for the transaction.") (internal quotations omitted).

30

3960876v2/22420-0006

Where a debtor in possession proffers a rational justification, "the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). Moreover, under the "business judgment rule," there is a presumption that, where the debtor's appropriate governing authority implements and follows fair procedures in making a decision, it acts in good faith and for a rational business purpose. *See, e.g., In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The board of directors is in the business of running the corporation. If the procedures utilized by the directors are applied fairly, and if the directors do not violate any of their fiduciary duties, then, under the business judgment rule their decision will not be second-guessed.") (citations omitted).

Bankruptcy Code section 363 does not require that the Court substitute its own business judgment for that of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 678 (Bankr. S.D.N.Y. 1989); *In re Highway Equip. Co.*, 61 B.R. 58, 60 (Bankr. S.D. Ohio 1986). Rather, the Court should ascertain whether the debtor has articulated a valid business justification for the proposed transaction. *See, e.g., Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir. 1979), *cert. denied*, 449 U.S. 869 (1980). This is consistent with the "broad authority to operate the business of the debtor ... [which] indicates congressional intent to limit court involvement in business decisions by a trustee ... [so that] a court may not interfere with a reasonable business decision made in good faith by a trustee." *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

In this case, the Debtors, the Committee, and the Debtors' equity holders all agree that an Asset Sale or Equity Sale that disposes of the business and assets of the Debtors, and the distribution of the proceeds in accordance with the Plan, provides the best and most reasonable means for resolving these cases. To that end, the Court approved the

31

retention of Houlihan Lokey as the Debtors investment banking firm. And, the Court appointed the Independent Debtor Representative, pursuant to the Protocol Order, to among other things, exercise his reasonable business judgment in selecting and proposing an available transaction that maximizes the recovery to the estate. This Motion, the Procedures Order, and the Bid Procedures are specifically tailored to ensure that the sale process and Auction will yield maximum recovery to the estate. And, the Independent Debtor Representative will exercise his reasonable business judgment in selecting the Prevailing Bid to be presented to the Court for approval. Prior to the Sale Hearing the Debtors will submit additional evidence in support of the approval of the Prevailing Bid and the consummation of the proposed transaction.

**D.** <u>**Assumption and Assignment of the Contracts and Leases Is Appropriate.**</u>[7]

The Bankruptcy Code provides, in pertinent part, that a trustee or debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1) sets forth the requirements for assuming an unexpired lease or executory contract, providing in pertinent part that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

---

[7] To the extent that the Prevailing Bid is for an Equity Sale, the "Transferred Contracts" designated by the Buyer will not be assumed and assigned, but rather would simply be assumed by the Reorganized Debtors under the Plan.

3960876v2/22420-0006

11 U.S.C. § 365(b)(1).

Section 365(f) of the Bankruptcy Code provides the authority for the Debtor to assign executory contracts and unexpired leases that are assumed by the Debtor as follows:

(1) [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if —

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(1) & (2).

Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume an unexpired lease or executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Pomona Valley Med. Group, Inc.*, 476 F.3d at 670; *In re Chi-Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982).

Here, the Independent Debtor Representative has determined that assuming and assigning the executory contracts and unexpired leases designated by the Buyer is a sound exercise of his reasonable business judgment. Assumption and assignment of these contracts and leases will enable the Debtors to consummate the proposed sale and generate substantial value for the estate. Moreover, the Debtors will not have an independent use for such contracts and leases subsequent to the sale.

The Debtors will be serving Contract and Lease Parties with the Contract Notice. The Contract Notice will list all of the executory contracts and leases that may be assumed and assigned. For each contract or lease, the Contract Notice will specify the dollar amount, if any, that the Debtors believe must be paid in order to cure any and all existing defaults under such contract or lease, and compensate the counterparty with respect thereto. The Contract Notice will advise the Contract and Lease Parties that if they believe a contract or lease is in default, and that such default will not be cured by payment of the specified amount, if any, that it should promptly provide evidence substantiating its position to the Debtors and timely file an objection to the Motion.

The Debtors also have satisfied the requirements for assumption and assignment pursuant to section 365(f)(2) of the Bankruptcy Code. The financial capability of and willingness to perform the post-assignment obligations under the Assigned Agreements by the successful bidder will constitute sufficient "adequate assurance of future performance" to justify the proposed assumption and assignment. *See, e.g., In re Tech Hifi, Inc.*, 49 B.R. 876, 879 (Bankr. D. Mass 1985) ("Adequate assurance of future performance with respect to the source of rent to be paid means that the proposed assignee has the ability to satisfy the financial obligations imposed by the lease. An absolute guarantee, such as a letter of credit, is not required to meet this standard."); *In re PPK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999); *In re THW Enters., Inc.*, 89 B.R. 351, 357 (Bankr. S.D.N.Y. 1988).

The Bid Procedures require the Stalking Horse Bidder and each Qualified Bidder to provide: (1) written evidence of a commitment for financing or other satisfactory written evidence that the bidder has the financial ability to close sale and to pay the cash component of its proposed purchase price, and (2) evidence of the bidder's ability to provide adequate assurance of future performance under any executory contract or unexpired lease to be assumed and assigned to it.

3960876v2/22420-0006

The Bid Procedures further provide that objections by a non-debtor party to assumption of an Assigned Contract based on adequate assurance concerns (or otherwise) may be resolved at the Sale Hearing. Accordingly, at the time of the Sale Hearing, the Debtors and the Buyer will have complied with the requirements of section 365(f)(2) of the Bankruptcy Code. The Debtors therefore respectfully request that the Court approve the assumption and assignment of the Assigned Agreements at the Sale Hearing.

