**GALLAGHER & KENNEDY, P.A.**
John R. Clemency (Bar No. 009646)
Todd A. Burgess (Bar No. 19013)
Lindsi M. Weber (Bar No. 25820)
Janel M. Glynn (Bar No. 25497)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
Email:        john.clemency@gknet.com
              todd.burgess@gknet.com
              lindsi.weber@gknet.com
              janel.glynn@gknet.com
*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARMORWORKS ENTERPRISES, LLC, TECHFIBER, LLC, | Case No.  2:13-bk-10332-BMW<br>Case No.  2:13-bk-10333-BMW |
| Debtors. | (Jointly Administered) |

This Filing Applies to:

☒    Both Debtors
☐    Specified Debtor

**DEBTORS' VERIFIED EMERGENCY MOTION FOR ORDER: (I) APPROVING FIRST FORBEARANCE AGREEMENT AND SECOND AMENDMENT TO DIP CREDIT AGREEMENT; (II) APPROVING THE TYR TACTICAL AGREEMENT AND AUTHORIZING DEBTORS TO ACCEPT A DISCOUNTED EARLY PAY-OFF OF TYR TACTICAL NOTE; (III) APPROVING THE SALE OF EQUIPMENT AND PLATES UNDER THE TYR TACTICAL AGREEMENT FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS; AND (IV) GRANTING RELATED RELIEF**

ArmorWorks Enterprises, LLC ("**ArmorWorks**") and TechFiber, LLC ("**TechFiber**," and with ArmorWorks, the "**Debtors**"), with the consent of Grant Lyon, solely in his capacity as Independent Debtor Representative in accordance with the

Protocol Order,[1] respectfully move the Court for the entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1, granting the relief summarized below:

1. Approving that certain First Forbearance Agreement and Second Amendment to DIP Credit Agreement dated April 24, 2014 (the "**Forbearance Agreement**")[2] by and among the Debtors, ShockRide, LLC, Mandall BarrierWorks, LLC (together, the "**Borrowers**") and Lancelot Armor, LLC ("**Lancelot**" or "**DIP Lender**"), pursuant to which Lancelot has conditionally agreed to forbear from enforcing its rights and remedies with respect to existing defaults under the Senior Secured Super-Priority Debtor-In-Possession Credit and Security Agreement, dated June 14, 2013 (as amended, the "**DIP Agreement**");

2. Approving that certain Letter Agreement (the "**Tyr Tactical Agreement**") executed by the Debtors, RG Beck AZ, LLC, an Arizona limited liability company ("**RGB**"), Tyr Tactical, LLC, an Arizona limited liability company ("**Tyr**"), Jason Beck ("**Jason**"), and Jane Beck ("**Jane**") regarding Tyr's agreement to prepay the Tyr Note (defined below) owed to AWE, at a discount, in exchange for the Debtors' agreement to terminate certain agreements and assign back to Tyr the intellectual property previously

---

[1] The "Protocol Order" means and refers to the *Order Granting Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions, and Retention Grant Lyon as Independent Debtor Representative* entered on October 7, 2013 [Docket No. 291], as amended by the *Stipulated Order Amending And Clarifying Governance Protocol For Sale And Non-Ordinary Course Transactions, And Retention Of Grant Lyon As Independent Debtor Representative* entered on December 19, 2013 [Docket 452], and as further amended, modified, restated or supplemented from time to time.

[2] A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit "1".

4169889v1/22420-0006

transferred to AWE.[3]

3. Approving the sale of the Equipment and Plates to Tyr under the Tyr Agreement free and clear of any and all liens, claims, security interests, encumbrances, and interests of any kind, with all such liens, claims, security interests, encumbrances, and interests attaching to the proceeds of the sale of the Equipment and Plates to the same extent, validity and in the same priority as they attached to the Equipment and Plates;

4. Finding that Tyr is a good faith purchaser entitled to the protections of Bankruptcy Code section 363(m); and

5. Providing that all of the foregoing relief shall be effective immediately upon entry of the applicable order granting such relief, and that any stay of such order under Bankruptcy Rules 6004(h) is waived and shall not be applicable.

