EXHIBIT "B"

**GALLAGHER & KENNEDY, P.A.**
~~John R. Clemency (Bar No. 009646)~~
~~Todd A. Burgess (Bar No. 19013)~~
~~2575 East Camelback Road~~
**FORRESTER & WORTH, PLLC**
S. Cary Forrester (006342)
3636 N. Central Avenue, Suite 3600
Phoenix, Arizona ~~85016-9225~~8520-1927
Telephone:  (602) ~~530-8000~~271-4250
Facsimile:  (602) ~~530-8500~~271-4300
Email:
~~john.clemency@gknet~~scf@forresterandworth.com
~~todd.burgess@gknet.com~~

Attorneys for ~~Debtors~~
the Official Joint Committee of Unsecured
Creditors

**QUARLES & BRADY LLP**
~~Susan G. Boswell~~
~~Lori Winkelman~~
~~One South Church Avenue, Suite~~
~~1700~~
~~Tucson, Arizona 85701-1621~~
~~Direct Line: (520) 770-8713~~
~~Direct Fax: (520) 770-2222~~
~~Mobile:  (520) 349-6644~~
~~Email:  Susan.Boswell@quarles.com~~
~~___~~
~~Lori.Winkelman@quarles.com~~

~~Attorneys for ArmorWorks, Inc. and~~
~~William J. Perciballi~~

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARMORWORKS ENTERPRISES, LLC, ☐ <br> TECHFIBER, LLC, ☐ | Case No.  2:13-bk-10332-BMW <br> Case No.  2:13-bk-10333-BMW |
| Debtors | (Jointly Administered) |

This Filing Applies to:

X       Both Debtors
☐       Specified Debtor

**~~FIFTH~~SIXTH AMENDED JOINT PLAN OF REORGANIZATION
DATED ~~JUNE 17~~NOVEMBER 5, 2014**

**PROPOSED BY THE OFFICIAL JOINT COMMITTEE OF UNSECURED CREDITORS**

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4265551v4/22420-0006

# INTRODUCTION

This ~~Fifth~~Sixth Amended Joint Plan of Reorganization (as amended, the "**Plan**") is being proposed ~~jointly by~~ by the Official Joint Committee of Unsecured Creditors (the "**Plan Proponent**"). The Plan provides for the reorganization of ArmorWorks Enterprises, LLC ("**ArmorWorks**~~"),~~") and its wholly~~-~~ owned subsidiary TechFiber, LLC ("**TechFiber**~~",~~" and together with ArmorWorks, the "**Debtors**~~"), ArmorWorks, Inc. ("AWI"), and William J. Perciballi ("Perciballi"). The Debtors, AWI, and Perciballi are sometimes referred to herein as the "Plan Proponents"~~".

~~Sent to you in the same envelope as this document is the Fifth Amended Disclosure Statement in Support of Fifth Amended Joint Plan of Reorganization (the "**Disclosure Statement**"), which has been conditionally approved by the Bankruptcy Court and is provided to help you understand the Plan. The Plan provides for the reorganization of the Debtors~~") and the satisfaction of all Allowed Claims against and Allowed Member Equity Interests in the Debtors in accordance with the Bankruptcy Code.

**ARTICLE 1. DEFINITIONS.**

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "**Bankruptcy Code**"), the applicable Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Arizona (the "**Local Bankruptcy Rules**"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.1    <u>Administrative Expense</u> shall mean any cost or expense of administration of the Debtors' chapter 11 cases allowable under Section 503(b) and Section 507(a) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary expenses of preserving the estates of the Debtors, (b) any actual and necessary expense of operating the businesses of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of the business or for the acquisition or lease of property or the rendition of services to the Debtors on or after the Petition Date, (c) all allowances of compensation and reimbursement of expenses awarded or allowed hereunder or under Sections 330(a), 331 or 503 of the Bankruptcy Code, including the allowed fees and expenses of Professional Persons, (d) any fees or charges assessed against the estates of the Debtors under Chapter 123 of Title 28 of the United States Code, and (e) all Claims accorded priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

1.2    <u>Affiliates</u> shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.3    <u>Allowed</u> when used as an adjective preceding the words "Claims" or "Member Equity Interest" shall mean any Claim against or Member Equity Interest in the Debtors, proof of which was filed on or before the Bar Date, or, if no proof of Claim or Member Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed ~~with~~within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed timely and such Claim has been allowed in whole or in part by a Final Order. Subject to rights of Secured Creditors under Bankruptcy Code § 506(b), if any, unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Member Equity Interest"

shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Member Equity Interest from and after the Debtors' Petition Date.

1.4     Allowed Administrative Expense Claim shall mean any Administrative Expense allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code.

1.5     Allowed Priority Non-Tax Claim shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.6     Allowed Priority Tax Claim shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.7     Allowed Unsecured Claim shall mean an Unsecured Claim that is or has become an Allowed Claim.

1.8     Anchor Management shall mean Anchor Management, LLC, a representative of C Squared and one of the Managers of ArmorWorks.

1.9     ArmorWorks shall mean Armorworks Enterprises, LLC, a debtor in this chapter 11 case.

1.91.10     Assets shall mean the aggregate assets of any kind of the Debtors and their Estates, wherever located.

1.101.11     AWI shall mean ArmorWorks, Inc., the holder of a 60% prepetition Member Equity Interest in ArmorWorks.

1.111.12     AWI Parties shall mean AWI, Perciballi, Armory LLC, and/or any and/or all of their affiliates, members, investors, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them except for the Debtors and the C Squared Parties.

1.121.13     Ballot shall mean the form(s) distributed to creditors holding claims

in an impaired Class, or holders of interests in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

~~1.13~~1.14    Bankruptcy Code or Code shall mean the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, *et seq.*), as amended, and as codified in Title 11 of the United States Code.

~~1.14~~1.15    Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Debtors' Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

~~1.15~~1.16    Bankruptcy Rules shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

~~1.16~~1.17    Bar Date shall mean 4:00 p.m., July 30, 2013, the date established by the Bankruptcy Court, pursuant to the Order and Notice for Hearing on Debtors' Disclosure Statement dated June 20, 2013, by which a proof of claim must be filed with the Bankruptcy Court.

~~1.17~~1.18    Business Day shall mean and refer to any day except Saturday, Sunday, and any other days on which commercial banks in Arizona are authorized by law to close.

~~1.18~~1.19    C Squared shall mean C Squared Capital Partners, L.L.C., the holder of a 40% prepetition Member Equity Interest in ArmorWorks.

~~1.19~~1.20    C Squared Parties shall mean Anchor Management, C Squared, and/or any and/or all of their affiliates, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them other than the Debtors and the AWI Parties.

~~1.20    C Squared Settlement shall mean that certain Settlement and Release~~

Agreement, by and between the AWI Parties and the C Squared Parties, dated May 14, 2014.

1.21 C Squared Settlement Amount shall mean the payment in the amount of $1,100,000 to be paid by AWI to C Squared on the Effective Date of the Plan, and as a condition precedent to the occurrence of the Effective Date of the Plan.

1.22 1.21 <u>Cash</u> shall mean legal tender of the United States of America or equivalents thereof, as well as any and all foreign currencies.

1.23 1.22 <u>Case</u> shall mean the Debtors' cases under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court.

1.24 1.23 <u>Claim</u> shall mean a claim against the Debtors as defined in Section 101(5) of the Bankruptcy Code; including any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.25 1.24 <u>Claimant</u> shall mean the holder of a Claim.

1.26 1.25 <u>Class</u> shall mean a class of holders of Claims or Member Equity Interests described in Article 3 of the Plan.

1.27 1.26 <u>Committee</u> shall mean the Official Joint Committee of Unsecured Creditors appointed in the Case pursuant to Bankruptcy Code § 1102.

1.28 1.27 <u>Confirmation</u> shall mean the entry of an order by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.29 1.28 <u>Confirmation Date</u> shall mean the date upon which the clerk of the

Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.301.29     Confirmation Hearing shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.311.30     Confirmation Order shall mean an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.321.31     Contract Schedules means the Schedule of Assumed Contracts and the Schedule of Rejected Contracts.

1.331.32     Corporate Restructuring Transactions means the transactions described in Article 8.2 of the Plan, which shall be approved in the Confirmation Order.

1.341.33     Creditor shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Estates of any kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.351.34     Cure Amount means, with respect to any Executory Contract or Unexpired Lease that is assumed and assigned by the Debtors pursuant to Article 9 hereof, the amount necessary to cure any existing defaults in order to permit the Debtors to assume such contract or lease pursuant to Section 365 of the Bankruptcy Code, which amount shall be the amount indicated for each such contract or lease on the Schedule of Assumed Contracts (as the same may be amended or modified by the DebtorsProponent, with the consent of the Plan ProponentsInvestor, at any time prior to the Effective Date) unless modified by order of the Bankruptcy Court pursuant to an objection by the non-Debtor counterparty in accordance with the procedure set forth in Section 9.2 hereof.

1.361.35     Debt shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

1.371.36     Debtors shall mean together ArmorWorks Enterprises, LLC,

("ArmorWorks"), an Arizona limited liability company and TechFiber, LLC, ("TechFiber"), a Delaware limited liability company.  With respect to any period of time after the Effective Date, the term Debtors, as used herein shall mean and include the Debtors as reorganized under and in accordance with the confirmed Plan.

