**Littlejohn Capital, LLC**
116 West Jones Street
Savannah, GA 31401

October 27, 2014

Mr. William Perciballi
President and CEO
ArmorWorks, Inc.
Phoenix, AZ

Re: Proposal to Fund Chapter 11 Reorganization of ArmorWorks Enterprises, LLC

Dear Mr. Perciballi:

Littlejohn Capital, LLC ("Littlejohn"), through a single purpose holding company, LJC Investment II, LLC ("LJC II"), is pleased to submit a proposal to make a control investment in ArmorWorks Enterprises, LLC ("AWE") and its subsidiaries (collectively, the "Company"), and look forward to working with you as a partner and Chief Executive Officer of the Company.

Our proposal is based on our prior experience with service providers to and manufacturers of equipment to the defense industry.

We intend to finance the investment with a combination of equity and debt securities. To support the investment, LJC II will underwrite the total equity. With respect to debt financing, Littlejohn and its affiliate, Littlejohn & Co., LLC, maintain excellent longstanding relationships with many lower-middle market financing institutions. It is our intention to secure a standard ABL financing package with either Bank of America or Wells Fargo, both of which are presently conducting due diligence. However, in order to comply with the accelerated time schedule for this transaction, we have received a bridge financing proposal from Lancelot Armor, LLC, the Company's present DIP lender.

Littlejohn Capital, LLC is a family office controlled by Angus C. Littlejohn Jr., the founder of Littlejohn & Co., LLC, a leading middle market private equity firm, where he currently serves as Chairman. www.littlejohnllc.com. Our investment focus is on opportunities in lower middle-market businesses undergoing a fundamental change in capital structure, strategy, operations or growth that can benefit from the operational and strategic approach of a hands-on sponsor. Angus C. Littlejohn Jr. has been an active investor for over 30 years and has a strong track record of successfully partnering with management teams of portfolio companies to maximize operating performance and pursue profitable growth, both organically and through additional investments.

We are well-positioned to serve as a strong, value-added partner to the Company's senior leadership team given our long history of investing significant capital in portfolio companies to support strategic expansion plans. We are familiar with the defense industry and have recently exited investments in Wyle Laboratories, Inc., a provider of test, engineering and technical services to the aerospace, defense, energy and communications industries and Synchronous

#5399471 v5 \023678 \0005



Aerospace Group, a provider of flight critical machined aluminum and hard-metal airframe components, integrated kits and assemblies.

**Transaction Proposal**

We propose that the transaction be structured as follows:

1. <u>Formation and Funding of Newco</u>. LJC II would form Newco, invest $6.0 million in Newco and receive Series A 8% Preferred Stock of Newco having a liquidation value of $6.0 million and 594.64 shares of Common Stock of Newco. ArmorWorks, Inc. ("AWI") would contribute all of its assets (including its intellectual property and contracts) and none of its liabilities to Newco and William Perciballi ("WP") would contribute all of his intellectual property and 70% of the member interests in Armory LLC (the owner of the Frye Road property) to Newco in return for 305.36 shares of Common Stock of Newco (to be split between AWI and WP as they shall determine except that WP shall own at least 100 of such shares of Common Stock). 100 of such shares of Common Stock owned by WP shall be restricted stock subject to forfeiture and shall vest in the same manner as stock options vest under Newco's equity incentive plan. 100 shares of Common Stock would be reserved for issuance pursuant to Newco's equity incentive plan (the terms of which are set forth on Appendix A annexed hereto). The Series A 8% Preferred Stock of Newco will have absolute priority over the Common Stock of Newco and no distributions will be made to holders of such Common Stock until the holders of the Series A 8% Preferred Stock have been paid the full liquidation value thereof, together with cumulative dividends thereon at the rate of 8% per annum.

2. <u>Transaction Structure</u>. Newco would fund the plan of reorganization of AWE (as set forth in paragraph 3 below) and become the sole stockholder of AWE.

