**GALLAGHER & KENNEDY, P.A.**
John R. Clemency (Bar No. 009646)
Todd A. Burgess (Bar No. 19013)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: john.clemency@gknet.com
        todd.burgess@gknet.com

Attorneys for Debtors

**QUARLES & BRADY LLP**
Susan G. Boswell
Lori Winkelman
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
Direct Line: (520) 770-8713
Direct Fax: (520) 770-2222
Mobile: (520) 349-6644
Email: Susan.Boswell@quarles.com
        Lori.Winkelman@quarles.com

Attorneys for ArmorWorks, Inc. and
William J. Perciballi

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARMORWORKS ENTERPRISES, LLC,☐ TECHFIBER, LLC, ☐ | Case No. 2:13-bk-10332-BMW Case No. 2:13-bk-10333-BMW |
| Debtors | (Jointly Administered) |

This Filing Applies to:

X      Both Debtors
☐      Specified Debtor

**FIFTH AMENDED JOINT PLAN OF REORGANIZATION DATED
JUNE 17, 2014**

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

# INTRODUCTION

This Fifth Amended Joint Plan of Reorganization (as amended, the "**Plan**") is being proposed jointly by ArmorWorks Enterprises, LLC ("**ArmorWorks**"), its wholly-owned subsidiary TechFiber, LLC ("**TechFiber**" and together with ArmorWorks, the "**Debtors**"), ArmorWorks, Inc. ("**AWI**"), and William J. Perciballi ("**Perciballi**"). The Debtors, AWI, and Perciballi are sometimes referred to herein as the "**Plan Proponents**".

Sent to you in the same envelope as this document is the Fifth Amended Disclosure Statement in Support of Fifth Amended Joint Plan of Reorganization (the "**Disclosure Statement**"), which has been conditionally approved by the Bankruptcy Court and is provided to help you understand the Plan. The Plan provides for the reorganization of the Debtors and the satisfaction of all Allowed Claims against and Allowed Member Equity Interests in the Debtors in accordance with the Bankruptcy Code.

## ARTICLE 1. DEFINITIONS.

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "**Bankruptcy Code**"), the applicable Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Arizona (the "**Local Bankruptcy Rules**"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.1     <u>Administrative Expense</u> shall mean any cost or expense of administration of the Debtors' chapter 11 cases allowable under Section 503(b) and Section 507(a) of

the Bankruptcy Code, including, without limitation, (a) any actual and necessary expenses of preserving the estates of the Debtors, (b) any actual and necessary expense of operating the businesses of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of the business or for the acquisition or lease of property or the rendition of services to the Debtors on or after the Petition Date, (c) all allowances of compensation and reimbursement of expenses awarded or allowed hereunder or under Sections 330(a), 331 or 503 of the Bankruptcy Code, including the allowed fees and expenses of Professional Persons, (d) any fees or charges assessed against the estates of the Debtors under Chapter 123 of Title 28 of the United States Code, and (e) all Claims accorded priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

1.2     <u>Affiliates</u> shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.3     <u>Allowed</u> when used as an adjective preceding the words "Claims" or "Member Equity Interest" shall mean any Claim against or Member Equity Interest in the Debtors, proof of which was filed on or before the Bar Date, or, if no proof of Claim or Member Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed timely and such Claim has been allowed in whole or in part by a Final Order.  Subject to rights of Secured Creditors under Bankruptcy Code § 506(b), if any, unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Member Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Member Equity Interest from and after the Debtors' Petition

Date.

1.4    <u>Allowed Administrative Expense Claim</u> shall mean any Administrative Expense allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code.

1.5    <u>Allowed Priority Non-Tax Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.6    <u>Allowed Priority Tax Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.7    <u>Allowed Unsecured Claim</u> shall mean an Unsecured Claim that is or has become an Allowed Claim.

1.8    <u>Anchor Management</u> shall mean Anchor Management, LLC, a representative of C Squared and one of the Managers of ArmorWorks.

1.9    <u>Assets</u> shall mean the aggregate assets of any kind of the Debtors and their Estates, wherever located.

1.10    <u>AWI</u> shall mean ArmorWorks, Inc., the holder of a 60% prepetition Member Equity Interest in ArmorWorks.

1.11    <u>AWI Parties</u> shall mean AWI, Perciballi, Armory LLC, and/or any and/or all of their affiliates, members, investors, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them except for the Debtors and the C Squared Parties.

1.12    <u>Ballot</u> shall mean the form(s) distributed to creditors holding claims in an impaired Class, or holders of interests in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

1.13    <u>Bankruptcy Code</u> or <u>Code</u> shall mean the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, *et seq*.), as amended, and as codified in Title 11 of the United

States Code.

1.14 <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Debtors' Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

1.15 <u>Bankruptcy Rules</u> shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

1.16 <u>Bar Date</u> shall mean 4:00 p.m., July 30, 2013, the date established by the Bankruptcy Court, pursuant to the Order and Notice for Hearing on Debtors' Disclosure Statement dated June 20, 2013, by which a proof of claim must be filed with the Bankruptcy Court.

1.17 <u>Business Day</u> shall mean and refer to any day except Saturday, Sunday, and any other days on which commercial banks in Arizona are authorized by law to close.

1.18 <u>C Squared</u> shall mean C Squared Capital Partners, L.L.C., the holder of a 40% prepetition Member Equity Interest in ArmorWorks.