**E.**      **The Sale of the Acquired Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f) Is Permitted Under the Circumstances.**

To the extent that the Prevailing Bid contemplates an Asset Sale to the Buyer, the Debtors requests that the sale of assets to the Buyer be free and clear of any and all liens, claims and interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims and interests to attach to the proceeds of the sale with the same validity, priority, and extent as existed prior to the sale. Pursuant to Section 363(f), a debtor may sell property free and clear of liens, claims and interests if one of the following five conditions is satisfied:

1.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2.      such entity consents;

3.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4.      such interest is in bona fide dispute; or

5.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the sale

of the Debtors' assets "free and clear." *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002). Under section 363(f)(2) of the Bankruptcy Code, a debtor in possession may sell estate property free and clear of liens, claims and interests if the persons or entities asserting them consent. Here, there are only two known entities that may assert liens on the assets to be sold, the DIP Lender and the Maricopa County Treasurer. The Debtors believe that both the DIP Lender and the Maricopa County Treasurer will either consent to the proposed sale, or simply not file an objection. To the extent that any other party asserting a lien, claim or interest receives notice of this Motion and does not file a timely written objection hereto, such party should be deemed to have consented to the sale of the assets free and clear of its asserted Lien. *See In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

Further, the Debtors believe that the proposed sale will generate proceeds in excess of the aggregate of all liens against the Debtors' assets. Therefore, Bankruptcy Code Section 363(f)(3) also should be satisfied. To the extent that any objection is received to this Motion on the basis that the proposed sale of assets cannot be free and clear of liens, claims and interests pursuant to section 363(f), the Debtors reserve the right to argue that any of the other bases for a sale "free and clear" under section 363(f) apply. Consequently and in the absence of any such objection, the proposed sale free and clear of all liens, claims, encumbrances, and interests satisfies section 363 of the Bankruptcy Code.

**F.      The Court Should Find the Sale Is in Good Faith.**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). The purpose of such a finding is to facilitate the operation of section 363(m) of the

Bankruptcy Code, which provides a safe harbor for purchasers of a debtor's property

when the purchase is made in "good faith." Section 363(m) provides as follows:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); *see also Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 279 (9th Cir. 1992).

Section 363(m) of the Bankruptcy Code serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. *Abbotts Dairies*, 788 F.2d at 147; *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 54-55 (7th Cir. 1983). As one court recognized, "[i]f purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices." *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). That court noted that, although the law balances the competing interests between lien holders and purchasers of assets of the estate, it weighs such interests "heavily in favor of the bona fide purchaser." Id. at 643.

The Debtors' assets and business are being heavily marketed, and the proposed sale will be at an Auction, subject to overbids. The Independent Debtor Representative has been negotiating with potential bidders in good faith and at arms' length. All parties are represented by separate counsel. To the extent that the Debtors enter into an APA or EPA with a stalking horse bidder, the Debtor will submit additional evidence regarding the arms' length negotiation of the stalking horse bidder asset purchase agreement. To the extent that the Debtors do not execute an APA or EPA with a stalking horse bidder, the Debtors will submit additional evidence of good faith and the arm's length

3960876v2/22420-0006

negotiation with the proposed Buyer prior to or during the Sale Hearing.  Accordingly, the Debtor submits that the proposed sale is in good faith and that the Buyer should be entitled to the protection afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

**G.      The Court Should Waive the Stay Under Bankruptcy Rules 6004(h) and 6006(d).**

Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, an order authorizing the sale of property pursuant to section 363 of the Bankruptcy Code is automatically stayed for fourteen days after entry of the order.  *See* Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for fourteen days, unless the court orders otherwise.

The Debtors respectfully submit that a waiver of these stay provisions is justified under the circumstances.  The dates and deadlines proposed for providing notice of the opportunity to bid, notice of the sale, notice of the proposed assumption of executory contracts and unexpired leases, and the Sale Hearing all seek to balance the needs of due process against the stark reality that the Debtors need additional funding to sustain their operations, that the DIP Financing matures on March 30, 2014, and that the Plan requires that any Transaction close by March 15, 2014 (in an attempt to minimize the risk that either the Debtors run out of cash or the DIP Financing matures before the Debtors are able to close a Transaction).  That same balancing of interests weighs in favor of providing that the order approving the transaction be immediately effective.

**IV.**
**CONCLUSION.**

**WHEREFORE**, the Debtors respectfully request that the Court enter appropriate orders granting the relief requested in this Motion and such other and further relief as the Court deems just and appropriate under the circumstances.  A proposed form of *Order*

38

3960876v2/22420-0006

1   *Establishing Bid Procedures, Setting Date and Time Of Sale Hearing, and Setting*

2   *Related Deadlines* (the "**Procedures Order**") is attached hereto for the Court's

3   consideration.

4

      RESPECTFULLY SUBMITTED this 8th day of January, 2014.

5

6                       **GALLAGHER & KENNEDY, P.A.**

7

8

                      By: */s/ Todd A. Burgess*

9                          John R. Clemency (Bar No. 009646)
                         Todd A. Burgess (Bar No. 19013)

10                          Lindsi M. Weber (Bar No. 25820)
                         Janel M. Glynn (Bar No. 25497)

11                          *Attorneys for Debtors*

12

13 COPIES of the foregoing served by Email, Facsimile,
Hand-Delivery, Overnight Delivery, or US Mail this

14 8th day of January, 2014 on the parties on the service
list attached as Exhibit 5 to the Court's copy of this

15 Motion only.

16

17   */s/Dana Troy*

18

19

20

21

22

23

24

25

26

27

28

3960876v2/22420-0006

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28