This motion is supported by the following Memorandum of Points and Authorities, the attached exhibits, any oral or documentary evidence presented at or prior to the hearing on the motion, the arguments and representations of counsel made at the hearings on this motion, and all germane matters of record in these bankruptcy cases.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### JURISDICTION.

1. On June 17, 2013 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. An Official Joint Committee of Unsecured Creditors was appointed on July 9, 2013 (the "**Committee**"). No trustee or examiner has been appointed.

2. This Court has jurisdiction over this case and this matter pursuant to 28

---

[3] A true and correct copy of the Tyr Agreement is attached hereto as Exhibit "2".

4169889v1/22420-0006

U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3.      The statutory predicates for the relief requested are Bankruptcy Code §§ 105 and 363, and Bankruptcy Rules 2002 and 6004.

## II.
## FACTUAL AND PROCEDURAL HISTORY.

### A.      The Business.

1.      ArmorWorks and its wholly-owned subsidiaries develop advanced survivability technology and design and manufacture high-tech military personal body armor, vehicle armor, aircraft and marine armor, and energy attenuating seats for protection against a broad spectrum of ballistic threats primarily for use in military and nuclear safety and security applications.  ArmorWorks systems are in-service around the world in several United States Military applications.

2.      ArmorWorks' engineering and fabrication services take armor systems projects from concept to production with customer input and collaboration throughout the process.  ArmorWorks specializes in all aspects of military armor technology. ArmorWorks has produced over 1.25 million ceramic armor and composite armor protection components for a variety of personnel armor, aircraft, and vehicle applications. ArmorWorks primarily is known for, and attributes its success to:

- •      State-of-the-art ceramic armor and composite armor systems technology;
- •      High-performance military armor products & designs;
- •      Engineering & R&D capability to apply technology & designs to production;
- •      Ballistic testing & analysis capability;
- •      Military armor production capacity and experience;
- •      Understanding of Military Armor:  Aerospace, Personnel, Vehicle, and

4

Ship Armor Applications; and

• Patented Armor Systems Technologies.

3. ArmorWorks sells the majority of its products through two channels. The primary channel is as a prime contractor for United States Military agencies. ArmorWorks has contractual relationships with many government entities for the purchase and service of its products, and provides a substantial amount of the armor and protective equipment used by all branches of the United States Military. The second primary channel involves ArmorWorks subcontracting with other prime government contractors to U.S. Military agencies.

4. Because of (i) the life-critical nature of its products, (ii) the use of critical defense technology including classified national defense, intelligence, and nuclear security information and (iii) the United States Military's critical need for armor to protect its troops in a time of war, ArmorWorks' contracts include special delivery priorities and security and secrecy requirements which subject ArmorWorks to stringent government regulations, requirements, and oversight.

5. ArmorWorks is vertically integrated with several wholly-owned subsidiaries providing complementary survivability products as well as components used by ArmorWorks to manufacture the armor products and systems it sells.

6. The only ArmorWorks' subsidiary that filed a Chapter 11 petition is TechFiber, a wholly-owned Delaware limited liability company that supplies ballistic fiber to ArmorWorks and the armor industry. The ballistic fiber is used by ArmorWorks to manufacture ceramic armor and composite armor systems.

7. Non-debtor subsidiary ShockRide, LLC ("**ShockRide**") is a wholly-owned Arizona limited liability company that designs, manufactures, and sells energy attenuating seats, which protect passengers from the shock of IED and mine blasts beneath a vehicle. ShockRide's energy absorption, rollover, and crash protection

technology is used in a wide variety of military vehicles with over 70,000 seats in service worldwide.

8.      Non-debtor subsidiary Mandall BarrierWorks, LLC ("**MBW**") is a wholly-owned Delaware limited liability company that designs and produces high-end vaults, vault doors, and armored door systems providing architectural blast protection and security, including passive and reactive high value asset protection systems, safes, security doors, and fixed and portable guard stations for government, military, nuclear, and commercial installations. The company's work in the area of nuclear safety and security requires additional security clearances beyond those required by the Department of Defense.

9.      Non-debtor subsidiary Applied Heat Technologies, LLC ("**AHT**") is an Arizona limited liability company wholly owned by ArmorWorks that provides portable armor and composite repair products and services.

10.      Non-debtor Protective Ceramics, LLC is a Delaware limited liability company wholly owned by ArmorWorks. Protective Ceramics currently does not conduct any business operations.