1.38 1.37    DIP Facility or DIP Facilities shall mean the debtor-in-possession financing provided by Lancelot Armor, LLC pursuant to the Lancelot DIP Order and any other debtor-in-possession financing approved by the Bankruptcy Court in the Bankruptcy Case prior to the Effective Date.

1.39 1.38    DIP Lender(s) shall mean Lancelot Armor, LLC and any other entity that provides debtor-in-possession financing under a DIP Facility approved by the Bankruptcy Court in the Bankruptcy Case.

1.40 1.39    DIP Obligations shall mean all amounts due and owing to DIP Lender(s) under DIP Facilities.

1.41 1.40    DIP Order(s) shall refer to and mean the Lancelot DIP Order and any other order of the Bankruptcy Court approving a DIP Facility on an interim or final basis in the Bankruptcy Case.

1.42 1.41    Disallowed Claim shall mean a Claim or portion thereof that: (i) has been disallowed by a Final Order; (ii) is identified in the Debtors' Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the Bar Date; or (iii) is not identified in the Debtors' schedules and as to which no proof of claim has been filed or deemed filed by the Bar Date.

1.43 1.42    Disclosure Statement shall mean and refer to the Fifth Sixth Amended Disclosure Statement in Support of Fifth Sixth Amended Joint Plan of Reorganization filed by the Plan Proponents Proponent as required pursuant to Section 1125 of the Bankruptcy Code.

1.44 1.43    Disputed Claim shall mean any Claim that is not an Allowed Claim

or a Disallowed Claim and that has not been barred or otherwise disallowed or paid or otherwise satisfied. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtors and the holder thereof agree otherwise; provided, however, nothing in this definition is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim, including a Claim scheduled by the Debtors, that is the subject of a pending application, motion, complaint, objection or any other legal proceeding commenced or filed by the Debtors seeking to disallow, limit, subordinate or estimate such Claim shall be deemed to constitute a Disputed Claim.

~~1.45~~1.44   <u>Effective Date</u> means a day as determined by the Plan ~~Proponents~~Proponent that is a Business Day no earlier than the date on which all conditions to the effective date in Section 15.2 of the Plan have been met or waived.

~~1.46~~1.45   <u>Estate</u> shall mean the estate of the applicable Debtor created in accordance with Section 541 of the Bankruptcy Code.

~~1.47~~1.46   <u>Executory Contract and Unexpired Lease</u> or <u>Executory Contract</u> or <u>Unexpired Lease</u> shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

~~1.48~~1.47   <u>Final Order</u> shall mean any order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed

timely has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

1.491.48    Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Member Equity Interests," shall mean that the Plan alters the legal, equitable, or contractual rights of the member(s) of that class.

1.501.49    Independent Debtor Representative shall mean Grant Lyon, appointed by the Bankruptcy Court pursuant to the Protocol Order, and any successor to Mr. Lyon in his role as Independent Debtor Representative.

1.511.50    Investor shall mean Diversis Capital, LLC or its designated assignee.

1.521.51    IRS shall mean the Internal Revenue Service, Department of the Treasury of the United States of America.

1.531.52    Lancelot DIP Order shall mean the *Stipulated Final Order (A) Approving Senior Secured Postpetition Financing, (B) Granting Senior Liens And (C) Providing Superpriority Administrative Expense Status* entered by the Bankruptcy Court on July 19, 2013, as amended.

1.541.53    Lien shall mean any lien or charge against or interest, including any security interest, in property to secure payment of a debt or performance of an obligation but only to the extent such lien, charge, or interest is valid, binding, enforceable and perfected and not subject to avoidance, defense, recharacterization or subordination.

1.551.54    Manager shall mean, as the context requires, either Anchor Management or Perciballi.

1.561.55    Managers shall mean Anchor Management and Perciballi.

1.571.56    Member shall mean, as the context requires, either C Squared or AWI with respect to ArmorWorks, and shall mean ArmorWorks with respect to TechFiber.

1.581.57    Members shall mean C Squared and AWI.

1.591.58    Member Equity Interest shall mean the respective ownership interests of the Members in ArmorWorks and TechFiber.

1.601.59    Perciballi shall mean William J. Perciballi, one of the Managers of ArmorWorks.

1.611.60    Petition Date shall mean June 17, 2013.

1.621.61    Plan shall mean this plan of reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.631.62    Priority Claims shall mean "Priority Tax Claims" and "Priority Non-Tax Claims" in the aggregate, and shall mean any claim to the extent entitled to priority in payment under Sections 507(a)(3), (4), (5), (6), (7) or (8) of the Bankruptcy Code.

1.641.63    Priority Non-Tax Claims shall mean Priority Claims other than Priority Claims entitled to priority treatment as a tax under Section 507(a)(8) of the Bankruptcy Code.

1.651.64    Priority Tax Creditor shall mean a Creditor holding a Priority Tax Claim.

1.661.65    Priority Tax Claim shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.671.66    Professional Persons shall mean any professional employed in the Case pursuant to Section 327, Section 328 or Section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

1.681.67     Professional Fee Claim shall mean any claim by a Professional Person as provided for in Sections 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

1.691.68     Pro Rata shall mean, with respect to an amount of Cash to be paid or distributed to a Creditor with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such Person in the indicated Class to the aggregate dollar amount of all Claims in the indicated Class (including, in each such calculation, the full amount of Disputed Claims in the Class which have been asserted or are otherwise pending and which have not yet been Allowed or otherwise disposed of).

1.701.69     Protocol shall mean the *Governance Protocol for Sale Transaction and Non-Ordinary Course Transactions* attached as Exhibit "A" to, and approved by, the Protocol Order and any amendments or supplements thereto approved by the Bankruptcy Court.

1.711.70     Protocol Order means and refers to the *Order Granting Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions, and Retention Grant Lyon as Independent Debtor Representative* entered on October 7, 2013 [Docket No. 291], as amended by the *Stipulated Order Amending And Clarifying Governance Protocol For Sale And Non-Ordinary Course Transactions, And Retention Of Grant Lyon As Independent Debtor Representative* entered on December 19, 2013 [Docket 452], and as further amended, modified, restated or supplemented from time to time.

1.721.71     Reorganized Debtors shall mean the Debtors as reorganized under and in accordance with the confirmed Plan on and after the Effective Date.

1.731.72     Representative shall mean, with respect to any entity, any officer, director, affiliate, member, subsidiary, attorney, advisor, investment banker, financial

advisor, accountant or other professional of such entity, in each case in such capacity, together with each of their successors and assigns.

1.74 1.73 **Schedule of Assumed Contracts** means the schedule included as an exhibit to the Plan listing certain Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Reorganized Debtors as of the Effective Date.

1.75 1.74 **Schedule of Rejected Contracts** means the schedule included as an exhibit to the Plan listing certain Executory Contracts and Unexpired Leases to be rejected by the Debtors as of the Effective Date.

1.76 1.75 **Secured Claim** shall mean a Claim which is secured by a valid, perfected and unavoidable Lien against a Debtor's Assets as of the Petition Date, or which expressly attached to the proceeds of assets sold pursuant to an order of the Bankruptcy Court but only to the extent of the value of such Debtor's interest in the property. In accordance with the Section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtor to the extent such holder's interest in the property is less than the amount of such Claim. To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is an Unsecured Claim, unless otherwise provided for by order of the Bankruptcy Court.

1.77 1.76 **Subordinated Claim** shall mean all claims described in Section 510 of the Bankruptcy Code or claims which are otherwise subordinated pursuant to an Order of the Bankruptcy Court.

1.78 1.77 **Subsidiary** shall mean each of the following entities and any other entity owned in whole or in part by ArmorWorks: Applied Heat Technologies, LLC; ArmorWorks Enterprises, Canada; ArmourWorks International, Limited; Mandall Barrier Works, LLC; Protective Ceramics, LLC; ShockRide, LLC; and TechFiber, LLC.

1.78    TechFiber shall mean TechFiber, LLC, a Delaware limited liability company.

1.79    Unsecured Claim shall mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen before the Petition Date for the Debtors, and which is not (i) a DIP Obligation, (ii) a Secured Claim, (iii) an Administrative Expense, (iv) a Priority Claim, or (v) a fee payable pursuant to section 1930 of Title 28 of the United States Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

1.80    Vendors shall mean those persons or entities that provided goods or services to the Debtors in the ordinary course of business in exchange for a contemporaneous payment, or pursuant to standard terms for payment for a term not exceeding forty-five (45) days.

1.81    Voting Class shall mean a Class of Claims under the Plan which is impaired and entitled to vote to accept or reject the Plan.

## ARTICLE 2. INTERPRETATION, RULES OF CONSTRUCTION, AND OTHER TERMS.

2.1    Any term used in this Plan that is not defined herein, whether in Article 1 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction used in the Bankruptcy Code.

2.2    The words "herein," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article or clause contained in this Plan.

2.3    Unless specified otherwise in a particular reference, a reference in this Plan to an article is a reference to that article of this Plan.

2.4     Unless otherwise provided for, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

2.5     For purposes of this Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.

2.6     In addition to the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Plan.

2.7     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.8     Any exhibits or schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Bankruptcy Court.