3. <u>Sources and Uses of Funds</u>. The sources and uses of funds, assuming a Closing on November 15, 2014, would be as follows:

<u>Sources</u>:
- LJC Investments II........................................$6.0mm
- Cash On balance Sheet..................................0.405
- New bank debt.............................................<u>1.115</u>
- Total...........................................................$7.520mm

<u>Uses</u>:
- Repayment of Dip Loan.................................$1.20mm
- Crown Settlement.........................................1.10
- Administrative Claims..................not to exceed 2.00
- Effective date Unsecured Claims....................0.806
- Priority Claims.............................................0.139
- Landlord Claims...........................................0.142
- Secured Claims (Primarily Real Estate Taxes).....0.122
- Transaction and Financing fees and expenses....1.238

#5399471 v5 \023678 \0005



- Perciballi (Note Payable/Receivable Offset) ............... 0.074
- Payment to Perciballi ...................................................... *
- Cash on balance sheet ............................................... 0.000
- Total .................................................................... $7.520mm

4. <u>Management</u>. We anticipate that WP will remain with the Company in such roles as are mutually agreed. He will initially be Chief Executive Officer ("CEO"), Chief Technology Officer ("CTO") and Chief Development Officer ("CDO"). The Board of Directors will have the right to replace him as the CEO at a later date but WP would remain as CTO and CDO. It is understood that AWE would initiate an immediate search for a Chief Operating Officer. WP's employment agreement would contain the terms set forth on Appendix B annexed hereto.

5. <u>Board of Directors of Newco</u>. The Board of Directors of Newco will initially be comprised of four persons: William Perciballi and three designees of LJC II.

6. <u>Stockholders Agreement</u>. LJC II, WP and all other stockholders would enter into a stockholders' agreement containing customary provisions, including a right of first refusal, tag along, drag along, restriction on transfer of securities and preemptive rights.

7. <u>Management Fees</u>. In exchange for operating oversight of the Company, Littlejohn would receive an annual management fee equal to the greater of 5% of consolidated EBITDA or $200,000 per annum. If the Company does not generate positive EBITDA during any month, the management fee will accrue at a rate of $16,667 per month until AWE is able to pay such fee.

8. <u>Closing</u>. The closing of the proposed transaction ("Closing") would take place as soon as practicable following the execution of definitive agreements, subject to the satisfaction of all conditions to Closing, including the receipt of all required consents and regulatory approvals, a full settlement with C-Squared in form and substance satisfactory to LJC II and entry of a final order of the Bankruptcy Court, in form and substance satisfactory to LJC II in its sole discretion, approving the plan of reorganization of AWE (the "Confirmation Order"). LJC II shall retain the right to waive the finality of the Confirmation Order. The effective date and Closing shall occur no sooner than entry of the Confirmation Order and may be delayed for a short time thereafter at the discretion of LJC II.

9. <u>Definitive Documents; Access and Required Information</u>. LJC II is preparing definitive documents. LJC II and its agents and representatives will require full and complete access to the books and records, files, documents and facilities related to the Company, and access to the Company's employees, consultants, accountants, legal counsel and other agents and representatives.

10. <u>Exclusivity</u>. In order to complete the transaction as rapidly as possible and in consideration of the time and resources devoted to this transaction, Mr. Perciballi, AWI and their

---

* Amount by which the administrative claims are less than $2.0 million up to a maximum payment to Perciballi of $800,000.

#5399471 v5 \023678 \0005

3

respective representatives will negotiate exclusively and in good faith with LJC II until November 15, 2014 to allow for LJC II to complete its due diligence and for the parties to negotiate definitive agreements (the "Exclusivity Period"). The Exclusivity Period will be extended by written consent of each party as long as LJC II is working in good faith towards consummating a transaction and intends to close. During the Exclusivity Period, neither Mr. Perciballi, AWI or any of its directors, officers, employees agents, attorneys or, representatives will seek, encourage, solicit, assist or consider any proposals relating to an acquisition, merger or recapitalization, sale, license or other disposition of all or a material portion of the assets, intellectual property or capital stock of AWE. The parties acknowledge and agree that AWE shall not be subject to any restrictions on pursuing alternative transactions; provided, however, that the provisions of this paragraph 10 shall apply in all respects to AWI and Mr. Perciballi (in his individual capacity) and their respective representatives.