1.19 <u>C Squared Parties</u> shall mean Anchor Management, C Squared, and/or any and/or all of their affiliates, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them other than the Debtors and the AWI Parties.

1.20 <u>C Squared Settlement</u> shall mean that certain Settlement and Release Agreement, by and between the AWI Parties and the C Squared Parties, dated May 14, 2014.

1.21 <u>C Squared Settlement Amount</u> shall mean the payment in the amount of $1,100,000 to be paid by AWI to C Squared on the Effective Date of the Plan, and as a condition precedent to the occurrence of the Effective Date of the Plan.

1.22 <u>Cash</u> shall mean legal tender of the United States of America or equivalents thereof, as well as any and all foreign currencies.

1.23 <u>Case</u> shall mean the Debtors' cases under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court.

1.24 <u>Claim</u> shall mean a claim against the Debtors as defined in Section 101(5) of the Bankruptcy Code; including any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.25 <u>Claimant</u> shall mean the holder of a Claim.

1.26 <u>Class</u> shall mean a class of holders of Claims or Member Equity Interests described in Article 3 of the Plan.

1.27 <u>Committee</u> shall mean the Official Joint Committee of Unsecured Creditors appointed in the Case pursuant to Bankruptcy Code § 1102.

1.28 <u>Confirmation</u> shall mean the entry of an order by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.29 <u>Confirmation Date</u> shall mean the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.30 <u>Confirmation Hearing</u> shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.31 <u>Confirmation Order</u> shall mean an order of the Bankruptcy Court

confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.32 <u>Contract Schedules</u> means the Schedule of Assumed Contracts and the Schedule of Rejected Contracts.

1.33 <u>Corporate Restructuring Transactions</u> means the transactions described in Article 8.2 of the Plan, which shall be approved in the Confirmation Order.

1.34 <u>Creditor</u> shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Estates of any kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.35 <u>Cure Amount</u> means, with respect to any Executory Contract or Unexpired Lease that is assumed and assigned by the Debtors pursuant to Article 9 hereof, the amount necessary to cure any existing defaults in order to permit the Debtors to assume such contract or lease pursuant to Section 365 of the Bankruptcy Code, which amount shall be the amount indicated for each such contract or lease on the Schedule of Assumed Contracts (as the same may be amended or modified by the Debtors, with the consent of the Plan Proponents, at any time prior to the Effective Date) unless modified by order of the Bankruptcy Court pursuant to an objection by the non-Debtor counterparty in accordance with the procedure set forth in Section 9.2 hereof.

1.36 <u>Debt</u> shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

1.37 <u>Debtors</u> shall mean together ArmorWorks Enterprises, LLC, an Arizona limited liability company and TechFiber, LLC, a Delaware limited liability company. With respect to any period of time after the Effective Date, the term Debtors, as used herein shall mean and include the Debtors as reorganized under and in accordance with the confirmed Plan.

1.38 <u>DIP Facility or DIP Facilities</u> shall mean the debtor-in-possession financing

provided by Lancelot Armor, LLC pursuant to the Lancelot DIP Order and any other debtor-in-possession financing approved by the Bankruptcy Court in the Bankruptcy Case prior to the Effective Date.

1.39    DIP Lender(s) shall mean Lancelot Armor, LLC and any other entity that provides debtor-in-possession financing under a DIP Facility approved by the Bankruptcy Court in the Bankruptcy Case.

1.40    DIP Obligations shall mean all amounts due and owing to DIP Lender(s) under DIP Facilities.

1.41    DIP Order(s) shall refer to and mean the Lancelot DIP Order and any other order of the Bankruptcy Court approving a DIP Facility on an interim or final basis in the Bankruptcy Case.

1.42    Disallowed Claim shall mean a Claim or portion thereof that: (i) has been disallowed by a Final Order; (ii) is identified in the Debtors' Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the Bar Date; or (iii) is not identified in the Debtors' schedules and as to which no proof of claim has been filed or deemed filed by the Bar Date.

1.43    Disclosure Statement shall mean and refer to the Fifth Amended Disclosure Statement in Support of Fifth Amended Joint Plan of Reorganization filed by the Plan Proponents as required pursuant to Section 1125 of the Bankruptcy Code.

1.44    Disputed Claim shall mean any Claim that is not an Allowed Claim or a Disallowed Claim and that has not been barred or otherwise disallowed or paid or otherwise satisfied. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtors and the holder thereof agree otherwise; provided, however, nothing in this definition is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code.

Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim, including a Claim scheduled by the Debtors, that is the subject of a pending application, motion, complaint, objection or any other legal proceeding commenced or filed by the Debtors seeking to disallow, limit, subordinate or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.45   Effective Date means a day as determined by the Plan Proponents that is a Business Day no earlier than the date on which all conditions to the effective date in Section 15.2 of the Plan have been met or waived.

1.46   Estate shall mean the estate of the applicable Debtor created in accordance with Section 541 of the Bankruptcy Code.

1.47   Executory Contract and Unexpired Lease or Executory Contract or Unexpired Lease shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.48   Final Order shall mean any order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed timely has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

1.49   Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Member Equity Interests," shall mean that the Plan alters the legal, equitable, or contractual rights of the member(s) of that class.