11.      ArmourWorks International Limited (AIL) is a wholly-owned subsidiary of ArmorWorks located in the United Kingdom that supplies armor and protective products to customers in the United Kingdom and internationally. ArmorWorks Enterprises Canada, ULC ("**ArmorWorks Canada**") is a wholly-owned subsidiary of ArmourWorks International Limited (AIL) located in British Columbia that supplies soft body armor products to the Canadian military and law enforcement communities.

**B.      The Lancelot DIP Facility**

1.      The Borrowers and Lancelot are parties to the DIP Agreement, which was approved by the order of the Bankruptcy Court entered June 25, 2013 at Docket #60 and

6

the final order of the Bankruptcy Court entered July 19, 2013 at Docket #119, pursuant to which Lancelot loaned $3,500,000 to the Borrowers.

2. On August 1, 2013, the Maricopa County Treasurer filed a *Motion for Reconsideration of Stipulated Final Order Approving Senior Secured Postpetition Financing* (Docket 142) challenging the priority of the DIP Lender's liens against tangible personal property of the Debtors based on statutory liens for unpaid 2012 and 2013 personal property taxes. The Debtors and the Maricopa County Treasurer agreed that the Debtors would have an open extension of time to respond to the motion; and that the parties would address the issue if, and to the extent necessary, *i.e.*, in the event that the DIP Loan remained unpaid and the value of the Debtors' tangible personal property was insufficient to pay both obligations. As of April 24, 2014, the Maricopa County Treasurer asserts that the unpaid personal property taxes owed by the Debtors for 2013 totaled $26,395.57 and for 2012 totaled $45,351.52.

3. The DIP Facility was amended by order of the Bankruptcy Court entered August 30, 2013 at Docket #176 (together with the prior orders, the "**DIP Orders**") and the First Amendment to Senior Secured Super-priority Debtor-in-Possession Credit and Security Agreement dated September 6, 2013. The first amendment of the Lancelot DIP Facility was done in relation to a $500,000 inter-company loan by ArmorWorks to ArmorWorks Canada approved by the Court.

4. On October 25, 2013, Lancelot made an additional $150,000 loan to non-debtors ShockRide and MBW evidenced by, among other things, the Second Term Note dated October 25, 2013. ShockRide and MBW in turn made a $150,000 intercompany loan to ArmorWorks Canada.

5. Under Section 6.1(i) of the Lancelot DIP Agreement, as amended, the sum of the Borrowers' Eligible Accounts must at all times remain above $3,500,000.

6. As of January 14, 2014, Borrowers' Eligible Accounts fell below

7

$3,500,000 (the "**Existing Default**") in violation of Section 6.1(i) of the Lancelot DIP Agreement. On January 15, 2014, Lender provided Borrowers written notice of the Existing Default, and notice that interest had begun to accrue at the Default Rate.

7. Despite the existence of the Existing Default, Lancelot did not immediately exercise its other enforcement rights and remedies because the Debtors were pursuing a sale of the company through the Houlihan Lokey sale process, which the Debtors expected, would result in the full repayment of the DIP Facility, and all other allowed creditor claims, at closing.

8. Since January 15, 2014, and following the Debtors' withdrawal of the sale motion, the Debtors cash and Eligible Accounts have steadily declined. Lancelot is no longer willing to forbear from exercising its rights and remedies other than on the terms set forth in the Forbearance Agreement (discussed below).

**C.** **The Tyr Tactical Agreement.**

1. Prepetition, ArmorWorks owned 60% of Tyr, a company that sells body armor and personal protective gear to law enforcement agencies.

2. As part of the transaction in which ArmorWorks disposed of its interest in Tyr, the parties executed the following documents:

   a. The Amended and Restated Secured Promissory Note dated October 28, 2012 in the face amount of $3,254,499.26 with AWE as the Holder and Tyr as the Maker (the "**Tyr Note**"), which Tyr Note had an outstanding balance of $2,628,651.00 as of March 31, 2014 after Tyr made the $80,000.00 payment due March 31, 2014.

   b. The Guaranty dated October 28, 2012 with RGB, Jason and Jane as the Guarantors in favor of AWE (the "**Guaranty**").

   c. Amended and Restated Security Agreement dated October 28, 2012 by and between Tyr as the Debtor and AWE as the Secured Party (the "**Security Agreement**").

   d. The Purchase Option and Assignment of Membership Interest in Tyr Tactical, LLC dated December 31, 2012 by and between AWE, RGB, and Jason (the "**Option and Assignment Agreement**").