2.9     Where Claims are divided into subclasses in this Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

## ARTICLE 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     <u>General Classification Provisions.</u>  For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and Member Equity Interests shall be classified as set forth in this Article 3 of the Plan.  All Claims and Member Equity Interests are classified under the Plan as hereafter stated in this Article 3; provided, however, that a Claim or Member Equity Interest will be deemed classified in a particular Class only to the extent that the Claim or Member Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent

that any remainder of the Claim or Member Equity Interest qualifies within the description of such different Class. As of the Confirmation Hearing, any Class of Claims or Member Equity Interest that does not contain any Creditor's Claim or an Member Equity Interest will be deemed deleted automatically from the Plan; and any Class of Claims or Member Equity Interest that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) or Member Equity Interest will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan. A Claim or Member Equity Interest is in a particular Class only to the extent the Claim or Member Equity Interest is an Allowed Claim or Allowed Member Equity Interest as defined herein.

3.2     <u>Classification of Claims and Equity Interests</u>. The Plan classifies Claims and Member Equity Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Member Equity Interests are impaired or unimpaired. The Plan provides the treatment each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan. The Allowed Claims against the Debtors' Estates are divided into the following classes:

3.2.1     <u>Class 1 (Priority Non-Tax Claims)</u>. Class 1 consists of any Priority Non-Tax Claims against the Debtors existing as of the Confirmation Date.

3.2.2     <u>Class 2 (Secured Tax Claims)</u>. Class 2 consists of any Secured Tax Claims against the Debtors existing as of the Confirmation Date.

3.2.3     <u>Class 3 (Secured Claims).</u> Class 3 consists of any Secured Claims against any of the Debtors, except Secured Tax Claims.

a.     Class 3(a) (Secured Claim of US Bank)

b.    Class 3(b) (Other Secured Claims)

    3.2.4    <u>Class 4 (ArmorWorks General Unsecured Claims)</u>.  Class 4 consists of all General Unsecured Claims against ArmorWorks.

a.    Class 4(a) (Cash Out Option)

b.    Class 4(b) (Full Payment Option)

    3.2.5    <u>Class 5 (TechFiber General Unsecured Claims)</u>.  Class 5 consists of all General Unsecured Claims against TechFiber.

a.    Class 5(a) (Cash Out Option)

b.    Class 5(b) (Full Payment Option)

    3.2.6    <u>Class 6 (Member Equity Interests In ArmorWorks)</u>.  Class 6 consists of the Member Equity Interests in ArmorWorks.

    3.2.7    <u>Class 7 (ArmorWorks Member Equity Interest in TechFiber)</u>. Class 7 consists of the 100% Member Equity Interest of ArmorWorks in TechFiber.

    3.2.8    <u>Class 8 (Subsidiary General Unsecured Claims)</u>.  Class 8 consists of all General Unsecured Claims asserted by any Subsidiary against the Debtors.

## ARTICLE 4. IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES

    4.1    <u>Unimpaired Classes of Claims and Interests</u>.  The following classes are not impaired under the Plan and are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code:

    4.1.1    Class 1 (Priority Non-Tax Claims); and

    4.1.2    Class 7 (ArmorWorks Member Equity Interest in TechFiber).

    4.2    <u>Impaired Classes of Claims</u>.

    4.2.1    The following classes are impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and the Debtors will seek acceptance of the Plan from these classes:

Case 2:13-bk-10332-BMW   Doc 771-1   Filed 11/03/14   Entered 11/03/14 10:09:12

(i)   Class 2 (Secured Tax Claims);

(ii)   Class 3 (Secured Claims);

    a.   Class 3(a) (Secured Claim of US Bank)

    b.   Class 3(b) (Other Secured Claims)

(iii)   Class 4 (ArmorWorks General Unsecured Claims);

    a.   Class 4(a) (Cash Out Option);

    b.   Class 4(b) (Full Payment Option);

(iv)   Class 5 (TechFiber General Unsecured Claims);

    a.   Class 5(a) (Cash Out Option);

    b.   Class 5(b) (Full Payment Option);

4.2.2   Class 8 (Subsidiary General Unsecured Claims) will be deemed settled and compromised in exchange for the benefits the Subsidiaries will realize as a result of the reorganization of ArmorWorks pursuant to the terms of the Plan, and accordingly holders of Class 8 Claims will be deemed to accept the Plan.

4.3   Impaired Classes of Interests.

4.3.1   Class 6 (Member Equity Interests In ArmorWorks) are impaired under the Plan and deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

**ARTICLE 5. PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN**

5.1   DIP Obligations.   Unless paid sooner, or a different treatment is consented to in writing by a particular DIP Lender, the DIP Obligations shall be paid in full and in cash on the Effective Date before the payment of any other Claims against the Debtors, other than Vendor Administrative Claims.  Any dispute regarding the amount of any DIP Obligations shall be resolved by the Bankruptcy Court on an expedited basis prior to the occurrence of the Effective Date.  Notwithstanding anything to the contrary contained in

the Plan or the Confirmation Order, the terms of the DIP Orders and all liens granted to DIP Lenders shall survive and shall ~~remaining~~remain binding and enforceable until the DIP Obligations have been fully paid. Upon payment in full of the DIP Obligations, all liens granted to the DIP Lenders shall be deemed fully and forever released and discharged.

5.2    Administrative Expense Claims. Every Creditor holding an Allowed Administrative Expense Claim against the Debtors will be paid, in full satisfaction of their Allowed Claim, after the payment in full of the DIP Obligations: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; (c) as otherwise agreed in writing by the Creditor holding the Allowed Administrative Expense Claim and the Debtors; or (d) as otherwise ordered by the Bankruptcy Court. Allowed Administrative Expense Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Allowed Administrative Expense Claims.

5.3    Vendor Administrative Claims. The post-petition expenses owed to Vendors will be paid as they are incurred in the ordinary course of business. Any amounts outstanding as of the Effective Date will be paid in full on the later of the Effective Date, or in the ordinary course of the Debtors' business. Vendor Administrative Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Vendor Administrative Claims.

5.4    U.S. Trustee Fees. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid within ten (10) Business Days after the Effective Date, or as due in the normal course of billing and payment. The Reorganized Debtors shall be responsible

for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The Reorganized Debtors shall file with the Bankruptcy Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the cases remain open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee, and shall pay such quarterly fees as become due for each quarter post-confirmation that the cases remain open. No motion or application is required to fix fees payable to the Clerks' Office or the Office of the United States Trustee, as those fees are determined by statute.

5.5     <u>Administrative Bar Date</u>. Requests for payment of Administrative Expenses, other than the DIP Obligations, Vendor Administrative Claims and Professional Fee Claims, must be filed and served pursuant to any procedures set forth in the Confirmation Order or notice of entry of the Confirmation Order, no later than thirty (30) days after the Effective Date.

5.6     <u>Professional Fee Claims</u>. The Bankruptcy Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Effective Date. Each Professional Person requesting compensation or reimbursement of expenses in the Cases pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than thirty (30) days after the Effective Date. Nothing herein shall prohibit each Professional Person from requesting interim compensation during the course of the Case pending Confirmation of this Plan. All fees, costs and disbursements of Professional Persons not heretofore paid through the Effective Date of the Plan, shall be paid fully and in Cash on the later of the Effective Date or within ten (10) Business Days after the entry of a Final Order allowing the Claim.

5.7     <u>Priority Tax Claims.</u>  Priority Tax Claims are certain pre-Petition Date unsecured income, employment and other taxes described by Section 507(a)(8) of the

Bankruptcy Code. To the extent Allowed Priority Tax Claims exist on the Effective Date, holders of Allowed Priority Tax Claims will be paid: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; or (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Priority Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate in accordance with section 511 of the Bankruptcy Code. No amounts attributable to penalties imposed or sought to be imposed by holders of Priority Tax Claims will be paid. Priority Tax Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Priority Tax Claims.

5.8 <u>Class 1 (Priority Non-Tax Claims)</u>. To the extent Allowed Priority Non-Tax Claims exist on the Effective Date, holders of Allowed Priority Non-Tax Claims will be paid: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; or (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 1 Claims are unimpaired under the Plan, and the holders of Class 1 Claims are not entitled to vote on the Plan.

5.9 <u>Class 7 (ArmorWorks' Member Equity Interest in TechFiber)</u>. The 100% Member Equity Interest of ArmorWorks in TechFiber shall be an Allowed interest under the Plan. ArmorWorks shall retain its Member Equity Interest in TechFiber, as reorganized under the Plan. Class 7 Interests are unimpaired under the Plan, and holders of Class 7 Interests are not entitled to vote on the Plan.