11. Confidentiality. Each party agrees to keep confidential any non-public proprietary information obtained by either party about the other party in connection with the transaction contemplated hereby.

12. Fees and Expenses. If the transaction contemplated hereby is not consummated, each party will pay its own fees and expenses.

13. Non-Circumvention. LJC II, Mr. Perciballi and AWI agree that, during the Exclusivity Period, they shall not enter into any transactions, for financing or purchase of AWE with any other entity (including such entity's affiliates and related entities) without the other party. The spirit of mutual trust and confidence shall be the underlying principle of this undertaking and the parties agree to adhere thereto. The term "transaction' for the purposes of this paragraph shall be broadly construed to avoid any circumvention of the provisions or of the spirit of this letter. The parties acknowledge and agree that AWE shall not be subject to any restrictions on pursuing alternative transactions but that the restrictions on pursuing alternative transactions shall apply in all respects to Mr. Perciballi (in his individual capacity), AWI and their respective representatives.

14. Non-Binding Letter of Intent. This letter is not to be considered an offer to purchase or an agreement of purchase and sale, but is merely an expression of our intent and desire to acquire the Company generally on the terms outlined above, subject to LJC II's satisfaction with the results of due diligence, the successful negotiation of definitive agreements and the entry of the Confirmation Order. Except for paragraphs 10, 11, 12 and 13 hereof, which are intended to be binding on the parties, this letter is not binding. Neither party shall be under any obligation to consummate a transaction unless and until the parties have negotiated, executed and delivered definitive agreements containing terms and conditions and in form and substance satisfactory to each of the parties, and the Confirmation Order has been entered. If a definitive agreement is entered into by the parties, any obligations of the parties set forth in this letter will terminate except to the extent expressly reaffirmed in such definitive agreement. This letter shall be governed by the laws of the State of New York.

#5399471 v5 \023678 \0005

We look forward to working with you on this transaction. If you have any questions, please feel free to contact me at 912-472-0300.

Sincerely,

Littlejohn Capital, LLC

_____
Angus C. Littlejohn, Jr.
Title: Manager

AGREED TO AND ACCEPTED BY
ARMORWORKS, INC.

_____
Name: William Perciballi
Title: President

_____
WILLIAM PERCIBALLI,
solely in his individual capacity
and not on behalf of
ArmorWorks Enterprises, LLC

#5399471 v5 \023678 \0005

5

## STOCK OPTION PROGRAM TERM SHEET

| STOCK OPTIONS | Up to 10% of ArmorWorks equity will be set aside for allocation to employees and potentially other service providers. |
|---|---|
| ALLOCATION | The allocation (10%) will be for senior executives (other than Perciballi), as mutually agreed by the Board of Directors and Perciballi (or CEO if not Perciballi on the grant date). |
| TIMING OF GRANT | As approved by Board of Directors and Perciballi (or CEO if not Perciballi on the grant date). |
| VESTING | Grants will vest in five (5) equal tranches as follows, subject to continuous employment by the Company in good stead:<br>a. 1st anniversary of grant date = 20%<br>b. 2nd anniversary of grant date = 20%<br>c. 3rd anniversary of grant date = 20%<br>d. 4th anniversary of grant date = 20%<br>e. upon a Liquidity Event (e.g., sale of company) = 20% |
| ACCELERATION | Upon a Liquidity Event, all of the unvested options granted to an individual will accelerate. |
| STRIKE PRICE | $100,000 PER 1% (Need to translate that into a price per share once we have that information) (but not less than Littlejohn Capital's buy-in price). |
| TOTAL OPTION LIFE | 10 Years |
| TERMINATION | If a recipient is terminated with "Cause" or "Without Good Reason", he or she will forfeit all options and, if any options were previously exercised, the Company will have a repurchase right at the lower of cost and the then current FMV;<br><br>If a recipient is terminated "Without Cause" or "For Good Reason", he or she will be able to exercise all vested options for 90 days, and all unvested options will be forfeited. To the extent any options were previously exercised or are exercised at termination, the Company will have a repurchase right at the then current FMV. |