1.50   **Independent Debtor Representative** shall mean Grant Lyon, appointed by the Bankruptcy Court pursuant to the Protocol Order, and any successor to Mr. Lyon in his role as Independent Debtor Representative.

1.51   **Investor** shall mean Diversis Capital, LLC or its designated assignee.

1.52   **IRS** shall mean the Internal Revenue Service, Department of the Treasury of the United States of America.

1.53   **Lancelot DIP Order** shall mean the *Stipulated Final Order (A) Approving Senior Secured Postpetition Financing, (B) Granting Senior Liens And (C) Providing Superpriority Administrative Expense Status* entered by the Bankruptcy Court on July 19, 2013, as amended.

1.54   **Lien** shall mean any lien or charge against or interest, including any security interest, in property to secure payment of a debt or performance of an obligation but only to the extent such lien, charge, or interest is valid, binding, enforceable and perfected and not subject to avoidance, defense, recharacterization or subordination.

1.55   **Manager** shall mean, as the context requires, either Anchor Management or Perciballi.

1.56   **Managers** shall mean Anchor Management and Perciballi.

1.57   **Member** shall mean, as the context requires, either C Squared or AWI with respect to ArmorWorks, and shall mean ArmorWorks with respect to TechFiber.

1.58   **Members** shall mean C Squared and AWI.

1.59   **Member Equity Interest** shall mean the respective ownership interests of the Members in ArmorWorks and TechFiber.

1.60   **Perciballi** shall mean William J. Perciballi, one of the Managers of ArmorWorks.

1.61   **Petition Date** shall mean June 17, 2013.

1.62   **Plan** shall mean this plan of reorganization, including, without limitation,

the exhibits and schedules hereto, as the same may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.63  Priority Claims shall mean "Priority Tax Claims" and "Priority Non-Tax Claims" in the aggregate, and shall mean any claim to the extent entitled to priority in payment under Sections 507(a)(3), (4), (5), (6), (7) or (8) of the Bankruptcy Code.

1.64  Priority Non-Tax Claims shall mean Priority Claims other than Priority Claims entitled to priority treatment as a tax under Section 507(a)(8) of the Bankruptcy Code.

1.65  Priority Tax Creditor shall mean a Creditor holding a Priority Tax Claim.

1.66  Priority Tax Claim shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.67  Professional Persons shall mean any professional employed in the Case pursuant to Section 327, Section 328 or Section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

1.68  Professional Fee Claim shall mean any claim by a Professional Person as provided for in Sections 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

1.69  Pro Rata shall mean, with respect to an amount of Cash to be paid or distributed to a Creditor with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such Person in the indicated Class to the aggregate dollar amount of all Claims in the indicated Class (including, in each such calculation, the full amount of Disputed Claims in the Class which have been asserted or are otherwise pending and which have not yet

been Allowed or otherwise disposed of).

1.70 <u>Protocol</u> shall mean the *Governance Protocol for Sale Transaction and Non-Ordinary Course Transactions* attached as Exhibit "A" to, and approved by, the Protocol Order and any amendments or supplements thereto approved by the Bankruptcy Court.

1.71 <u>Protocol Order</u> means and refers to the *Order Granting Joint Motion for Approval of Governance Protocol for Sale and Non-Ordinary Course Transactions, and Retention Grant Lyon as Independent Debtor Representative* entered on October 7, 2013 [Docket No. 291], as amended by the *Stipulated Order Amending And Clarifying Governance Protocol For Sale And Non-Ordinary Course Transactions, And Retention Of Grant Lyon As Independent Debtor Representative* entered on December 19, 2013 [Docket 452], and as further amended, modified, restated or supplemented from time to time.

1.72 <u>Reorganized Debtors</u> shall mean the Debtors as reorganized under and in accordance with the confirmed Plan on and after the Effective Date.

1.73 <u>Representative</u> shall mean, with respect to any entity, any officer, director, affiliate, member, subsidiary, attorney, advisor, investment banker, financial advisor, accountant or other professional of such entity, in each case in such capacity, together with each of their successors and assigns.

1.74 <u>Schedule of Assumed Contracts</u> means the schedule included as an exhibit to the Plan listing certain Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Reorganized Debtors as of the Effective Date.

1.75 <u>Schedule of Rejected Contracts</u> means the schedule included as an exhibit to the Plan listing certain Executory Contracts and Unexpired Leases to be rejected by the Debtors as of the Effective Date.

1.76 <u>Secured Claim</u> shall mean a Claim which is secured by a valid, perfected

and unavoidable Lien against a Debtor's Assets as of the Petition Date, or which expressly attached to the proceeds of assets sold pursuant to an order of the Bankruptcy Court but only to the extent of the value of such Debtor's interest in the property. In accordance with the Section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtor to the extent such holder's interest in the property is less than the amount of such Claim. To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is an Unsecured Claim, unless otherwise provided for by order of the Bankruptcy Court.

1.77    <u>Subordinated Claim</u> shall mean all claims described in Section 510 of the Bankruptcy Code or claims which are otherwise subordinated pursuant to an Order of the Bankruptcy Court.

1.78    <u>Subsidiary</u> shall mean each of the following entities and any other entity owned in whole or in part by ArmorWorks: Applied Heat Technologies, LLC; ArmorWorks Enterprises, Canada; ArmourWorks International, Limited; Mandall Barrier Works, LLC; Protective Ceramics, LLC; ShockRide, LLC; and TechFiber, LLC.