8

e. The Intellectual Property License Agreement dated December 31, 2012 by and between AWE, as the Licensor, and Tyr, as the Licensee, regarding the registered trademarks and the patent applications listed on Exhibit A hereto (the "**PV License**").

f. The Intellectual Property License Agreement dated December 31, 2012 by and between AWE, as the Licensor, and Tyr, as the Licensee, regarding the trademarks listed on Exhibit B hereto (the "**Registered IP License**").

g. The Intellectual Property License Agreement dated December 31, 2012 between and among AWE, as the Licensee, and Tyr, RGB and Jason, as the Licensors, entitled "Other IP" (the "**Other IP License**").

h. The Supply Agreement dated December 31, 2012 between and among Tyr, AWE, and TechFiber (the "**Supply Agreement**").

i. Term Sheet dated November 27, 2012 between and among certain of the Parties to this Agreement (the "**Term Sheet**").[4]

3. To facilitate a refinancing of the Tyr Note and other debts, Tyr offered ArmorWorks an early pay-off of the Tyr Note. Subject to the consent of the Independent Debtor Representative under the Protocol Order; the consent of the DIP Lender under the DIP Orders; and the approval of the Bankruptcy Court, ArmorWorks agreed to accept a discounted early pay-off of the Tyr Note on the terms and conditions stated in the Tyr Tactical Agreement, which include the following:

a. AWE agrees to accept $2,300,000.00 on or before April 30, 2014 as payment in full of all amounts due under the Tyr Note which amount includes the $80,000.00 payment that would otherwise be due under the Tyr Note on April 30, 2014.

b. If the Closing does not occur before April 30, 2014, Tyr will make the $80,000.00 payment due on April 30, 2014, and AWE agrees to accept $2,220,000.00 plus interest of $691.00 per day from May 1, 2014 through the date AWE is paid the amount described in this sentence, inclusive, as payment in full of all amounts due under the Tyr Note. The amount described in Section 2(A) or 2(B), as applicable, is defined as the "**Payoff Amount**." The Payoff Amount must be paid on or before May 31, 2014 (the "**Payoff Deadline**").

c. On or before July 1, 2014: (1) Tyr will purchase the equipment listed on Exhibit C-1 to the Tyr Tactical Agreement from AWE for $185,000.00, and (2)

---

[4] True and correct copies of the Tyr Note, Guaranty, Security Agreement, Option and Assignment Agreement, PV License, Registered IP License, Other IP License, Supply Agreement, and Term Sheet are attached hereto as Exhibits 3 - 11, respectively.

Tyr will purchase the equipment listed on Exhibit C-2 to the Tyr Tactical Agreement (together with the equipment listed on Exhibit C-1 to the Tyr Tactical Agreement, the "**Equipment**") from AWE's Canadian subsidiary, ArmorWorks Enterprises Canada ("**AWC**") for $60,000.00.

d.      On or before August 1, 2014, Tyr will purchase and pay for in full $140,000.00 in ballistic plates (500 LV-1191s at $280 per plate) (the "**Plates**") from AWE.

4.      At Closing, the parties have agreed that the following will occur:

a.      The original Tyr Note will be marked "PAID IN FULL" and be delivered to Tyr or its designee.

b.      The Security Agreement will terminate and AWE will release the lien created thereby and will authorize the termination of UCC-1 Financing Statements (File Numbers 20111640512-1 and 20111640520-1) and any other Financing Statements filed with AWE listed as the Secured Party and Tyr, Jason, Jane or RGB as a Debtor.

c.      The Guaranty will terminate.

d.      The Supply Agreement will terminate, except with regard to any purchase orders issued by Tyr before the date of the Tyr Tactical Agreement and except that Tyr will submit one or more purchase orders to TechFiber for 4,000 yards of PV material within the first 12 months after the Closing Date (the "PV Purchase"). The Supply Agreement will apply to the PV Purchase and Tyr will provide the 500d Nylon and 200d Kevlar to TechFiber for any purchase orders accepted by TechFiber consistent with past practice.