## ARTICLE 6. PROVISIONS FOR TREATMENT OF IMPAIRED CLAIMS AND INTERESTS UNDER THE PLAN

6.1    <u>Class 2 (Secured Tax Claims)</u>.    Class 2 Claims consists of all Secured Tax Claims against the Debtors for 2012 and 2013 real or personal property taxes.  Holders of Allowed Class 2 Claims will retain their liens on the Property that serves as security for repayment of Allowed Class 2 Claims.  In the discretion of the Reorganized Debtors, Allowed Class 2 claims, including post-petition interest in accordance with 11 U.S.C. § 511 and A.R.S. § 42-18053, will be paid (a) in full within ten (10) Business Days after the later of the Effective Date or the date the Claim is Allowed, or (b) in full within five (5) years of the Petition Date through regular equal monthly payments of principal and interest.  Class 2 Claims are impaired and holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

6.2    <u>Class 3 (Secured Claims)</u>.    Each Claimant holding an Allowed Class 3 Secured Claim will be placed in a separate sub-class of Class 3 for the purposes of voting on the Plan and the treatment of their respective Claims under the Plan.  Other than the Class 3(a) Secured Claim of US Bank, the Debtors do not believe there are any Class 3 Secured Claims against the Debtors existing as of the Petition Date.

6.2.1    <u>Class 3(a) (Secured Claim of US Bank)</u>.    US Bank asserts a Secured Claim in the amount of $1,600.  Holders of Allowed Class 3(a) Secured Claims will retain their prepetition liens in their collateral.  Any Allowed Class 3(a) Secured Claim of US Bank will be paid in full within one hundred and eighty (180) days after the later of the Effective Date or the date the Claim is Allowed, with interest from and after the Effective Date at the rate of 3.25% simple interest per annum.  No default interest or other penalties will be paid to holders of Allowed Class 3(a) Secured Claims.  Class 3(a) Secured Claims are impaired, and the holders of Class 3(a) Claims are entitled to vote to accept or reject the Plan.

6.2.2 <u>Class 3(b) (Other Secured Claims).</u> Holders of Allowed Class 3(b) Secured Claims, if any, will retain their prepetition liens in their collateral. In the discretion of the Reorganized Debtors, Allowed Class 3(b) Secured Claims shall be satisfied as follows: (a) through the abandonment or transfer of the collateral to the secured creditor within ten (10) Business Days after the later of the Effective Date or the allowance of the Claim, in which case the Claimant shall have the right to assert a General Unsecured Claim paid under Class 4 or 5, as applicable, for any deficiency to the extent allowable by applicable non-bankruptcy law; or (b) any prepetition default under the applicable contract and security documents will be cured on the Effective Date and regular payments will be made to the holder of the Allowed Class 3(b) Secured Claim after the Effective Date in accordance with the applicable contract; or (c) the Allowed Class 3(b) Secured Claim will be paid in full within ten (10) Business Days after the later of the Effective Date or the date the Claim is Allowed, with interest from and after the Effective Date at the greater of the non-default contract rate of interest or 3.25% simple interest per annum. No default interest or other penalties will be paid to holders of Allowed Class 3(b) Secured Claims. Class 3(b) Secured Claims are impaired, and the holders of Class 3(b) Claims are entitled to vote to accept or reject the Plan.

6.3 <u>Class 4 (ArmorWorks Unsecured Claims).</u> Class 4 consists of all Unsecured Claims against ArmorWorks. Holders of Allowed Class 4 Claims may elect on the Ballot to be placed and treated in sub-class Class 4(a) or will, absent the election, be automatically placed in subclass Class 4(b) below. The Holder of an Allowed Class 4 Claim will receive the following in payment for such Allowed Class 4 Claim, in accordance with their election:

6.3.1    Class 4(a) (Cash Out Option):  In full and final satisfaction of its Allowed Class 4(a) Claim, the holder who elects to be included in Class 4(a) will be paid a lump sum cash payment equal to ~~30~~35% of its Allowed Class 4(a) Claim on the later of (i) ten (10) Business Days after the Effective Date, if the Claim is then an Allowed Claim; or (ii) ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 4(a) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan; or

6.3.2    Class 4(b) (Full Payment Option):  Allowed Class 4(b) Claims will accrue interest from and after the Effective Date at the rate of 2% per annum simple interest.  In full and final satisfaction of its Allowed Class 4(b) Claim, the holder will be paid the full amount of its Allowed Class 4(b) Claim in five ~~annual partial distributions~~installments beginning ~~on the first anniversary of~~ninety (90) days after the Effective Date, as follows: on the ~~first anniversary of~~day which is ninety (90) days after the Effective Date, 5% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; on the second anniversary of the Effective Date, 10% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; on the third anniversary of the Effective Date, 20% of the Allowed  Class 4(b) Claim, plus accrued interest, shall be paid; on the fourth anniversary of the Effective Date, 30% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; and on the fifth  anniversary of the Effective Date, 35% of Allowed Class 4(b) Claim, plus accrued interest, shall be paid.  In each case, the distribution shall be made on the later of the distribution date or the date that is ten (10) Business Days after the entry of a Final Order allowing the Claim.  Class 4(b) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.4     Class 5 (TechFiber Unsecured Claims).   Class 5 consists of all Unsecured Claims against TechFiber.  Holders of Allowed Class 5 Claims may elect on the Ballot to be placed and treated in sub-class Class 5(a) or will, absent the election, be automatically placed in subclass Class 5(b) below.  Each of sub-class Class 5(a) and Class 5(b) will vote to accept or reject the Plan and the votes in each sub-class to either accept or reject the Plan will be determined pursuant to Bankruptcy Code § 1126(c).  The Holder of an Allowed Class 5 Claim will receive the following in payment for such Allowed Class 5 Claim:

6.4.1     Class 5(a) (Cash Out Option):   In full and final satisfaction of its Allowed Class 5(a) Claim, the holder who elects to be included in Class 5(a) will be paid a lump sum cash payment equal to 3035% of its Allowed Class 5(a) Claim on the later of (i) ten (10) Business Days after the Effective Date, if the Claim is then an Allowed Claim; or (ii) ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 5(a) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.4.2     Class 5(b) (Full Payment Option):   Allowed Class 5(b) Claims will accrue interest from and after the Effective Date at the rate of 2% per annum simple interest.  In full and final satisfaction of its Allowed Class 5(b) Claim, the holder will be paid the full amount of its Allowed Class 5(b) Claim in five annual partial distributionsinstallments beginning on the first anniversary ofninety (90) days after the Effective Date, as follows: on the first anniversary ofday which is ninety (90) days after the Effective Date, 5% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; on the second anniversary of the Effective Date, 10% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; on the third anniversary of the Effective Date, 20% of the Allowed Class 5(b)

Claim, plus accrued interest, shall be paid; on the fourth anniversary of the Effective Date, 30% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; and on the fifth anniversary of the Effective Date, 35% of Allowed Class 5(b) Claim, plus accrued interest, shall be paid. In each case, the distribution shall be made on the later of the distribution date or the date that is ten (10) Business Days after the entry of a Final Order allowing the Claim. Class 5(b) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.5 <u>Class 6 (Member Equity Interests in ArmorWorks).</u> The Member Equity Interests in ArmorWorks shall be extinguished under the Plan on the Effective Date. Class 6 Member Equity Interests are impaired under the Plan, and holders of Class 6 Interests are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

6.6 <u>Class 8 (Subsidiary General Unsecured Claims).</u> Class 8 consists of all General Unsecured Claims asserted by any Subsidiary against the Debtors. All Class 8 Claims shall be deemed settled and compromised on the Effective Date on account of the benefits the Subsidiaries will realize as a result of the reorganization of ArmorWorks pursuant to the terms of the Plan. Class 8 Subsidiary General Unsecured Claims are impaired under the Plan, but will be deemed to accept the Plan.

## ARTICLE 7. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

7.1 <u>Impaired Classes to Vote.</u> Each impaired class of Creditors with Claims against the Debtors who is entitled to vote on the Plan shall be forwarded a ballot and shall be entitled to vote to accept or reject the Plan.

7.2 <u>Acceptance by a Class of Creditors.</u> A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the aggregate

dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims of such class that have voted to accept or reject the Plan.

7.3 <u>Cram-down</u>. In the event that any impaired Class of Creditors with Claims against the Debtors' Estates shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the ~~Debtors and the Committee reserve~~Plan Proponent reserves the right to request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Section 1129(b)(1) of the Bankruptcy Code.

7.4 <u>Blank Ballots</u>. Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

## ARTICLE 8. MEANS OF EFFECTUATING THE PLAN

8.1 <u>In General.</u> The Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code and the Debtors, Proponent, and the Reorganized Debtors, as applicable, are authorized and instructed to take any and all actions that may be necessary or appropriate to implement the terms of the Plan.

8.2 <u>Issuance of Equity Interests in Reorganized ArmorWorks and Related Transactions</u>. On the Effective Date, in exchange for 100% of the equity interests in reorganized AWE ~~Investor shall: (a) contribute $3,000,000 in cash to AWE for payment of claims and administrative expenses, (b) cause Perciballi and AWI to contribute to Reorganized AWE all intellectual property used in the businesses of the Debtors that is owned or controlled by Perciballi or AWI, and (c) fund the payment of certain obligations of AWI ((a) and (b) together, the "Plan Contributions"). Also on the Effective Date, (d) Investor shall contribute the equity interests in Reorganized AWE to AWI, along with certain cash, and will receive 66.9% of the common equity and 100% of the class A preferred equity in AWI; (e) Perciballi shall receive 23.1% of the common equity in AWI; and (f) 10% of the common equity in AWI shall be reserved for a~~

management bonus pool. ((a) through (f), collectively, the "Corporate Restructuring Transactions"). Concurrent with the closing of the Corporate Restructuring Transactions, Perciballi will receive additional funds from Investor as more particularly described in Exhibit "G" attached to the Disclosure Statement. , Investor shall contribute $4,100,000 in cash to AWE for payment of claims and administrative expenses (the "Plan Contribution").