#5394390 v3 \023678 \0005



# EMPLOYMENT AGREEMENT TERM SHEET

| | |
|---|---|
| EMPLOYEE | William J. Perciballi |
| EMPLOYER | ArmorWorks Enterprises, LLC (the "Company") |
| POSITION | Chief Executive Officer, Chief Technology Officer, and Chief Development Officer, in each case, reporting to the Board of Directors |
| LOCATION | Phoenix, AZ |
| TERM | 2 years, with automatic one-year renewals thereafter unless given (60) days' prior notice |
| DUTIES | Provide direction and support to President and COO, so that he or she can meet his or her operational and fiscal responsibilities; <br><br>Lead and develop the Company's R&D efforts in coordination with manufacturing and logistical personnel; <br><br>Lead the Company's corporate development, marketing and sale organization; and <br><br>Have such other duties and responsibilities as mutually agreed upon by Board of Directors and Employee. |
| OTHER PERMITTED ACTIVITIES[1] | Employee will devote substantially all of his business time to the Company, other than Permitted Activities as agreed to in writing by the Board of Directors. |
| COMPENSATION | $325,000 per annum, payable at the same time as other management employees of the Company |
| ANNUAL BONUS | As determined by the Board of Directors. It is our intention to |

---

[1] Today the Company is classified a Small Business for the purposes of government work, which has allowed it to be eligible for various research grants and other benefits. Due to the number of employees (6,000+) at Hospitality Staffing Solutions, a company controlled by Littlejohn Capital, this classification would probably go away. We have discussed setting up another entity owned [60]% by Perciballi and [40]% by either Littlejohn Capital or the Employer to continue participation in the programs with the Employer having either an exclusive right (if permitted) or at a minimum, right of first refusal on any IP created through such grants. In addition, Bill Perciballi is the most senior officer holding "top secret" status, and, notwithstanding the allocation of economics, some programs will be restricted to him personally or an entity controlled by him.

--5394377 \3 \023678 \0005

1

| | |
|---|---|
| | implement a formal EBITDA based program, subject to limitations imposed on a defense contractor. |
| BENEFITS | Employee shall be eligible to receive personal and family medical insurance, as well as other employee benefit plans that are generally provided by the Company to its executive officers or its employees. |
| VACATION | Six (6) weeks of vacation per annum, accruing monthly. Roll over of unused vacation allowance will be limited to [2] weeks. |
| TERMINATION | At the discretion of the Company |
| SEVERANCE | If terminated by the Company with "Cause" or by Employee without "Good Reason", Employee will be entitled to receive accrued base salary and vacation, reimbursement of expenses, but no severance.<br><br>If terminated by the Company without "Cause" or by Employee with "Good Reason, Employee will be entitled to receive all of the above, plus 12 months of Base Salary and Benefits.<br><br>Severance shall be payable monthly over severance period, and is conditional upon the execution of a general release of claims in favor of the Company and its affiliates. |
| CONFIDENTIALITY | Standard confidentiality language |
| INTELLECTUAL PROPERTY | All inventions, patents and other proprietary innovations will be property of the Company. Also at the time this transaction is consummated Employee will assign all of his existing and pending proprietary inventions and patents to the Company. |
| NON-COMPETE | 3 years post-employment |
| NON SOLICIT | 3 years post-employment |

#5394377 v3 1025678 10005

2