1.79    <u>Unsecured Claim</u> shall mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen before the Petition Date for the Debtors, and which is not (i) a DIP Obligation, (ii) a Secured Claim, (iii) an Administrative Expense, (iv) a Priority Claim, or (v) a fee payable pursuant to section 1930 of Title 28 of the United States Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

1.80    <u>Vendors</u> shall mean those persons or entities that provided goods or services to the Debtors in the ordinary course of business in exchange for a contemporaneous payment, or pursuant to standard terms for payment for a term not exceeding forty-five (45) days.

1   1.81   Voting Class shall mean a Class of Claims under the Plan which is

2   impaired and entitled to vote to accept or reject the Plan.

3   **ARTICLE 2. INTERPRETATION, RULES OF CONSTRUCTION, AND OTHER**
    **TERMS.**

4

5   2.1   Any term used in this Plan that is not defined herein, whether in Article 1 or

6   elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the

7   meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall

8   be construed in accordance with the rules of construction used in the Bankruptcy Code.

9   2.2   The words "herein," "hereto," "hereunder," and others of similar import,

10  refer to the Plan as a whole and not to any particular article or clause contained in this

11  Plan.

12  2.3   Unless specified otherwise in a particular reference, a reference in this Plan

13  to an article is a reference to that article of this Plan.

14  2.4   Unless otherwise provided for, any reference in this Plan to an existing

15  document or instrument means such document or instrument as it may have been

16  amended, modified, or supplemented from time to time.

17  2.5   For purposes of this Plan and such defined terms, the singular and plural

18  uses of such defined terms and the conjunctive and disjunctive uses will be fungible and

19  interchangeable (unless the context otherwise requires); and the defined terms will

20  include masculine, feminine, and neuter genders.

21  2.6   In addition to the foregoing, the rules of construction set forth in Section

22  102 of the Bankruptcy Code shall apply to this Plan.

23  2.7   In computing any period of time prescribed or allowed by this Plan, the

24  provisions of Bankruptcy Rule 9006(a) shall apply.

25

26

2.8 Any exhibits or schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Bankruptcy Court.

2.9 Where Claims are divided into subclasses in this Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

**ARTICLE 3. CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1 <u>General Classification Provisions.</u> For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and Member Equity Interests shall be classified as set forth in this Article 3 of the Plan. All Claims and Member Equity Interests are classified under the Plan as hereafter stated in this Article 3; provided, however, that a Claim or Member Equity Interest will be deemed classified in a particular Class only to the extent that the Claim or Member Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Member Equity Interest qualifies within the description of such different Class. As of the Confirmation Hearing, any Class of Claims or Member Equity Interest that does not contain any Creditor's Claim or an Member Equity Interest will be deemed deleted automatically from the Plan; and any Class of Claims or Member Equity Interest that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) or Member Equity Interest will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan. A Claim or Member Equity Interest is in a particular Class only to the extent the Claim or Member Equity Interest is an Allowed Claim or Allowed Member Equity Interest as defined herein.

3.2     <u>Classification of Claims and Equity Interests</u>.  The Plan classifies Claims and Member Equity Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Member Equity Interests are impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan.  In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan.  The Allowed Claims against the Debtors' Estates are divided into the following classes:

3.2.1     <u>Class 1 (Priority Non-Tax Claims)</u>.  Class 1 consists of any Priority Non-Tax Claims against the Debtors existing as of the Confirmation Date.

3.2.2     <u>Class 2 (Secured Tax Claims)</u>.  Class 2 consists of any Secured Tax Claims against the Debtors existing as of the Confirmation Date.

3.2.3     <u>Class 3 (Secured Claims).</u>  Class 3 consists of any Secured Claims against any of the Debtors, except Secured Tax Claims.

a.     Class 3(a) (Secured Claim of US Bank)

b.     Class 3(b) (Other Secured Claims)

3.2.4     <u>Class 4 (ArmorWorks General Unsecured Claims)</u>.  Class 4 consists of all General Unsecured Claims against ArmorWorks.

a.     Class 4(a) (Cash Out Option)

b.     Class 4(b) (Full Payment Option)

3.2.5     <u>Class 5 (TechFiber General Unsecured Claims)</u>.  Class 5 consists of all General Unsecured Claims against TechFiber.

a.     Class 5(a) (Cash Out Option)

b.     Class 5(b) (Full Payment Option)

3.2.6     <u>Class 6 (Member Equity Interests In ArmorWorks)</u>.  Class 6 consists of the Member Equity Interests in ArmorWorks.

3.2.7    Class 7 (ArmorWorks Member Equity Interest in TechFiber). Class 7 consists of the 100% Member Equity Interest of ArmorWorks in TechFiber.

3.2.8    Class 8 (Subsidiary General Unsecured Claims).  Class 8 consists of all General Unsecured Claims asserted by any Subsidiary against the Debtors.