e.      Section 3 of the Option and Assignment Agreement will be void and of no further force or effect and the Option (as defined in the Option and Assignment Agreement) granted to AWE under the Option and Assignment Agreement will be cancelled without any further action by the Parties. All other terms of the Option and Assignment Agreement will remain in full force and effect.

f.      AWE will assign to Tyr all of its right, title, and interest in and to the patent applications, patents, names, trade names, trademarks, and service marks identified on Exhibit A to the Tyr Tactical Agreement ("PV") or in the PV License.

g.      AWE will assign to Tyr all of its right, title, and interest in and to the names, trade names, trademarks, and service marks identified on Exhibit B to the Tyr Tactical Agreement or in the Registered IP License, except for the trademarks listed on Exhibit D to the Tyr Tactical Agreement which AWE abandoned and in which it no longer has any interest.

h.      To carry out the transfers of intellectual property described in Sections 2(F) and 2(G) of the Tyr Tactical Agreement, the Parties will execute a Patent Assignment and a Trademark Assignment to transfer the intellectual

10

property described on Exhibits A and B of the Tyr Tactical Agreement to Tyr, which assignments will be in the same form as the assignments executed in connection with the PV License and the Registered IP License.

        i.    The PV License, the Other IP License and the Registered IP License will terminate and be of no further force or effect.

        j.    To the extent not already superseded by the Tyr Tactical Agreement at Closing, the Term Sheet will terminate except for Sections 8, 14, 16, 17 and the last two sentences of Section 3 of the Term Sheet.

5.    The Debtors agreed to seek expedited approval of the Tyr Tactical Agreement.

6.    The Debtors believe that the DIP Lender and the Maricopa County Treasurer are the only parties that assert liens or security interests in the assets to be sold pursuant to this motion. The only active UCC-1 filings against the Debtors as of the Petition Date were filed by: (a) De Lage Landen Financial Services, which claims an interest in two copiers under Lease Nos. 24917245 and 24993595, and (b) Magid Glove & Safety Mfg. C., LLC, which claims an interest in all of the Debtors' work gloves, safety clothing and safety products financed through Magid Glove & Safety Mfg. C. LLC. The assets subject to the UCC-1 filings are not being sold under the Tyr Tactical Agreement.

7.    In the reasonable business judgment of the Debtors, the price that Tyr has agreed to pay for the Equipment and Plates is fair and reasonable.

8.    The Tyr Tactical Agreement was negotiated in good faith and at arms' length by the Debtors and Tyr. And, all parties were represented by separate counsel. Accordingly, the Debtors submit that the proposed sale is in good faith and that Tyr should be entitled to the protection afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

## D.    The Forbearance Agreement.

1.    DIP Lender is willing to consent to the Tyr Tactical Agreement and forbear

11

from enforcing its rights and remedies against the Borrowers for a limited period of time subject to the terms and conditions stated in the Forbearance Agreement.

2. Some of the material terms of the Forbearance Agreement include, but are not limited to the following:[5]

a. The Borrowers' "acknowledgements" in Section 2.1 regarding, among other things, the validity of DIP Lender's claims and liens, DIP Lender's full performance under the Loan Documents, and the lack of any defenses in favor of Borrowers.

b. The "term" of the DIP Lender's forbearance which is defined in Section 3.2 as "the period of time commencing on the Effective Date and continuing through and including the earlier of: (a) May 5, 2014, if the Bankruptcy Court has not entered an order in form and substance satisfactory to Lender approving this Agreement and the Tyr Tactical Agreement by such date; or (b) May 31, 2014, if the initial payment of $2,300,000 due under the Tyr Tactical Agreement has not been received by AWE by such date with $2,000,000 of said amount simultaneously paid to Lender at the closing to pay down the DIP Facility; or (c) June 30, 2014; or (d) the date that the sum of the balance of the Debtors cash (which at no time shall fall below $700,000) and Eligible Accounts is less than $3,000,000 except that this $3,000,000 minimum shall be reduced to $2,000,000 upon the DIP Facility being paid down by $2,000,000 in accordance with subpart (b) of this section 3.2; or (e) the date of any new Event of Default under the Loan Documents, including any Event of Default under this Agreement."

c. The conditions to DIP Lender's forbearance, which are set forth in Section 3.4:

(1) The execution and delivery of this Agreement by Borrowers and Lender.