8.3    <u>Additional Funding.</u>   The Cash Out Option for the Class 4(a) (ArmorWorks Unsecured Claims) and Class 5(a) (TechFiber Unsecured Claims) will be funded in part from the cash payment from the AWE Investor and in part from a cash contribution from Perciballi of up to $500,000 in order to pay a maximum of 30% of the Allowed amount of the electing general unsecured creditor's claim. Two-thirds (2/3) of the amount of the Cash Out Option for Classes 4(a) and 5(a) will be funded by the AWE Investor and one-third of the amount of the Cash Out Option for Classes 4(a) and 5(a) will be funded by Perciballi up to a maximum contribution from Perciballi of $500,000. from the Plan Contribution. The Plan will also be funded from ongoing business operations and from the proceeds of the sale of assets deemed to be no longer necessary to the ongoing operations of the business. The Debtors also may obtain a working capital line of credit to replace the DIP Facility.

8.4    <u>Revesting of Debtors' Assets in the Reorganized Debtors.</u>

8.4.1    Except as otherwise expressly provided in this Plan, pursuant to Sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all of the Debtors' assets shall automatically be retained and revested in the relevant Reorganized Debtor or its respective successor, free and clear of all Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests of creditors and equity security holders on the Effective Date, with all such Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests

being extinguished except as otherwise provided in this Plan.

8.4.2    As of the Effective Date, each Reorganized Debtor may acquire and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may pay the charges it incurs for professional fees, disbursements, expenses or related support services after the Effective Date without any application to the Bankruptcy Court.

8.5    Corporate Action.  Pursuant to section 1142 of the Bankruptcy Code and any applicable provisions of the business corporation law of any applicable state, the entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors to take or cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of this Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including without limitation:  (a) the cancellation of all of the issued and outstanding Member Equity Interests in ArmorWorks; (b) the issuance of the new equity of Reorganized ArmorWorks to Investor; (c) the election of directors, managers and officers in accordance with this Plan; (d) the adoption of the Reorganized Debtors' organizational documents, which shall supersede the prior certificates of incorporation, articles of organization, limited liability company agreements, operating agreements, by-laws or other organizational documents, as appropriate, of each of the Reorganized Debtors; and (e) all actions as are necessary or appropriate to close or dismiss the Case. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of

further action by the members, stockholders, directors or managers of the Debtors, the Reorganized Debtors or any of their affiliates. On the Effective Date, the appropriate officers, directors, members and managers of the Debtors and the Reorganized Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by this Plan in the name of and on behalf of the Debtors and/or the Reorganized Debtors, as applicable.

8.6     Organizational Documents. Any prepetition written or oral operating agreement applicable to ArmorWorks shall be deemed terminated and of no further force or effect as of the Effective Date, and, after contribution of the membership interests in AWE to AWI by the Investor pursuant to the terms of the Plan, AWI shall be entitled to file amended articles of organization for Reorganized ArmorWorks reflecting AWI's its 100% member interest in Reorganized ArmorWorks.

8.7     Post Confirmation Management of Debtors.

        8.7.1   Perciballi.    PerciballiExisting Management. Existing management will continue to direct and manage all of the day-to-day operations of the Debtors post-confirmation until the Effective Date.

        8.7.2   Independent Debtor Representative. Until the Effective Date, the Independent Debtor Representative shall have and shall continue to exercise all of the powers and duties described in the Protocol and Protocol Order with respect to Non-Ordinary Course Transactions., as defined in the Protocol Order ("**NOCTs**") including, without limitation, veto power over any NOCTs. On the Effective Date, the Independent Debtor Representative shall be discharged and released from any and all duties, obligations and responsibilities under the Protocol and the Protocol Order.

8.8     Post Effective Date Management of the Debtors. On the Effective Date, the existing Managers shall be deemed discharged and released from any and all duties,

~~obligations~~ and responsibilities, and the management, control and operation of each Reorganized Debtors shall become the general responsibility of the respective members, managers, board members and/or officers elected or appointed in accordance with applicable non-bankruptcy law. Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial ~~members and~~ managers of each Reorganized Debtor shall be ~~comprised~~Kevin Ma and Ron Nayot, officers of the ~~individuals set forth on Schedule 8.8 to the Plan~~Investor. Each such member and manager will serve from the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the certificate of incorporation and bylaws (or comparable constituent documents) of the respective Reorganized Debtor and state law.

8.9   <u>Release of Liens.</u>  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document to be assumed, entered into or delivered in connection with the Plan, on the Effective Date and consistent with the treatment provided for Claims and Interests in Article 5 and 6, all liens on, in or against the Reorganized Debtors' Assets shall be fully released and discharged, and all of the right, title and interest of any holder of Liens, including any rights to any collateral thereunder, shall revert to the Reorganized Debtors and their successors and assigns, as applicable.  As of the Effective Date, the Reorganized Debtors shall be authorized but not required to execute and file Form UCC-3 Termination Statements or such other forms as may be necessary or appropriate to implement the provisions of this Section 8.9.

8.10   <u>No Successor Liability.</u>  The Reorganized Debtors ~~and AWI~~ are not, and shall not be, successors to the Debtors by reason of any theory of law or equity, and ~~none~~ shall have ~~any~~no successor or transferee liability of any kind or character, except that the Reorganized Debtors shall assume the obligations specified in the Plan and the Confirmation Order.

8.11    Effectuating Documents; Further Transactions.   The Reorganized Debtors or their designees, as applicable, shall be authorized to (a) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (b) certify or attest to any of the foregoing actions.

8.12    Mutual Effect of Injunctions and Releases Relating to the C Squared Settlement.

8.12.1    [DELETED].

8.12.2    The AWI Parties unconditionally and forever release and discharge the Debtors and the Reorganized Debtors, and/or any and/or all of their affiliates, members, investors, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them, in each case, from all disputes, controversies, suits, actions, causes of action, Claims, other claims, assessments, demands, expenses, debts, sums of money, damages, judgments, liabilities, liens and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown, that the AWI Parties ever had, now have or hereafter can, shall or may have from the beginning of time, by reason of any matter, cause or thing whatsoever, relating to the AWI Parties' investment in and relationship with the Debtors from the beginning of time until the Effective Date; provided, however, that such release and discharge shall not be construed to prevent or preclude the AWI Parties from enforcing the rights and remedies afforded to them under the terms of the Plan or the C Squared Settlement.

8.12.3    The Debtors and the Reorganized Debtors unconditionally and forever release and discharge each of the C Squared Parties and the AWI

~~Parties, and/or any and/or all of their affiliates, members, investors, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them, in each case, from all disputes, controversies, suits, actions, causes of action, Claims, other claims, assessments, demands, expenses, debts, sums of money, damages, judgments, liabilities, liens and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown, that the Debtors or Reorganized Debtors ever had, now have or hereafter can, shall or may have from the beginning of time, by reason of any matter, cause or thing whatsoever, relating to the such parties' investment in and relationship with the Debtors from the beginning of time until the Effective Date.~~

~~8.12.~~48.12 . Notwithstanding the injunctions and releases in this Plan and the Confirmation Order, nothing contained in this Plan, the Confirmation Order or any other document filed in these bankruptcy proceedings shall limit or release the Debtors'~~,~~ or the Reorganized Debtors'~~, the AWI Parties' or the C Squared Parties'~~ obligations under this Plan, or the Confirmation Order ~~or the C Squared Settlement~~, as applicable.

## ARTICLE 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     <u>Treatment of Executory Contracts and Unexpired Leases.</u>

9.1.1     The Plan contemplates and hereby provides for the assumption and/or assignment, as of the Effective Date, pursuant to Section 365 of the Bankruptcy Code, of any and all Executory Contracts and Unexpired Leases of the Debtors which are in force on the Effective Date, except (i) those Executory Contracts and Unexpired Leases which are specifically rejected pursuant to an order of the Bankruptcy Court prior to the Effective Date, and (ii) those Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Contracts

attached hereto (or on any amendment to the Schedule of Rejected Contracts filed on or before the Confirmation Date). The Debtors will not reject the License Agreement between ArmorWorks and Perciballi for the licensing of certain intellectual property held or controlled by Perciballi. ~~Pursuant to the transaction between the Investor and Perciballi and AWI, the intellectual property which is subject to the license will be contributed by Perciballi to ArmorWorks. Perciballi will not assert any claim against the Debtors for rejection of the license agreement. The Debtors, with the consent of the Plan Proponents,~~The Proponent shall have the right, at any time prior to the Confirmation Date, to amend the Contract Schedules to provide for the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to this Section 9.1.1~~.~~, and thereafter as may be provided in the Confirmation Order.