## ARTICLE 4.  IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES

4.1    Unimpaired Classes of Claims and Interests.  The following classes are not impaired under the Plan and are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code:

4.1.1    Class 1 (Priority Non-Tax Claims); and

4.1.2    Class 7 (ArmorWorks Member Equity Interest in TechFiber).

4.2    Impaired Classes of Claims.

4.2.1    The following classes are impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and the Debtors will seek acceptance of the Plan from these classes:

(i)    Class 2 (Secured Tax Claims);

(ii)    Class 3 (Secured Claims);

a.    Class 3(a) (Secured Claim of US Bank)

b.    Class 3(b) (Other Secured Claims)

(iii)    Class 4 (ArmorWorks General Unsecured Claims);

a.    Class 4(a) (Cash Out Option);

b.    Class 4(b) (Full Payment Option);

(iv)    Class 5 (TechFiber General Unsecured Claims);

a.    Class 5(a) (Cash Out Option);

b.    Class 5(b) (Full Payment Option);

4.2.2    Class 8 (Subsidiary General Unsecured Claims) will be deemed

settled and compromised in exchange for the benefits the Subsidiaries will realize as a result of the reorganization of ArmorWorks pursuant to the terms of the Plan, and accordingly holders of Class 8 Claims will be deemed to accept the Plan.

4.3     Impaired Classes of Interests.

4.3.1     Class 6 (Member Equity Interests In ArmorWorks) are impaired under the Plan and deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

## ARTICLE 5. PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

5.1     DIP Obligations.  Unless paid sooner, or a different treatment is consented to in writing by a particular DIP Lender, the DIP Obligations shall be paid in full and in cash on the Effective Date before the payment of any other Claims against the Debtors, other than Vendor Administrative Claims.  Any dispute regarding the amount of any DIP Obligations shall be resolved by the Bankruptcy Court on an expedited basis prior to the occurrence of the Effective Date.  Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, the terms of the DIP Orders and all liens granted to DIP Lenders shall survive and shall remaining binding and enforceable until the DIP Obligations have been fully paid.  Upon payment in full of the DIP Obligations, all liens granted to the DIP Lenders shall be deemed fully and forever released and discharged.

5.2     Administrative Expense Claims.  Every Creditor holding an Allowed Administrative Expense Claim against the Debtors will be paid, in full satisfaction of their Allowed Claim, after the payment in full of the DIP Obligations: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; (c) as otherwise agreed in writing by the Creditor holding the Allowed

Administrative Expense Claim and the Debtors; or (d) as otherwise ordered by the Bankruptcy Court. Allowed Administrative Expense Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Allowed Administrative Expense Claims.

5.3 <u>Vendor Administrative Claims.</u> The post-petition expenses owed to Vendors will be paid as they are incurred in the ordinary course of business. Any amounts outstanding as of the Effective Date will be paid in full on the later of the Effective Date, or in the ordinary course of the Debtors' business. Vendor Administrative Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Vendor Administrative Claims.

5.4 <u>U.S. Trustee Fees.</u> All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid within ten (10) Business Days after the Effective Date, or as due in the normal course of billing and payment. The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The Reorganized Debtors shall file with the Bankruptcy Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the cases remain open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee, and shall pay such quarterly fees as become due for each quarter post-confirmation that the cases remain open. No motion or application is required to fix fees payable to the Clerks' Office or the Office of the United States Trustee, as those fees are determined by statute.

5.5 <u>Administrative Bar Date.</u> Requests for payment of Administrative Expenses, other than the DIP Obligations, Vendor Administrative Claims and Professional Fee Claims, must be filed and served pursuant to any procedures set forth in

1  the Confirmation Order or notice of entry of the Confirmation Order, no later than thirty

2  (30) days after the Effective Date.

3      5.6  <u>Professional Fee Claims</u>. The Bankruptcy Court must approve all requests

4  for the payment of professional compensation and expenses to the extent incurred on or

5  before the Effective Date.   Each Professional Person requesting compensation or

6  reimbursement of expenses in the Cases pursuant to Sections 327, 328, 330, 331, 503(b)

7  or 1103 of the Bankruptcy Code shall file an application for allowance of final

8  compensation and reimbursement of expenses not later than thirty (30) days after the

9  Effective Date.  Nothing herein shall prohibit each Professional Person from requesting

10  interim compensation during the course of the Case pending Confirmation of this Plan.

11  All fees, costs and disbursements of Professional Persons not heretofore paid through the

12  Effective Date of the Plan, shall be paid fully and in Cash on the later of the Effective

13  Date or within ten (10) Business Days after the entry of a Final Order allowing the Claim.

14      5.7  <u>Priority Tax Claims.</u>  Priority Tax Claims are certain pre-Petition Date

15  unsecured income, employment and other taxes described by Section 507(a)(8) of the

16  Bankruptcy Code.  To the extent Allowed Priority Tax Claims exist on the Effective

17  Date, holders of Allowed Priority Tax Claims will be paid:  (a) fully and in Cash on or

18  before ten (10) Business Days after the Effective Date if the Claim is then an Allowed

19  Claim; or (b) fully and in Cash within ten (10) Business Days after the entry of a Final

20  Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date.

21  Priority Tax Claims will be allowed in the principal amount of the tax due as of the

22  Petition Date, with interest at the applicable statutory rate in accordance with section 511

23  of the Bankruptcy Code.  No amounts attributable to penalties imposed or sought to be

24  imposed by holders of Priority Tax Claims will be paid.  Priority Tax Claims are

25  unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited

26  from Creditors holding Priority Tax Claims.