(2) The Borrowers shall have implemented sufficient cost cutting measures to get to a breakeven point on cash flow on a going forward basis. In no event shall the Borrower's cash balance at any time fall below $700,000 with such balance determined by the cash balance shown at Alliance Bank ($1,268,415 at close of business 4/22/14).

(3) The Borrowers shall have provided Lender with a revised 15 Week Budget (the "Budget") acceptable in form and substance to Lender;

(4) The Borrowers shall have authorized MCA Financial Group, Ltd. to review and approve in advance all disbursements

---

[5] Borrowers and DIP Lender consider all terms of the Forbearance Agreement to be material.

12

under the Budget and no disbursements shall occur without the prior approval of MCA Financial Group, Ltd;

    (5)    The Debtors shall have filed an appropriate motion on or before April 25, 2014 with the Bankruptcy Court seeking expedited approval of this Agreement and the Tyr Tactical Agreement; and

    (6)    The Borrowers shall have paid Lender a forbearance fee in the amount of $36,500.

    d.    The conditions to DIP Lender's consent to the Tyr Tactical Agreement, which are set forth in Section 3.5:

    (1)    $2,000,000 of the initial $2,300,000 payment due to AWE under the Tyr Tactical Agreement shall be wired to Lender at the closing to pay down the DIP Facility.

    (2)    If the Borrowers have fully complied with the conditions set forth in Sections 3.4(b) – (d) above, the remaining $300,000 of the initial proceeds from the Tyr Tactical Agreement may be used by the Borrowers to pay actual and necessary operating expenses during the Forbearance Period in accordance with the Budget.

    e.    Borrowers' release of DIP Lender contained in Section 5.6.

    3.    Absent the prompt approval of the Forbearance Agreement and the Tyr Tactical Agreement, the DIP Lender likely will immediately begin exercising all of its rights and remedies based on the existing defaults, causing immediate and irreparable harm to the Debtors.

**E.**    **The Consent of the IDR.**

    1.    Under the terms of the Protocol, the Debtors are required to obtain the written consent of the Independent Debtor Representative before seeking Court approval of any Non-Ordinary Course Transaction, which is defined as: "Any use, sale, lease or other disposition of any property or assets, including tangible and intangible assets, outside the ordinary course of business, any financing transaction, any disposition of any executory contract, lease or license agreement and any other matter so designated by the Court, after appropriate motion on notice to all parties in interest."

13

2.     The Tyr Tactical Agreement and the Forbearance Agreement both fall within the definition of Non-Ordinary Course Transactions under the Protocol.

3.     The Independent Debtor Representative reviewed and approved the Tyr Tactical Agreement.

4.     The Independent Debtor reviewed and approved the Forbearance Agreement, and agreed that the remaining $300,000 of the Payoff Amount for the Tyr Note may be used by the Borrowers to pay actual and necessary operating expenses during the Forbearance Period in accordance with the Budget; provided that the Independent Debtor Representative has first reviewed and approved the Budget, and has consented to the expenses to be paid with the funds described in this paragraph.

## III.
## ARGUMENT.

**A.     The Tyr Tactical Agreement And Forbearance Agreement Are In The Best Interests Of The Debtors, Their Estates, And Their Creditors And Should Be Approved.**

Bankruptcy Code section 363(b)(1) provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  A debtor should be authorized to sell assets other than in the ordinary course of business pursuant to Bankruptcy Code section 363(b)(1) if it demonstrates a sound business purpose for doing so.  *See, e.g., Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. . . . Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) (finding that "a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction").  Where a debtor

1    in possession proffers a rational justification, "the bankruptcy court should presume that

2    the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the

3    honest belief that the action taken was in the best interests of the bankruptcy estate." *In*

4    *re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007).

5        Bankruptcy Code section 363 does not require that the Court substitute its own

6    business judgment for that of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 100 B.R.

7    670, 678 (Bankr. S.D.N.Y. 1989); *In re Highway Equip. Co.*, 61 B.R. 58, 60 (Bankr. S.D.