9.1.2    The Confirmation Order (except as otherwise provided therein) shall constitute an order of the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, effective as of the Effective Date, approving the assumptions, assignments and rejections hereunder. Each contract and lease assumed and/or assigned pursuant to Section 9.1.1 shall be assumed and/or assigned only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Assumption and/or assignment of a contract or lease pursuant to Section 9.1.1 shall not constitute an admission by the Debtors or the Reorganized Debtors, as applicable, that such contract or lease is an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors, as applicable, have any liability thereunder. All Executory Contracts and Unexpired Leases that are assumed and/or assigned will be assumed and/or assigned under their present terms or upon such terms as are agreed to in writing between the

applicable Debtor~~Investor~~ and the counterparty to such contract or lease, with the consent of the Plan ~~Proponents~~Proponent.

9.2    <u>Cure of Defaults for Assumed Contracts and Leases</u>.  The Schedule of Assumed Contracts will identify, with respect to each Executory Contract and Unexpired Lease to be assumed and/or assigned, the relevant Cure Amount for each Executory Contract or Unexpired Lease.  The ~~Debtors~~Proponent will serve the Schedule of Assumed Contracts on the non-Debtor counterparties to each such Executory Contract or Unexpired Lease prior to the Confirmation Hearing.  Each such counterparty shall have until the earlier of:  (a) the date that is five (5) Business Days prior to the Confirmation Hearing; or (b) thirty (30) days from the date of service of the Schedule of Assumed Contracts to file an objection to the assumption and/or assignment of their Executory Contract or Unexpired Lease (whether the objection relates to the Cure Amount or otherwise).  If any objections are filed and cannot be resolved by agreement, the Bankruptcy Court shall hold a hearing to determine the Cure Amount with respect to such Executory Contract or Unexpired Lease or to otherwise resolve the objection, which hearing may be the Confirmation Hearing.  Any party failing to object to the assumption and/or assignment of their Executory Contract or Unexpired Lease as set forth above shall be forever barred from asserting, collecting or seeking to collect from the Debtors or the Reorganized Debtors any amounts in excess of the Cure Amount or from otherwise objecting to the assumption and/or assignment of such Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, or anything else in this Article 9, with respect to any Executory Contract or Unexpired Lease which is the subject of an objection, the Reorganized Debtors shall retain the right, until five (5) Business Days following any order resolving such objection having become a Final Order, to reject such Executory Contract or Unexpired Lease by amending the Contract Schedules.  Within ten (10) days of the later of the Effective Date or the date that an order of the Bankruptcy Court

establishing the Cure Amount of such Executory Contract or Unexpired Lease becomes a Final Order, or as otherwise agreed with the counterparty to each Executory Contract or Unexpired Lease, the Reorganized Debtors shall pay the Cure Amounts to the non-Debtor parties to such Executory Contracts and Unexpired Leases being assumed and/or assigned.

9.3 <u>Bar Date for Claims for Rejection Damages</u>. Notwithstanding any other provision in this Plan or prior notice of any kind from the clerk of the Bankruptcy Court, any and all Creditors or persons with Claims against the Debtors' Estate arising out of or in connection with or due to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall have thirty (30) days from the earlier of: (i) the Effective Date, or (ii) the entry of an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease, within which to file a proof of claim in the true amount of such Claim. If any such Creditor fails to file a proof of claim within said thirty (30) day period, then such Creditor shall have no Claim against the Debtors, their Estates or the Reorganized Debtors, which Claims arising out of or in connection with or due to the rejection of such Executory Contract or Unexpired Lease, shall be dismissed, released and null and void.

9.4 <u>Treatment of Rejection Claims</u>.

9.4.1 Any Person, Entity or Governmental Unit whose Claim arises from the rejection of an Executory Contract or Unexpired Lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Claimant in Class 4 or 5, as applicable with respect thereto.

9.4.2 Any claim filed in accordance with the provisions of Article 9 hereof shall be treated as a Disputed Claim until the period of time has elapsed for filing an objection to such Claim.

9.5 <u>Executory Contracts and Unexpired Leases Entered Into and Other Obligations Incurred After the Petition Date</u>. On the Effective Date, all contracts, leases,

and other agreements entered into by ~~any or all~~either of the Debtors on or after the Petition Date, which agreements have not been terminated in accordance with their terms on or before the Effective Date, shall be deemed assumed and assigned to the Reorganized Debtors.

## ARTICLE 10.  RETENTION OF JURISDICTION

10.1   Notwithstanding the entry of the Confirmation Order or the occurrence of Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case and any proceedings related thereto to the fullest extent permitted by the Bankruptcy Code or applicable law, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

10.2   In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142 of the Bankruptcy Code.   If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority, or commission having competent jurisdiction over such matters.

10.3   Without limiting the foregoing, the Bankruptcy Court shall retain jurisdiction of the Case for the following matters:

10.3.1    To enable the  Debtors to consummate any and all proceedings which may have been brought before or after the entry of the Confirmation Order, to set aside Liens or encumbrances, to challenge or object to the allowance of Claims and to recover any preferences, transfers, assets or damages to which a Debtor may be entitled under the applicable provisions of the Code or other federal, state or local law;

10.3.2    To adjudicate all controversies concerning the classification or allowance of a Claim or Equity Security;

10.3.3    To adjudicate all disputes regarding or relating in any way to Claims, Equity Security, and the Plan;

10.3.4    To hear and determine all claims or motions arising from or seeking the assumption and/or assignment or rejection of any Executory Contracts or Unexpired Leases, and to consummate the rejection and termination thereof or with respect to any Executory Contracts or Unexpired Leases to which an application or motion for rejection or termination is filed before entry of the Confirmation Order;

10.3.5    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

10.3.6    To adjudicate all claims to a security or ownership interest in any property of the Debtors or in any proceeds thereof, including the adjudication of all claims asserted by Creditors and Holders of Equity Security;

10.3.7    To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtors during the pendency of the Proceedings;

10.3.8    To adjudicate, determine and resolve any and all adversary proceedings, applications, motions, and contested or litigated matters, instituted before the closing of the Case;

10.3.9    To recover all Assets and properties of the Debtors, wherever located;

10.3.10    To adjudicate and determine any cause of action provided for under the Plan or pursuant to the Confirmation Order;

10.3.11   To make orders as are necessary or appropriate to carry out the provisions of the Plan, or in aid of confirmation and consummation of the Plan;

10.3.12   To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects hereof;

10.3.13   To hear and determine all matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

10.3.14   To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Bankruptcy Court before or after the Confirmation Date;

10.3.15   To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the Case entered on or before the Confirmation Date; and

10.3.16   To enter an Order closing the Case.

## ARTICLE 11.  PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1   <u>Objections to Claims</u>.  Only the ~~Debtors and~~ Reorganized Debtors shall be entitled to object to Claims.  Any objections to Claims shall be served and filed on or before the later of: (i) sixty (60) days after the Effective Date; (ii) thirty (30) days after a request for payment or proof of Claim is timely filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Creditor if service is effected in any of the following manners: (a) in accordance with Federal Rule of Civil

Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's behalf in the Cases; or (c) by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified in the proof of Claim or any attachment thereto.

11.2    Payments and Distributions with Respect to Disputed Claims. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

11.3    Distributions After Allowance.    After such time as a Disputed Claim becomes an Allowed Claim, the Debtors shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in accordance with the provisions hereof.  In respect of Disputed Claims such distributions shall be made within fifteen (15) days after such Disputed Claims become Allowed Claims by Final Order of the Bankruptcy Court or as soon thereafter as practicable.

## ARTICLE 12.  PROVISIONS CONCERNING DISTRIBUTION

12.1    Time of Distributions Under the Plan.    Payments and distributions to be made on or after the Effective Date pursuant to the Plan shall be made on such date, or as soon as practicable thereafter, except as otherwise provided for in the Plan, or as may be ordered by the Court, or as may be agreed to by the Debtors or Reorganized Debtors, as applicable, and the Holder of the Claim or Member Equity Interest.

12.2    Payment Dates.    Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, or as soon as practicable thereafter, or as may be agreed to by the Debtors and the holder of the Claim or Member Equity Interest.

12.3    <u>Manner of Payments Under the Plan</u>.  Cash payments made pursuant to the Plan shall be made in the currency of the United States, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Distributions to all holders of Allowed Claims and Member Equity Interests shall be made (a) at the addresses set forth in the proof of claim filed by such holders (or at last known addresses of such holders if no proofs of claims were filed or the Debtors were notified of a change of address); or (b) at the addresses set forth in any written notices of address change delivered to the Debtors or the Bankruptcy Court; or (c) at the addresses reflected in the Debtors' schedules if no claim shall have been filed and no written notice of an address change has been received by the Debtors. No payments shall be made to a holder of a Disputed Claim unless and until such Claim becomes an Allowed Claim by a Final Order.

12.4    <u>Fractional Cents</u>.    Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

12.5    <u>Non-Negotiated Checks</u>.  If a Holder of an Allowed Claim, or any other claim or interest fails to negotiate a check issued to such Holder under the Plan within sixty (60) days of the date such check was issued by the Reorganized Debtors, then the amount of Cash or other property attributable to such check shall be deemed to be "Unclaimed Distributions," and the payee of such check shall be deemed to have no further Claim or future Claim against the Debtors or the Reorganized Debtors.

12.6    <u>Unclaimed Distributions</u>.  In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of sixty (60) days after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder.