5.8     <u>Class 1 (Priority Non-Tax Claims)</u>. To the extent Allowed Priority Non-Tax Claims exist on the Effective Date, holders of Allowed Priority Non-Tax Claims will be paid: (a) fully and in Cash on or before ten (10) Business Days after the Effective Date if the Claim is then an Allowed Claim; or (b) fully and in Cash within ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 1 Claims are unimpaired under the Plan, and the holders of Class 1 Claims are not entitled to vote on the Plan.

5.9     <u>Class 7 (ArmorWorks' Member Equity Interest in TechFiber)</u>. The 100% Member Equity Interest of ArmorWorks in TechFiber shall be an Allowed interest under the Plan. ArmorWorks shall retain its Member Equity Interest in TechFiber, as reorganized under the Plan. Class 7 Interests are unimpaired under the Plan, and holders of Class 7 Interests are not entitled to vote on the Plan.

**ARTICLE 6. PROVISIONS FOR TREATMENT OF IMPAIRED CLAIMS AND INTERESTS UNDER THE PLAN**

6.1     <u>Class 2 (Secured Tax Claims)</u>. Class 2 Claims consists of all Secured Tax Claims against the Debtors for 2012 and 2013 real or personal property taxes. Holders of Allowed Class 2 Claims will retain their liens on the Property that serves as security for repayment of Allowed Class 2 Claims. In the discretion of the Reorganized Debtors, Allowed Class 2 claims, including post-petition interest in accordance with 11 U.S.C. § 511 and A.R.S. § 42-18053, will be paid (a) in full within ten (10) Business Days after the later of the Effective Date or the date the Claim is Allowed, or (b) in full within five (5) years of the Petition Date through regular equal monthly payments of principal and interest. Class 2 Claims are impaired and holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

6.2     <u>Class 3 (Secured Claims)</u>. Each Claimant holding an Allowed Class 3 Secured Claim will be placed in a separate sub-class of Class 3 for the purposes of voting

on the Plan and the treatment of their respective Claims under the Plan. Other than the Class 3(a) Secured Claim of US Bank, the Debtors do not believe there are any Class 3 Secured Claims against the Debtors existing as of the Petition Date.

6.2.1   Class 3(a) (Secured Claim of US Bank).   US Bank asserts a Secured Claim in the amount of $1,600.  Holders of Allowed Class 3(a) Secured Claims will retain their prepetition liens in their collateral.  Any Allowed Class 3(a) Secured Claim of US Bank will be paid in full within one hundred and eighty (180) days after the later of the Effective Date or the date the Claim is Allowed, with interest from and after the Effective Date at the rate of 3.25% simple interest per annum.  No default interest or other penalties will be paid to holders of Allowed Class 3(a) Secured Claims.  Class 3(a) Secured Claims are impaired, and the holders of Class 3(a) Claims are entitled to vote to accept or reject the Plan.

6.2.2   Class 3(b) (Other Secured Claims).   Holders of Allowed Class 3(b) Secured Claims, if any, will retain their prepetition liens in their collateral.  In the discretion of the Reorganized Debtors, Allowed Class 3(b) Secured Claims shall be satisfied as follows:  (a) through the abandonment or transfer of the collateral to the secured creditor within ten (10) Business Days after the later of the Effective Date or the allowance of the Claim, in which case the Claimant shall have the right to assert a General Unsecured Claim paid under Class 4 or 5, as applicable, for any deficiency to the extent allowable by applicable non-bankruptcy law; or (b) any prepetition default under the applicable contract and security documents will be cured on the Effective Date and regular payments will be made to the holder of the Allowed Class 3(b) Secured Claim after the Effective Date in accordance with the applicable contract; or (c) the Allowed Class 3(b) Secured Claim will be paid in full within ten (10) Business Days after the later of the Effective Date or the date the Claim is Allowed, with interest from and after

the Effective Date at the greater of the non-default contract rate of interest or 3.25% simple interest per annum. No default interest or other penalties will be paid to holders of Allowed Class 3(b) Secured Claims. Class 3(b) Secured Claims are impaired, and the holders of Class 3(b) Claims are entitled to vote to accept or reject the Plan.

6.3    Class 4 (ArmorWorks Unsecured Claims).    Class 4 consists of all Unsecured Claims against ArmorWorks. Holders of Allowed Class 4 Claims may elect on the Ballot to be placed and treated in sub-class Class 4(a) or will, absent the election, be automatically placed in subclass Class 4(b) below. The Holder of an Allowed Class 4 Claim will receive the following in payment for such Allowed Class 4 Claim, in accordance with their election:

6.3.1    Class 4(a) (Cash Out Option):  In full and final satisfaction of its Allowed Class 4(a) Claim, the holder who elects to be included in Class 4(a) will be paid a lump sum cash payment equal to 30% of its Allowed Class 4(a) Claim on the later of (i) ten (10) Business Days after the Effective Date, if the Claim is then an Allowed Claim; or (ii) ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 4(a) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan; or

6.3.2    Class 4(b) (Full Payment Option):  Allowed Class 4(b) Claims will accrue interest from and after the Effective Date at the rate of 2% per annum simple interest. In full and final satisfaction of its Allowed Class 4(b) Claim, the holder will be paid the full amount of its Allowed Class 4(b) Claim in five annual partial distributions beginning on the first anniversary of the Effective Date as follows: on the first anniversary of the Effective Date, 5% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; on the second anniversary of the