8    Ohio 1986). Rather, the Court should ascertain whether the debtor has articulated a valid

9    business justification for the proposed transaction. *See, e.g., Lewis v. Anderson*, 615 F.2d

10   778, 781 (9th Cir. 1979), *cert. denied*, 449 U.S. 869 (1980). This is consistent with the

11   "broad authority to operate the business of the debtor ... [which] indicates congressional

12   intent to limit court involvement in business decisions by a trustee ... [so that] a court

13   may not interfere with a reasonable business decision made in good faith by a trustee." *In*

14   *re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

15

16       Under the circumstances, the Tyr Tactical Agreement and the Forbearance

17   Agreement are in the best interest of the Debtors, their estates, and their creditors. The

18   Tyr Tactical Agreement provides a mechanism for the Debtors to immediately monetize

19   the Tyr Note and generate $2,300,000 of cash at a discount of only 12.5% off the par

20   value of the note. In addition, the agreed discount is offset by Tyr's agreement to

21   purchase the surplus Equipment and Plates, which will generate an additional $325,000

22   for ArmorWorks and $60,000 for ArmorWorks Canada. The proceeds from the Tyr

23   Tactical Agreement will be used by the Debtors to make a substantial payment on the

24   DIP Loan, and, provided that the Debtors are able to implement sufficient expense

25   reductions to get to a cash-flow neutral position, will provide the Debtors with additional

26   working capital.

27

28

15

The Forbearance Agreement also provides a substantial benefit to the Debtors, their estates, and their creditors. The Debtors continue to work toward proposing and confirming a plan of reorganization in these cases that will pay all administrative expenses and priority claims in full, and provide a substantial recovery to unsecured creditors. The Debtors are negotiating with two potential plan funding sources. The Forbearance Agreement, combined with additional expense reductions by the Debtors, will provide the Debtors with additional time to reach an agreement with an investor, and propose and confirm a plan.

**B.** **The Sale of the Equipment and Plates Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f) Is Permitted Under the Circumstances.**

The Debtors requests that the sale of Equipment and Inventory to Tyr be free and clear of any and all liens, claims, security interests, encumbrances, and interests of any kind, with all such liens, claims, security interests, encumbrances, and interests attaching to the proceeds of the sale of the Equipment and Plates to the same extent, validity and in the same priority as they attached to the Equipment and Plates. Pursuant to Section 363(f), a debtor may sell property free and clear of liens, claims and interests if one of the following five conditions is satisfied:

1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2. such entity consents;

3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4. such interest is in bona fide dispute; or

5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

16

11 U.S.C. § 363(f).

Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the sale of the Debtors' assets "free and clear." *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002). Under section 363(f)(2) of the Bankruptcy Code, a debtor in possession may sell estate property free and clear of liens, claims and interests if the persons or entities asserting them consent. Here, there are only two known entities that may assert liens on the assets to be sold, the DIP Lender and the Maricopa County Treasurer. Pursuant to the Forbearance Agreement, the DIP Lender has consented to the sale. The Debtors believe that the Maricopa County Treasurer will either consent to the proposed sale, or simply not file an objection. To the extent that any other party asserting a lien, claim or interest receives notice of this motion and does not file a timely written objection hereto, such party should be deemed to have consented to the sale of the assets free and clear of its asserted Lien. *See In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990). To the extent that any objection is received to this motion on the basis that the proposed sale of assets cannot be free and clear of liens, claims and interests pursuant to section 363(f), the Debtors reserve the right to argue that any of the other bases for a sale "free and clear" under section 363(f) apply. Consequently and in the absence of any such objection, the proposed sale free and clear of all liens, claims, encumbrances, and interests satisfies section 363 of the Bankruptcy Code.

**C.    The Court Should Find That The Sale Of The Equipment And Plates Is In Good Faith.**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). The purpose of such a finding is to facilitate the operation of section 363(m) of the

Bankruptcy Code, which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith." Section 363(m) provides as follows:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); *see also Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 279 (9th Cir. 1992).

Section 363(m) of the Bankruptcy Code serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. *Abbotts Dairies*, 788 F.2d at 147; *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 54-55 (7th Cir. 1983). As one court recognized, "[i]f purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices." *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). That court noted that, although the law balances the competing interests between lien holders and purchasers of assets of the estate, it weighs such interests "heavily in favor of the bona fide purchaser." Id. at 643.