12.7    Disputed Payments or Distributions.  In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Reorganized Debtors may, in lieu of making such payment or distribution to such Entity, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

**ARTICLE 13.  EFFECT OF CONFIRMATION OF PLAN**

13.1    Discharge.  Any liability imposed by the Plan will not be discharged.  If Confirmation of this Plan and/or the conditions precedent to the effectiveness of the Plan are not satisfied, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtors or their Estates or any other Persons, or to prejudice in any manner the rights of the Debtors, their Estates, and/or any Person in any further proceeding involving the Debtors, their Estates and/or any Person.  The provisions of this Plan shall be binding upon the Debtors, all Creditors and all Member Equity Interest holders, regardless of whether such Claims or Member Equity Interest holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

13.2    Modification of Plan.  Except as provided in Section 15.2.4 of the Plan, the Plan ~~Proponents~~Proponent may modify the Plan at any time before Confirmation.  However, the Bankruptcy Court may require a new Disclosure Statement or re-voting on the Plan if the Plan ~~Proponents~~Proponent materially ~~modify~~modifies the Plan before Confirmation.    Except as provided in Section 15.2.4 of the Plan, the Plan ~~Proponents~~Proponent may also seek to modify the Plan at any time after Confirmation so long as (a) the Plan has not been substantially consummated, and (b) the Bankruptcy

Court authorizes the proposed modification after notice and a hearing. After Confirmation, the Plan ~~Proponents~~Proponent or Reorganized Debtors may, upon Order from the Bankruptcy Court, in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the ~~purpose of this Plan~~purposes of this Plan. Notwithstanding anything to the contrary set forth above, the Plan Proponent may not seek to modify the Plan without the consent of the Investor.

13.3    Post-Confirmation Quarterly Fees.  Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee by the Reorganized Debtors until such time as the Case is converted, dismissed, or closed pursuant to a final decree.

13.4    Retention of Claims and Causes of Action.  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released or assigned in connection with this Plan or in any settlement agreement approved during the Case: (i) any and all Claims accruing to the Debtors or the Estates shall remain assets of and vest in the Reorganized Debtors whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Claims have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtors nor the Estate waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Claims or defenses that constitute property of the Debtors or the Estates: (a) whether or not such Claims or defenses have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Claims are currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such Claims filed a proof of claim in the Case, filed a notice of appearance or any other pleading or notice in the

Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Claim or cause of action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtors' right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Claim that the Debtors or their Estates have or may have as of the Effective Date.

Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released or assigned in connection with this Plan or in any settlement agreement approved during the Case, the Debtors and Reorganized Debtors, as applicable, expressly reserve all Claims and defenses for later adjudication by the Reorganized Debtors and therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Claims and defenses upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan, and/or the Confirmation Order. In addition, the Debtors and Reorganized Debtors, as applicable, expressly reserve the right to pursue or adopt Claims that are alleged in any lawsuits in which the Debtors are a defendant or an interested party, against any Person or Governmental Entity, including the plaintiffs or co-defendants in such lawsuits. Any Person or Governmental Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors, or who has received money or property from the Debtors, or who has transacted business with the Debtors, or

who has leased equipment or property from or to the Debtors should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtors and Reorganized Debtors, as applicable, subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person or Governmental Unit has Filed a proof of Claim against the Debtors in the Case; (b) such Person's or Governmental Unit's proof of Claim has been objected to by the Debtors; (c) such Person's or Governmental Unit's Claim was included in the Debtors' Schedules; or (d) such Person's or Governmental Unit's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as contingent, unliquidated or disputed.

13.5 <u>NO WAIVER OF CLAIMS.</u> NEITHER THE FAILURE TO LIST A CLAIM IN THE SCHEDULES FILED BY THE DEBTORS, THE FAILURE OF THE DEBTORS OR ANY OTHER PERSON TO OBJECT TO ANY CLAIM FOR PURPOSES OF VOTING, THE FAILURE OF THE DEBTORS OR ANY OTHER PERSON TO OBJECT TO A CLAIM OR ADMINISTRATIVE EXPENSE BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE FAILURE OF ANY PERSON TO ASSERT A CLAIM OR CAUSE OF ACTION BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE ABSENCE OF A PROOF OF CLAIM HAVING BEEN FILED WITH RESPECT TO A CLAIM, NOR ANY ACTION OR INACTION OF THE DEBTORS OR ANY OTHER PERSON WITH RESPECT TO A CLAIM, OR ADMINISTRATIVE EXPENSE, OTHER THAN A LEGALLY EFFECTIVE EXPRESS WAIVER OR RELEASE SHALL BE DEEMED A WAIVER OR RELEASE OF THE RIGHT OF THE DEBTORS, BEFORE OR AFTER SOLICITATION OF VOTES ON THE PLAN OR BEFORE OR AFTER CONFIRMATION OR THE EFFECTIVE DATE TO (A) OBJECT TO OR EXAMINE SUCH CLAIM OR ADMINISTRATIVE EXPENSE, IN WHOLE OR IN PART OR (B) RETAIN AND EITHER ASSIGN OR EXCLUSIVELY ASSERT, PURSUE, PROSECUTE, UTILIZE, OTHERWISE ACT OR

OTHERWISE ENFORCE ANY CLAIM OR CAUSE OF ACTION AGAINST THE HOLDER OF ANY SUCH CLAIM.

## ARTICLE 14.  GENERAL PROVISIONS

14.1  <u>Notices Under the Plan.</u>  Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and:

if sent to the ~~Debtors or Reorganized Debtors~~Plan Proponent, addressed to:

~~GALLAGHER & KENNEDY, P.A.~~
~~John R. Clemency~~
~~Todd A. Burgess~~
~~2575 East Camelback Road~~
FORRESTER & WORTH, PLLC
S. Cary Forrester
3636 N. Central Ave., Suite 700
Phoenix, Arizona ~~85016-9225~~85012-1927
Facsimile:  (602) ~~530-8500~~271-4300
Email: ~~john.clemency@gknet~~       scf@forresterandworth.com
~~todd.burgess@gknet.com~~

if sent to ~~AWI~~Investor or ~~Perciballi~~Reorganized Debtors, addressed to:

~~QUARLES & BRADY, LLP~~
~~Susan G. Boswell~~
~~Lori Winkelman~~
~~One South Church Avenue, Suite 1700~~
~~Tucson, Arizona 85701-1621~~
~~Email:  Susan.Boswell@quarles.com~~
~~Lori.Winkelman@quarles.com~~Stradling Yocca Carlson & Rauth, P.C.
100 Wilshire Blvd., 4th Floor
Santa Monica, CA  90401
Attention:  David M. Smith, Esq.
Fred Neufeld, Esq.
Phone:  (424) 214-7000
fax:      (424) 214-7010

14.2  <u>Withholding Taxes/Setoffs.</u>  The Reorganized Debtors shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to

Allowed Claims for wages of any kind. The Reorganized Debtors may, but shall not be required to, set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors, as applicable, of any such claim the Debtors may have against such holder.

14.3 <u>Committee</u>. On the Effective Date, the Committee shall automatically dissolve and the members thereof and the Professional Persons retained by the Committee in accordance with Section 1103 of the Bankruptcy Code shall be released and discharged from their respective duties and obligations.

14.4 <u>Headings</u>. The headings used in this Plan are inserted for convenience only and neither shall constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

14.5 <u>Unenforceability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

14.6 <u>Certain Terminations</u>. On the Effective Date, all instruments evidencing indebtedness of the Debtors discharged by the Plan shall be deemed canceled, unless this Plan provides for the retention of liens.

14.7 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona without regard to its conflicts of law principles.

14.8 <u>Liquidated and/or Disputed Claims</u>. The Bankruptcy Court shall fix or liquidate the amount of any contingent and/or disputed Claim pursuant to Section 502 of

the Bankruptcy Code. The amount so fixed shall be deemed the amount of such contingent Claim for purposes of this Plan. In lieu thereof, the Bankruptcy Court may determine the amount to be reserved for such contingent Claim, which amount shall be the maximum amount which the holder of such contingent Claim shall be entitled to receive under this Plan if such contingent Claim is allowed in whole or in part.

14.9 <u>Revocation of Plan</u>. The Plan ~~Proponents reserve~~Proponent reserves the right to revoke and withdraw this Plan at any time before Confirmation.

14.10 <u>Reservation of Rights</u>. Nothing contained herein shall prohibit the Debtors from prosecuting or defending any of its rights as may exist on its own behalf before the Effective Date. If Confirmation of the Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, their Estates, or any other Person, or to prejudice in any manner, the rights and remedies of the creditors, the Debtors, their Estates, or any Person in any further proceedings involving the Debtors or their Estate. The filing of the Plan and or any modifications hereto, and the Plan itself shall not constitute a waiver by Investor or the Plan ~~Proponents~~Proponent of any rights, remedies, objections, or causes of action they may have or may wish to raise with respect to anything, including, without limitation, any other plan or plans filed or to be filed in this bankruptcy case, all of which rights and objections are hereby reserved.

14.11 <u>Exemption from Certain Transfer Taxes</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer hereunder will not be subject to any stamp, tax, or similar tax.