Effective Date, 10% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; on the third anniversary of the Effective Date, 20% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; on the fourth anniversary of the Effective Date, 30% of the Allowed Class 4(b) Claim, plus accrued interest, shall be paid; and on the fifth anniversary of the Effective Date, 35% of Allowed Class 4(b) Claim, plus accrued interest, shall be paid. In each case, the distribution shall be made on the later of the distribution date or the date that is ten (10) Business Days after the entry of a Final Order allowing the Claim. Class 4(b) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.4 Class 5 (TechFiber Unsecured Claims). Class 5 consists of all Unsecured Claims against TechFiber. Holders of Allowed Class 5 Claims may elect on the Ballot to be placed and treated in sub-class Class 5(a) or will, absent the election, be automatically placed in subclass Class 5(b) below. Each of sub-class Class 5(a) and Class 5(b) will vote to accept or reject the Plan and the votes in each sub-class to either accept or reject the Plan will be determined pursuant to Bankruptcy Code § 1126(c). The Holder of an Allowed Class 5 Claim will receive the following in payment for such Allowed Class 5 Claim:

6.4.1 Class 5(a) (Cash Out Option): In full and final satisfaction of its Allowed Class 5(a) Claim, the holder who elects to be included in Class 5(a) will be paid a lump sum cash payment equal to 30% of its Allowed Class 5(a) Claim on the later of (i) ten (10) Business Days after the Effective Date, if the Claim is then an Allowed Claim; or (ii) ten (10) Business Days after the entry of a Final Order allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date. Class 5(a) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.4.2 <u>Class 5(b) (Full Payment Option)</u>: Allowed Class 5(b) Claims will accrue interest from and after the Effective Date at the rate of 2% per annum simple interest. In full and final satisfaction of its Allowed Class 5(b) Claim, the holder will be paid the full amount of its Allowed Class 5(b) Claim in five annual partial distributions beginning on the first anniversary of the Effective Date as follows: on the first anniversary of the Effective Date, 5% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; on the second anniversary of the Effective Date, 10% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; on the third anniversary of the Effective Date, 20% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; on the fourth anniversary of the Effective Date, 30% of the Allowed Class 5(b) Claim, plus accrued interest, shall be paid; and on the fifth anniversary of the Effective Date, 35% of Allowed Class 5(b) Claim, plus accrued interest, shall be paid. In each case, the distribution shall be made on the later of the distribution date or the date that is ten (10) Business Days after the entry of a Final Order allowing the Claim. Class 5(b) Claims are impaired, and the holders are entitled to vote to accept or reject the Plan.

6.5 <u>Class 6 (Member Equity Interests in ArmorWorks).</u> The Member Equity Interests in ArmorWorks shall be extinguished under the Plan on the Effective Date. Class 6 Member Equity Interests are impaired under the Plan, and holders of Class 6 Interests are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

6.6 <u>Class 8 (Subsidiary General Unsecured Claims).</u> Class 8 consists of all General Unsecured Claims asserted by any Subsidiary against the Debtors. All Class 8 Claims shall be deemed settled and compromised on the Effective Date on account of the benefits the Subsidiaries will realize as a result of the reorganization of ArmorWorks

pursuant to the terms of the Plan. Class 8 Subsidiary General Unsecured Claims are impaired under the Plan, but will be deemed to accept the Plan.

## ARTICLE 7. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

7.1 <u>Impaired Classes to Vote</u>. Each impaired class of Creditors with Claims against the Debtors who is entitled to vote on the Plan shall be forwarded a ballot and shall be entitled to vote to accept or reject the Plan.

7.2 <u>Acceptance by a Class of Creditors</u>. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the aggregate dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims of such class that have voted to accept or reject the Plan.

7.3 <u>Cram-down</u>. In the event that any impaired Class of Creditors with Claims against the Debtors' Estates shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtors and the Committee reserve the right to request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Section 1129(b)(1) of the Bankruptcy Code.

7.4 <u>Blank Ballots</u>. Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

## ARTICLE 8. MEANS OF EFFECTUATING THE PLAN

8.1 <u>In General.</u> The Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code and the Debtors and the Reorganized Debtors, as applicable, are authorized to take any and all actions that may be necessary or appropriate to implement the terms of the Plan.

8.2 <u>Issuance of Equity Interests in Reorganized ArmorWorks and Related Transactions</u>. On the Effective Date, in exchange for 100% of the equity interests in

reorganized AWE Investor shall: (a) contribute $3,000,000 in cash to AWE for payment of claims and administrative expenses, (b) cause Perciballi and AWI to contribute to Reorganized AWE all intellectual property used in the businesses of the Debtors that is owned or controlled by Perciballi or AWI, and (c) fund the payment of certain obligations of AWI ((a) and (b) together, the "Plan Contributions"). Also on the Effective Date, (d) Investor shall contribute the equity interests in Reorganized AWE to AWI, along with certain cash, and will receive 66.9% of the common equity and 100% of the class A preferred equity in AWI; (e) Perciballi shall receive 23.1% of the common equity in AWI; and (f) 10% of the common equity in AWI shall be reserved for a management bonus pool. ((a) through (f), collectively, the "Corporate Restructuring Transactions"). Concurrent with the closing of the Corporate Restructuring Transactions, Perciballi will receive additional funds from Investor as more particularly described in Exhibit "G" attached to the Disclosure Statement.