In this case, the Tyr Tactical Agreement was negotiated in good faith and at arm's length by the Debtors and Tyr. And, the parties were represented by separate counsel. Accordingly, the Debtors submit that the proposed sale is in good faith and that Tyr should be entitled to the protection afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

18

**D.** **The Court Should Waive the Stay Under Bankruptcy Rules 6004(h).**

Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, an order authorizing the sale of property pursuant to section 363 of the Bankruptcy Code is automatically stayed for fourteen days after entry of the order. *See* Fed. R. Bankr. P. 6004(h). The Debtors respectfully submit that a waiver of the stay provision is justified under the circumstances.

Although the outside closing date under the Tyr Tactical Agreement is May 31, 2014, the target closing date is April 30, 2014, and Tyr has indicated the ability and willingness to close as soon as possible. From the Debtors' perspective, time is of the essence. The Debtors are in default under the DIP Facility, and absent the prompt approval and closing of the Tyr Tactical Agreement, which will allow for a substantial and immediate pay down of the DIP Loan, the DIP Lender will immediately begin exercising its rights and remedies causing immediate and irreparable harm to the Debtors. In that regard, the interests of the Debtors and unsecured creditors are aligned. If the DIP Lender begins exercising its remedies, the likelihood of unsecured creditors receiving a material recovery is jeopardized. Moreover, no creditor will be harmed if the Tyr Tactical Agreement and Forbearance Agreement are approved on an expedited basis and the Court waives the stay provisions under Bankruptcy Rule 6004(h). The assets that are being disposed of by the Debtors under the Tyr Tactical Agreement are subject to the first priority, perfected liens of the DIP Lender, and therefore are not available to satisfy the claims of other creditors. Under the circumstances, a waiver of the stay provision is justified.

**WHEREFORE**, the Debtors respectfully request the entry of an Order in the form attached hereto as Exhibit "12" granting the following relief:

A. Approving the Forbearance Agreement;

19

B.      Approving the Tyr Tactical Agreement;

C.      Approving the sale of the Equipment and Plates to Tyr under the Tyr Tactical Agreement free and clear of any and all liens, claims and interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims and interests to attach to the proceeds of the sale with the same validity, priority, and extent as existed prior to the sale;

D.      Finding that Tyr is a good faith purchaser entitled to the protections of Bankruptcy Code section 363(m);

E.      Providing that all of the foregoing relief shall be effective immediately upon entry of the applicable order granting such relief, and that any stay of such order under Bankruptcy Rules 6004(h) is waived and shall not be applicable; and

F.      Granting the Debtors such other and further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 24th day of April, 2014.

**GALLAGHER & KENNEDY, P.A.**


By:*/s/ Todd A. Burgess*
John R. Clemency (Bar No. 009646)
Todd A. Burgess (Bar No. 19013)
Lindsi M. Weber (Bar No. 25820)
Janel M. Glynn (Bar No. 25497)
*Attorneys for Debtors*

20

**VERIFICATION**

The undersigned, WILLIAM J. PERCIBALLI, states as follows under penalty of perjury:

I am a Manager of the ArmorWorks Enterprises, LLC, a debtor and debtor-in-possession in the above captioned chapter 11 cases. I have read the *Debtors' Verified Emergency Motion For Order: (I) Approving First Forbearance Agreement And Second Amendment To Dip Credit Agreement; (II) Approving The Tyr Tactical Agreement And Authorizing Debtors To Accept A Discounted Early Pay-Off Of Tyr Tactical Note; (III) Approving The Sale Of Equipment And Plates Under The Tyr Tactical Agreement Free And Clear Of All Liens, Claims, And Interests; And (IV) Granting Related Relief.* I have personal knowledge of the facts stated in the motion, which facts are true to the best of my knowledge.

_____
William J. Perciballi

21

| | |
|---|---|
| 1 | COPIES of the foregoing served by Email, Facsimile, Hand-Delivery, Overnight Delivery, or U.S. Mail this 24th day of April, 2014 on the parties on the service list attached as Exhibit "13" to the Court's copy of this Motion only. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | /s/ Rachel H. Milazzo |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

22