14.12 <u>Injunction</u>. Except as otherwise provided in the Plan or the Confirmation Order, and except for any actions timely filed pursuant to Section 523 of the Bankruptcy Code or any Claims declared by the Bankruptcy Court to be non-dischargeable pursuant

to Section 523 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtors or their Estates, or Member Equity Interests in the Debtors, are, with respect to any such Claims or Member Equity Interests, permanently enjoined from and after the Confirmation Date from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) with respect to any such Claim  against or affecting the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, with respect to any judgment, award, decree or order against the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) asserting initially after the Effective Date any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors, their Estates or any of their respective property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.  By accepting a distribution pursuant to the Plan, each

holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section, and, except as set forth in this Section, waives any and all claims, causes of action, remedies and objections of every kind against the Debtors.

14.13  Term of Injunctions or Stays.  Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.  For the avoidance of doubt, this Section 14.13 does not apply to the permanent injunction set forth in Section 14.12 of the Plan.

14.14  Injunction Against Interference With Plan.  Upon the entry of the Confirmation Order, all holders of Claims and Member Equity Interests and other parties in interest, including the Debtors, along with its respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

14.15  Exculpation.  Except with respect to obligations under the Plan, ~~neither~~the Proponent, the Debtors, ~~AWI, the Committee,~~ the Independent Debtor Representative, Odyssey Capital Group, LLC, the Committee, the Investor, ~~nor any of their respective Representatives, all solely in their capacity as such (each an~~ and their advisors, attorneys, consultants, officers, directors, and agents (the "**Exculpated** ~~Party"), shall~~ **Parties**") will neither have ~~or~~nor incur any liability to the Debtors, any holder of a Claim or Equity Security, or any other party in interest, or any of their respective shareholders, former shareholders, members, former members, agents, employees, representatives, financial advisors, attorneys, consultants, affiliates, successors or assigns (the "**Exculpating Parties**"), for any ~~act~~post-petition acts or ~~omission in connection with,~~omissions relating to or

arising out of: (i) the this Case; (ii) the , the administration of this Case, or the negotiation, execution, confirmation of the Plan; (iii) the , consummation of the Plan; or (iv) the administration of the Plan or property to be distributed pursuant to the Plan, except for (the "**Exculpated Acts**"), other than acts of gross negligence, fraud, breach of fiduciary duty, or willful misconduct, recklessness or gross negligence; and, in all respects, each Exculpated Party shall be entitled. The Exculpating Parties will have no right of action against any of the Exculpated Parties for any of the Exculpated Acts, and the Exculpated Parties are released of and from all claims or liabilities, known or unknown, arising out of or related to the Exculpated Acts. The foregoing provisions of this Article will not be deemed to rely upon the advice of counsel with respect limit any existing protections or immunities afforded to their duties and responsibilities the Exculpated Parties under the Plan. existing law.

14.16  Successors and Assigns. The rights and obligations of any Entity named or referred to in the Plan shall be binding upon and shall insure to the benefit of, the predecessors, successors, assigns and agents of such Entity.

## ARTICLE 15. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVENESS OF PLAN

15.1  Conditions to Confirmation.  The following shall be conditions to Confirmation unless such conditions shall have been duly waived:

15.1.1  The Confirmation Order has been entered in form and substance reasonably acceptable to the Plan Proponents Proponent and Investor. This condition precedent may be waived only by unanimous agreement of the Plan Proponents Proponent and Investor.  If the Plan Proponents Proponent and Investor are unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes between the parties; and

15.1.2 All documents necessary to the implementation of the Plan shall be in form and substance reasonably satisfactory to the Plan ~~Proponents~~Proponent and Investor. This condition precedent may be waived only by unanimous agreement of the Plan ~~Proponents~~Proponent and Investor.

15.2 <u>Conditions to the Effective Date.</u> The following shall be conditions to the occurrence of the Effective Date unless such conditions shall have been duly waived as provided below:

15.2.1 The Confirmation Order in form and substance acceptable to the Plan ~~Proponents~~Proponent and Investor shall have become a Final Order, except that the Plan ~~Proponents reserve~~Proponent reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order. This condition precedent may be waived only by ~~unanimous~~ agreement of the Plan ~~Proponents~~Proponent and Investor.

15.2.2 The Plan and all documents necessary to implement the Plan shall be in form and substance reasonably satisfactory to the Plan ~~Proponents~~Proponent and Investor, and shall have been executed and delivered to the applicable parties. This condition precedent may be waived only by ~~unanimous~~ agreement of the Plan ~~Proponents~~Proponent and Investor.

15.2.3 ~~ArmorWorks shall have unconditionally and irrevocably received the~~ The Plan ~~Contributions~~Contribution from Investor ~~and Perciballi~~, as specified in ~~accordance with~~ Article 8.2 of the Plan~~.~~, shall have been placed in an escrow account acceptable to the Plan Proponent. This condition precedent may be waived only by ~~unanimous~~ agreement of the Plan ~~Proponents, Perciballi~~Proponent and Investor.

15.2.4 ~~Written acknowledgement by the C Squared Parties that they have received the C Squared Settlement Amount is a condition precedent to the~~

effectiveness of the Plan. The foregoing condition precedent is waiveable only with the express prior written consent of the C Squared Parties. Despite any provision of the Bankruptcy Code to the contrary, including but not limited to § 1127, the Plan Proponents affirmatively waive the right to modify the Plan to remove, edit or modify this condition precedent. Notwithstanding the foregoing, in the event that the Bankruptcy Court authorizes the removal, edit or modification of this condition precedent without the C Squared Parties' prior written consent, the Plan Proponents acknowledge and agree that the removal, edit or modification of this condition precedent without the C Squared Parties' written consent would constitute a material modification of the Plan mandating an amended disclosure statement and re-balloting of the Plan.

15.3    Absence of Waiver or Satisfaction Conditions.    In the event all conditions to the effectiveness of the Plan are not satisfied, or waived in accordance with the foregoing provisions, the Plan shall be deemed null and void without any further action of the Bankruptcy Court. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtors, their Estates, or any other Persons, or to prejudice in any manner the rights of the Debtors, their Estates, or any other Persons in any further proceeding in the Bankruptcy Court or any other court or proceeding.

Dated: ~~June 17, 2014~~November 1, 2014

~~**ARMORWORKS ENTERPRISES, LLC**, an Arizona limited liability company~~

~~**TECHFIBER, LLC**, a Delaware limited liability company by:~~

**OFFICIAL JOINT COMMITTEE OF UNSECURED CREDITORS**

~~ARMORWORKS ENTERPRISES, LLC, an Arizona limited liability company, its sole Member~~

By and through:

~~WILLIAM J. PERCIBALLI~~

~~By and through:~~

~~WILLIAM J. PERCIBALLI~~

By: *~~/s/William J. Perciballi~~Joseph Cotterman*
Name: ~~William J. Perciballi~~Joseph Cotterman
Its: ~~Authorized Representative~~Chairman

~~By: */s/William J. Perciballi*~~
~~Name: William J. Perciballi~~
~~Its: Authorized Representative~~

~~**ARMORWORKS, INC.**~~

**WILLIAM J. PERCIBALLI**

~~By: */s/William J. Perciballi*~~
~~Name: William J. Perciballi~~
~~Its: Authorized Representative~~

~~*/s/William J. Perciballi*~~

Prepared and submitted on behalf of the ~~Debtors~~Committee by:

~~GALLAGHER & KENNEDY, P.A.~~

FORRESTER & WORTH, PLLC

By: _/s/~~Todd A. Burgess (019013~~S. Cary Forrester (006342)_
~~John R. Clemency~~
~~Todd A. Burgess~~
~~2575 East Camelback Road~~
S. Cary Forrester
3636 N. Central Avenue, Suite 700
Phoenix, Arizona ~~85016-9225~~85020-1927
Telephone: (602) ~~530-8000~~271-4250
Facsimile: (602) ~~530-8500~~271-4300
~~Email: john.clemency@gknet.com~~
~~todd.burgess@gknet.com~~

~~Prepared and submitted on behalf of ArmorWorks, Inc. and William J. Perciballi by:~~

~~QUARLES & BRADY, L.L.P.~~


~~By: /s/Susan G. Boswell (with permission)~~
~~Susan G. Boswell~~
~~Lori Winkelman~~
~~One South Church Avenue, Suite 1700~~
~~Tucson, Arizona 85701-1621~~
~~Direct Line: (520) 770-8713~~
~~Direct Fax: (520) 770-2222~~
~~Mobile: (520) 349-6644~~
~~Email: Susan.Boswell@quarles.com~~
~~Lori.Winkelman@quarles.com~~

Email:   scf@forresterandworth.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**SCHEDULE 8.8**

**(MEMBERS AND MANAGERS OF THE REORGANIZED DEBTORS)**

ArmorWorks:

Sole Member: ~~AWI~~Diversis Capital, LLC or nominee
Managers: ~~Perciballi~~Kevin Ma and ~~one or more persons appointed by Investor~~Ron Nayot

TechFiber:

Sole Member ~~and Manager~~: ArmorWorks

Managers: Kevin Ma and Ron Nayot

2
4265551v4/22420-0006

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## SCHEDULE 9.1(a)

## (SCHEDULE OF REJECTED CONTRACTS)

**SCHEDULULE 9.1(b)**
**(SCHEDULE OF ASSUMED CONTRACTS)**