8.3    Additional Funding.  The Cash Out Option for the Class 4(a) (ArmorWorks Unsecured Claims) and Class 5(a) (TechFiber Unsecured Claims) will be funded in part from the cash payment from the AWE Investor and in part from a cash contribution from Perciballi of up to $500,000 in order to pay a maximum of 30% of the Allowed amount of the electing general unsecured creditor's claim.  Two-thirds (2/3) of the amount of the Cash Out Option for Classes 4(a) and 5(a) will be funded by the AWE Investor and one-third of the amount of the Cash Out Option for Classes 4(a) and 5(a) will be funded by Perciballi up to a maximum contribution from Perciballi of $500,000.  The Plan will also be funded from ongoing business operations and from the proceeds of the sale of assets deemed to be no longer necessary to the ongoing operations of the business.  The Debtors also may obtain a working capital line of credit to replace the DIP Facility.

8.4    Revesting of Debtors' Assets in the Reorganized Debtors.

8.4.1    Except as otherwise expressly provided in this Plan, pursuant to

Sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all of the Debtors' assets shall automatically be retained and revested in the relevant Reorganized Debtor or its respective successor, free and clear of all Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests of creditors and equity security holders on the Effective Date, with all such Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests being extinguished except as otherwise provided in this Plan.

8.4.2    As of the Effective Date, each Reorganized Debtor may acquire and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may pay the charges it incurs for professional fees, disbursements, expenses or related support services after the Effective Date without any application to the Bankruptcy Court.

8.5    <u>Corporate Action.</u>  Pursuant to section 1142 of the Bankruptcy Code and any applicable provisions of the business corporation law of any applicable state, the entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors to take or cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of this Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including without limitation:    (a) the cancellation of all of the issued and outstanding Member Equity Interests in ArmorWorks; (b) the issuance of the new equity of Reorganized ArmorWorks to Investor; (c) the election of directors, managers and officers in accordance with this Plan; (d) the adoption of the Reorganized Debtors'

organizational documents, which shall supersede the prior certificates of incorporation, articles of organization, limited liability company agreements, operating agreements, by-laws or other organizational documents, as appropriate, of each of the Reorganized Debtors; and (e) all actions as are necessary or appropriate to close or dismiss the Case. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the members, stockholders, directors or managers of the Debtors, the Reorganized Debtors or any of their affiliates.  On the Effective Date, the appropriate officers, directors, members and managers of the Debtors and the Reorganized Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by this Plan in the name of and on behalf of the Debtors and/or the Reorganized Debtors, as applicable.

8.6  <u>Organizational Documents.</u>  Any prepetition written or oral operating agreement applicable to ArmorWorks shall be deemed terminated and of no further force or effect as of the Effective Date, and, after contribution of the membership interests in AWE to AWI by the Investor pursuant to the terms of the Plan, AWI shall be entitled to file amended articles of organization for Reorganized ArmorWorks reflecting AWI's 100% member interest in Reorganized ArmorWorks.

8.7  <u>Post Confirmation Management of Debtors.</u>

8.7.1  <u>Perciballi.</u>  Perciballi will continue to direct and manage all of the day-to-day operations of the Debtors post-confirmation until the Effective Date.

8.7.2  <u>Independent Debtor Representative.</u>  Until the Effective Date, the Independent Debtor Representative shall have and shall continue to exercise all of the powers and duties described in the Protocol and Protocol Order with respect to Non-Ordinary Course Transactions.  On the Effective Date, the Independent

1  Debtor Representative shall be discharged and released from any and all duties,

2  obligations and responsibilities under the Protocol and the Protocol Order.

3  **8.8**   Post Effective Date Management of the Debtors.  On the Effective Date, the

4  existing Managers shall be deemed discharged and released from any and all duties,

5  obligations and responsibilities, and the management, control and operation of each

6  Reorganized Debtors shall become the general responsibility of the respective members,

7  managers, board members and/or officers elected or appointed in accordance with

8  applicable non-bankruptcy law.   Subject to any requirement of Bankruptcy Court

9  approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial members and

10  managers of each Reorganized Debtor shall be comprised of the individuals set forth on

11  Schedule 8.8 to the Plan.  Each such member and manager will serve from the Effective

12  Date until his or her successor is duly elected or appointed and qualified or until his or

13  her earlier death, resignation or removal in accordance with the terms of the certificate of

14  incorporation and bylaws (or comparable constituent documents) of the respective

15  Reorganized Debtor and state law.

16  **8.9**   Release of Liens.  Except as otherwise provided in the Plan or in any

17  contract, instrument, release or other agreement or document to be assumed, entered into

18  or delivered in connection with the Plan, on the Effective Date and consistent with the

19  treatment provided for Claims and Interests in Article 5 and 6, all liens on, in, or against

20  the Reorganized Debtors' Assets shall be fully released and discharged, and all of the

21  right, title and interest of any holder of Liens, including any rights to any collateral

22  thereunder, shall revert to the Reorganized Debtors and their successors and assigns, as

23  applicable.  As of the Effective Date, the Reorganized Debtors shall be authorized but not

24  required to execute and file Form UCC-3 Termination Statements or such other forms as

25  may be necessary or appropriate to implement the provisions of this Section 8.9.

26